UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH WASHINGTON,

                                                      Plaintiff,                                                Index No. 16-cv-3948

                                                   -against-                                                 **COMPLAINT**

                                                                                                         **JURY TRIAL DEMANDED**

CALIBER HOME LOANS, INC., AND U.S BANK
TRUST, N.A., AS TRUSTEE FOR LSF9
MASTER PARTICIPATION TRUST,

                                                    Defendants.
------------------------------------------------------------------------X

       Plaintiff Joseph Washington ("Plaintiff" or "Mr. Washington"), brings this suit against Defendants Caliber Home Loans, Inc. ("Caliber") and U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("US Bank Trust") (collectively "Defendants") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Defendants used unfair and unconscionable means to collect Mr. Washington's mortgage and made false, deceptive and misleading statements about the terms and conditions of Mr. Washington's mortgage loan and the loan modification options available to him. Mr. Washington seeks actual damages, statutory damages, attorney's fees, and any further relief this Court deems appropriate.

**JURISDICTION AND VENUE**

       1.      This Court has federal question jurisdiction over the lawsuit pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

       2.      Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## PARTIES

*Plaintiff*

3. Plaintiff Joseph Washington is a 53-year-old homeowner who owns the home located at 118-04 203rd Street, Saint Albans, New York, 11412. Plaintiff Washington lives there with his fiancée, her two daughters and her grandchild. Plaintiff Washington is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

*Defendants*

4. Defendant Caliber Home Loans, Inc. ("Caliber") is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 3701 Regent Blvd., Irving, Texas 75063. Caliber is a subsidiary of the private equity firm Lone Star Funds. In addition to originating mortgages, Caliber is a mortgage servicing company.

5. Defendant U.S. Bank Trust, as Trustee for LSF9 Master Participation Trust ("U.S. Bank Trust"), is a trust with an address of 2711 North Haskell Avenue, Suite 1700, Dallas, Texas, 75204.

6. Defendants are engaged in the collection of debts from consumers using the mail and telephone. Defendants regularly attempt to collect consumer debts alleged to be due to another. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

### Mr. Washington Purchases His Home with an FHA Mortgage

7. On October 31, 2011, Plaintiff Joseph Washington purchased the home located at 118-04 203rd Street, in the St. Albans section of Queens, New York.

8. To purchase the home, Mr. Washington elected to take out a mortgage insured by the United States Department of Housing and Urban Development's ("HUD") Federal Housing

2

Administration ("FHA") and issued by First Residential Mortgage Services Corporation ("the Mortgage" or "Mr. Washington's Mortgage").

9. Mr. Washington's mortgage with First Residential Mortgage Services Corporation was in the amount of $326,987.00, with a fixed interest rate of 4.5% over the life of the 30-year loan term.

10. From the outset, Mr. Washington's mortgage was serviced by a different company from his lender, LoanCare Servicing Center, Inc. ("LoanCare").

11. As an FHA mortgage, Mr. Washington's Mortgage is insured by HUD. If Mr. Washington were to fall behind on his mortgage, and the mortgage servicer were to foreclose on his home, the servicer could file an insurance claim with HUD for the unpaid principal balance of the loan and a certain amount of arrears. After paying out the insurance claim, HUD takes ownership of the foreclosed property.

12. With a HUD-insured mortgage, Mr. Washington is entitled to certain benefits including but not limited to, pre-foreclosure assistance and FHA loss mitigation options.

**HUD's Creation of its Note Sale Program**

13. In or around 2010, HUD instituted a note sale program (the "Note Sale Program"). Under its Note Sale Program, HUD pays out insurance claims to the mortgage servicer before the servicer forecloses on the home. It then pools these delinquent mortgages and sells them to the highest bidder through an auction.

14. Once a mortgage is sold through the Note Sale Program, it is no longer insured by HUD and the mortgage is no longer governed by FHA regulations. As a result, the homeowner loses a number of benefits, including, pre-foreclosure assistance and FHA loss mitigation options.

