# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO
ALISON FRICK
DAVID LEBOWITZ
HAYLEY HOROWITZ
DOUGLAS E. LIEB
ALANNA SMALL
JESSICA CLARKE
EMMA L. FREEMAN

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE
(212) 763-5000
FACSIMILE
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
DIANE L. HOUK

February 21, 2017

***By ECF***

The Honorable Steven M. Gold
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *Washington et al. v. United States Department of Housing & Urban Development et al.*, No. 16-CV-3948 (CBA) (SMG)

Your Honor:

  As counsel to Plaintiffs, we write to update the Court on the progress of discovery in advance of the February 27, 2017 status conference.

  Plaintiffs served five requests for admission (RFAs) on the Federal Defendants and five document requests on the Lone Star Defendants in January 2017. The Federal and Lone Star Defendants provided written answers to Plaintiffs' requests, but have not yet produced any documents. Although Plaintiffs and the Federal Defendants are making progress on resolving open issues regarding the RFAs, Federal Defendants informed Plaintiffs on February 17, 2017 that they do not intend to file the certified administrative record regarding Plaintiffs' claim under the Administrative Procedure Act (APA) until the Court decides their not-yet-filed motion to dismiss. Consequently, Plaintiffs request that the Court order the Federal Defendants to file the administrative record within the next thirty (30) days.

  Since Plaintiffs and the Lone Star Defendants are in the process of negotiating a protective order and ESI protocols to facilitate the production of documents and attempting to resolve the Lone Star Defendants' objections, Plaintiffs are not seeking any relief from the Court at this time regarding the Lone Star Defendants. Should the parties' efforts to resolve their disputes prove unsuccessful, Plaintiffs will notify the Court.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

## I.     Federal Defendants

A.     RFAs

Plaintiff served five RFAs seeking to clarify what data HUD maintains about the race of mortgagors whose loans were sold in the Note Sale Program. The Federal Defendants responded with qualified admissions. Plaintiffs and the Federal Defendants had a productive meet-and-confer telephone call last week to discuss the scope of the terminology used by the Federal Defendants in their admissions. A follow-up telephone call is scheduled for Friday, February 24, 2017 to attempt to resolve this issue prior to the court conference.

B.     Certified Administrative Record

In addition to statutory and constitutional claims, Plaintiffs assert a claim under the APA, alleging that HUD's failure to consider the anticipated racial impact of the Note Sale Program violated its obligation to affirmatively further fair housing under § 3608(e)(5) of the Fair Housing Act. The parties agree that the administrative record for this claim will likely include many documents about the Note Sale Program that are relevant to Plaintiffs' other claims against the Federal Defendants. Mindful of the Court's instruction that initial discovery demands should be carefully targeted and minimally burdensome, Plaintiffs did not serve any document requests on the Federal Defendants and instead simply asked them to specify when they will file the administrative record.

During a meet-and-confer telephone call last week, the Federal Defendants informed Plaintiffs' counsel for the first time that they do not intend to file the administrative record until after disposition of the motion to dismiss that they anticipate filing in April 2017. Counsel for the Federal Defendants had previously told Plaintiffs' counsel multiple times, beginning on January 13, that the Federal Defendants could not commit to a date for filing the record because they were focused on their initial disclosures and RFA responses. While Plaintiffs could serve Federal Defendants with specific document requests to obtain documents related to Plaintiffs' statutory and Constitutional claims, they seek, as a preliminary step, an order from this Court setting a date certain by which the Federal Defendants must file the administrative record.