15. HUD is required to track mortgages sold through the Note Sale Program for four years after the sale. The post-Note Sale purchaser is required to inform HUD about the status of each mortgage it purchases.

16. Although HUD originally placed no requirements on the note purchaser for how it serviced loans after the sale, in April 2015, HUD issued a statement requiring note purchasers to offer Home Affordable Modification Program ("HAMP") modifications, or HAMP-like modifications, for all loans they acquired as a result of HUD's Note Sale Program.

**Defendants Participation in HUD's Note Sale Program**

17. As of January 2016, Caliber's parent company, Lone Star, has purchased 22% of all mortgages sold in the Note Sale Program since HUD initiated the program in 2010. It is the second-largest owner of mortgages sold through the Note Sale Program, purchasing over 24,128 mortgages.

18. At the June 11, 2014 note sale auction, Lone Star submitted the highest bid for all 16 national pools, purchasing all the mortgages in that sale.

**Mr. Washington Falls Behind and Defendants Purchase his Mortgage at a HUD Note Sale**

19. For the first two years of his mortgage term, Mr. Washington remained current on his mortgage.

20. On November 1, 2013, Mr. Washington missed his first mortgage payment.

21. Soon after defaulting, in or around late 2013, Mr. Washington applied for a modification of his loan with his mortgage servicer at the time, LoanCare.

22. Although actively pursuing a modification with LoanCare, in or around July 2014, HUD sold Mr. Washington's mortgage through its Note Sale Program.

23. On August 25, 2014, Caliber, as agent of U.S. Bank Trust, mailed Mr. Washington a letter. In that letter, Caliber stated that Mr. Washington's loan had been sold to LSF9 Master Participation Trust (the "TILA Notice of Ownership Change").

24. In this August 25, 2014 letter, Caliber claimed that this loan sale took place on July 17, 2014.

25. Further, in this August 25, 2014 letter, Caliber falsely claimed that the "assignment, sale or transfer of the mortgage loan does not affect any term or condition of the mortgage instruments or the servicing of your mortgage loan."

26. In or around September of 2014, Mr. Washington submitted a new loss mitigation application to Caliber.

27. In a letter dated December 9, 2014, Caliber, as agent of U.S. Bank Trust, stated that Mr. Washington had been approved for a "5 Year Interest Only" modification. This modification agreement provided that Mr. Washington would make interest-only payments of $1,091.88 from February 1, 2015 to January 1, 2020. At the end of this five-year period, on January 1, 2020, the interest rate would revert to the original note rate of 4.5%.

28. In this December 9, 2014 letter, Caliber, as agent of U.S. Bank Trust, claimed that it had reviewed Mr. Washington for a "5 Year Short Term" modification and a "Loan Modification (With Deferment)." Caliber denied Mr. Washington for both of these modification programs. Caliber, as agent of U.S. Bank Trust, refused to communicate clearly with Mr. Washington and did not describe the terms of either modification program. Nor did it list any other modification programs in its list of loan modification options.

29. Worried that he might lose his home, on December 18, 2014, Mr. Washington signed the modification agreement, thinking he had no choice. Neither Caliber nor U.S. Bank Trust countersigned this agreement.

30. Instead, by letter dated March 6, 2015, Caliber, as agent of U.S. Bank Trust, offered Mr. Washington a Trial Period Plan for a loan modification. Under this Trial Period Plan, Mr. Washington would make three interest-only payments of $1,706.87, commencing with a payment due on April 1, 2015.

31. In this March 6, 2015 letter, Caliber did not say if it had reviewed Mr. Washington for any other modification program and did not communicate whether other options existed for Mr. Washington.

32. Mr. Washington accepted this offer by signing the Trial Period Plan agreement on March 21, 2015 and by making the first payment due under the plan before April 1, 2015.

33. Mr. Washington made all the payments under this Trial Period Plan.

34. By letter dated July 6, 2015, Caliber, as agent of U.S. Bank Trust, approved Mr. Washington for another "5 Year Interest Only" modification. This second modification agreement also provided for a five-year interest-only period, from September 1, 2015 to August 1, 2020, during which time Mr. Washington would make interest-only payments of $1,280.09. Caliber unfairly charged Mr. Washington an interest rate during this five-year period that was 4.88%, above the current market rate.