As a practical matter, directing the Federal Defendants to promptly file the record is the most efficient way to manage the initial phase of the case and ensure that Plaintiffs timely receive core documents. Federal Defendants' legal position regarding the APA claim is particularly weak. The only basis for dismissal of this claim identified by the Federal Defendants in their pre-motion letter is that Plaintiffs have an "adequate remedy against the original mortgagees." *See* Dkt. 30 at 3 n.2 (citing 5 U.S.C. § 704). But the existence of another remedy only forecloses an APA claim when Congress has provided "special and adequate review procedures" under a different federal statute—surely not the case here. *See Bowen v. Massachusetts*, 487 U.S. 903, 904-05 (1988); *Sharkey v. Quarantillo*, 541 F.3d 75, 90 n.14 (2d Cir. 2008). The certified administrative record will need to be filed, and Defendants have no basis to withhold it until a later date in the case, such as on the eve of cross-motions for summary judgment, an option counsel for the Federal Defendants suggested in the parties' meet-and-confer telephone call.

## II. Lone Star Defendants

Because Plaintiffs only received the Lone Star Defendants' discovery responses last Thursday, they have been unable to meet and confer in any detail with the Lone Star Defendants in advance of this letter submission. The parties are currently in the process of confirming a date this week for a phone conference between counsel prior to the court conference on February 27 to attempt to narrow the issues in dispute. However, Plaintiffs anticipate that the parties will be unable to agree on the scope of the Lone Star Defendants' production given their objections.

Plaintiffs served five document demands on the Lone Star Defendants concerning: (1) Plaintiffs' loan files; (2) the Lone Star Defendants' communications and contracts with HUD; (3) the Lone Star Defendants' policies and procedures concerning the servicing of loans purchased through the Note Sale Program; (4) the loss mitigation options offered to mortgagors; and (5) the Lone Star Defendants' contractually mandated reporting to HUD. *See* Ex. A.

The Lone Star Defendants only appear willing to produce two categories of documents at this point: (1) "readily retrievable correspondence" with Plaintiffs; and (2) signed contracts with HUD. Both are minimally responsive, but neither is sufficient. Plaintiffs already have correspondence they were sent, and the contracts with HUD are, to our knowledge, just signed versions of publicly available form agreements. As is clear on their face, Plaintiffs' document requests seek information about the Lone Star Defendants' *policies* for servicing the loans they purchased through the Note Sale Program—policies that the Lone Star Defendants are required by law to maintain in a readily accessible form, *see* 12 C.F.R. § 1024.38.

The gravamen of Plaintiffs' claims against the Lone Star Defendants is that, despite being required to offer HAMP or HAMP-like loan modifications to mortgagors, they refuse to consider loans purchased through the Note Sale Program for such modifications. Instead, they force mortgagors to accept far less favorable modifications, and in doing so cause a disparate adverse impact on African American borrowers and neighborhoods in New York City. Furthermore, when denying a borrower for a loan modification, the Lone Star Defendants must disclose the specific reason for the denial, including the criterion that the borrower failed to satisfy. *See* 12 C.F.R. § 1024.41. Plaintiffs Washington, Mason, and Blackett each applied for a loan modification through Caliber, and Caliber denied them every loan modification option, except for a five-year, interest-only program. Yet Caliber did not provide them with this required information about which eligibility criterion, if any, they failed to satisfy for each of the other modification options Caliber offers.

The Lone Star Defendants' loan servicing and modification policies are at the core of all of these claims. Since Lone Star Defendants surely have such policies, and must regularly disclose information related to those policies, it cannot be overly difficult to produce them. They should be provided to Plaintiffs.

The Lone Star Defendants should also produce documents that shed more meaningful light on their relationship with HUD. The purchase contracts alone do not include any pre-purchase agreements into which the Lone Star Defendants may have entered. Nor do they show how Lone Star Caliber Defendants were chosen to participate in the Note Sale Program or what

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

information the Lone Star Defendants provided to HUD after they purchased the loans in their required annual reporting.

      After Plaintiffs and the Lone Star Defendants attempt to reach agreement on these initial document production disputes, Plaintiffs will notify the Court if there are any remaining unresolved issues for which they seek relief from the Court.

      Sincerely yours,

      /s/

      Matthew D. Brinckerhoff
      Diane L. Houk
      Douglas E. Lieb

      MFY LEGAL SERVICES
      Elizabeth M. Lynch
      Linda Jun
      Christopher Fasano

c.      All counsel of record (by ECF)