35. As with the first modification agreement, at the end of this five-year period, the interest rate will revert to the original note rate of 4.5%.

36. Because Caliber and U.S. Bank Trust did not extend the term of Mr. Washington's mortgage, and the first five years of the modification consist of interest-only

payments, Mr. Washington will only have 21 years to pay down the unpaid principal balance. Thus, on August 1, 2020, Mr. Washington's monthly mortgage payment – which only then will include principal – will jump to $1,933.09, a $653 difference.

37. At 53 years old, Mr. Washington does not anticipate that in five years he will be making appreciably more than what he is making today, and thus he does not know how he will make this significantly higher mortgage payment.

38. Furthermore, only $314,775.95 of Mr. Washington's mortgage will actually be paid down during the life of the loan. Upon information and belief, another $30,342 of Mr. Washington's debt will be an interest-bearing balloon payment due on November 1, 2041. When Mr. Washington is 78 years old, he will owe this balloon payment and all the interest that has been silently accruing.

39. During the time that Mr. Washington was applying for a modification, Caliber, as agent of U.S. Bank Trust, called him almost every day, sometimes two to three times a day, pressuring him to accept the proposed modification, and causing him stress about losing his home. On these calls, Caliber would threaten Mr. Washington with foreclosure. Defendants also repeatedly called Mr. Washington while he was at work, which caused him to become distracted while at work.

40. Mr. Washington pleaded with Caliber, as agent of U.S. Bank Trust, to stop calling him, however Caliber refused to honor his requests.

41. With constant threats of foreclosure, Mr. Washington became anxious and worried that he would lose his home. Thus, believing he had no other choice, Mr. Washington signed this modification agreement with unfair and unconscionable terms on July 19, 2015. Caliber, as agent of U.S. Bank Trust, did the same on July 29, 2015.

42. The modification that Mr. Washington signed on July 19, 2015 also includes an unfair provision that strips him of his ability to sell his property encumbered by the mortgage. In other words, Caliber specifically repudiated Mr. Washington's ability to sell his property encumbered by the mortgage.

43. The unfair and unconscionable modification offered by Caliber as agent of U.S. Bank Trust, with its higher interest rate and higher interest-bearing principal balance, is more expensive than what Mr. Washington would have received under an FHA-HAMP modification. Further, the $653 payment increase in year six of the modification agreement all but guarantees that Mr. Washington will default.

44. If Caliber, as agent of U.S. Bank Trust, had offered a modification program akin to HAMP or FHA-HAMP, Mr. Washington would have received a modification with the following, approximate terms:

   a. A capitalized, interest-bearing principal balance of $244,579.41,
   b. An interest rate of 4.5 percent,
   c. A loan term of 360 months, and
   d. A monthly principal and interest payment of $1,239.25.

45. As part of this HAMP modification, Mr. Washington would have also received a "Partial Claim" of approximately $94,999.13. Under HUD's FHA-HAMP program, a Partial Claim is an insurance claim on a portion of the capitalized unpaid principal balance that the mortgage servicing company submits to HUD. The amount of the partial claim is then deducted from the debt owed to the mortgage servicing company, lowering the unpaid principal amount and enabling the mortgage servicing company to make an affordable monthly payment for the homeowner. The homeowner still owes this amount. It becomes a second mortgage on the property owed to HUD. It is non-interest bearing and does not need to be paid to HUD until the homeowner pays off the modified mortgage, sells the property or refinances.

46. Despite his continued eligibility for an affordable modification, Caliber, as agent of U.S. Bank Trust, has never explained why it did not offer him, or even consider him for, an FHA-HAMP modification or another HAMP-like program.

47. Mr. Washington did not discover Defendants' false, deceptive, and misleading representations or that they used unfair and unconscionable means of collecting a debt until he met with a legal services attorney in June 2016, who explained that the mortgage servicers had mislead him about his options and should have provided an alternative modification without unfair and unconscionable terms and without additional fees and interest.

48. Mr. Washington has incurred economic harm in the form of out-of-pocket expenses as a result of Defendants' actions.

49. Mr. Washington has suffered emotional distress because of Defendants' actions. Since Defendants purchased and began servicing his mortgage, Mr. Washington has been unable to sleep, worried that Defendants would not offer a modification. He continues to worry and lose sleep over the prospect of the mortgage payment increase on August 1, 2020, which he fears will cause him to default again and will ultimately jeopardize his ownership of his home.

## FIRST CAUSE OF ACTION

### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

50. Plaintiff restates, realleges and incorporates by reference all foregoing paragraphs.

51. Congress enacted the Fair Debt Collection Practices Act (FDCPA) to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

52. Under the FDCPA, a debt collector is prohibited from making any false, deceptive or misleading representation in connection with the collection of a debt. 15 U.S.C. § 1692e.

53. Such prohibition includes the use of any false representation or deceptive means to collect or attempt to collect a debt." 15 U.S.C. § 1692e(10).

54. A debt collector may not "use unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f.

55. Under the FDCPA, a debt collector is prohibited from engaging in any conduct, the natural consequence is to harass or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d.

56. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he is alleged to owe a debt.

57. Plaintiff's mortgage loan is a "debt" as defined by 15 U.S.C. § 1692a(5).

58. Caliber and U.S. Bank Trust are each a "debt collector" as defined by 15 U.S.C. § 1692a(5) because Plaintiff's mortgage loan was in default at the time LSF9 Master Participation Trust acquired it.

59. Caliber's actions, as an agent of U.S. Bank Trust, constitute attempts to collect a debt or were taken in connection with attempts to collect a debt within the meaning of the FDCPA.

60. The Defendants' violations of the FDCPA, 15 U.S.C. §§ 1692e, 1692f and 1692d include, but are not limited to:

    a. Using false representations or deceptive means to collect or attempt to collect any debt;

    b. Using unfair or unconscionable means to collect or attempt to collect a debt;

    c. Falsely stating in the TILA Notice of Ownership Change to Mr. Washington that the transfer of ownership of Plaintiffs' mortgages ". . . does not affect any term or condition of the mortgage instruments or the servicing of your mortgage loan";

    d. Misrepresenting that Caliber does not offer a HAMP or HAMP-like modification when Caliber not only has a HAMP modification option but is required by HUD to offer a HAMP or HAMP-like modifications;

    e. Failing to review Mr. Washington for all modification programs Caliber offers, including the HAMP or HAMP-like modification program; and

    f. Calling Mr. Washington repeatedly, including at work, even after Mr. Washington requested that Defendants stop.

61. As a direct and proximate result of these violations of the FDCPA, Plaintiff has sustained actual damages in the form of out-of-pocket expenses and emotional harm in an amount to be proved at trial.

62. Plaintiff is therefore entitled to actual damages, statutory damages, and reasonable attorney's fees, including litigation expenses and costs. 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

    i. A judgment declaring that Defendants have committed the violations of law alleged in this action;

    ii. An order directing Defendants to comply with federal and state law in administering its modification programs, including without limitation directing Defendants to cease engaging in practices that violate the FDCPA;

iii. Actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

iv. Statutory damages pursuant to the FDCPA, 15 U.S.C. § 1692k;

v. Award Plaintiff reasonable costs and litigation expenses of this action as set forth above;

vi. Award Plaintiff reasonable attorney's fees;

vii. Award pre-judgement and post-judgement interest, to the extent allowable by law; and

viii. Grant Plaintiff other and further relief as this Court finds may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs requests a jury on all claims so triable.

Dated: July 15, 2016
New York, New York

Respectfully Submitted,

MFY LEGAL SERVICES, INC.

By: *Elizabeth M. Lynch*
Elizabeth M. Lynch,
Christopher Fasano, of counsel to
Jeanette Zelhof, Esq.
299 Broadway, 4th Floor
New York, NY 10007
Tel: (212) 417-3700