# Exhibit A



SINGLE FAMILY LOAN SALE 2014-2

PARTICIPATING SERVICER AGREEMENT
BY AND BETWEEN
SECRETARY OF HOUSING AND URBAN DEVELOPMENT

AND

FREEDOM MORTGAGE CORPORATION

# TABLE OF CONTENTS

**Page**

## ARTICLE I

**DEFINITIONS**...................................................................................5

## ARTICLE II

**FILING AND PAYMENT OF INSURANCE CLAIMS; ASSIGNMENT AND TRANSFER**

Section 2.01  Claim Submission Report ................................................. 15

Section 2.02  Claim Identification Procedures ...................................... 15

Section 2.03  Insurance Claims That May Be Submitted ...................... 16

Section 2.04  Insurance Claims Submission Procedures ....................... 16

Section 2.05  Payment ........................................................................... 16

Section 2.06  Assignment and Assumption ........................................... 17

## ARTICLE III

**REPRESENTATIONS, WARRANTIES AND REPURCHASES**

Section 3.01  Representations and Warranties of Participating Servicer ...................... 17

Section 3.02  Individual Mortgage Loans.............................................. 20

Section 3.03  Repurchases and Other Remedies for Breach.................. 26

Section 3.04  Representations and Warranties of HUD......................... 29

Section 3.05  Exclusive Remedies......................................................... 30

Section 3.06  Limitations on Representations and Related Remedies.......................... 30

## ARTICLE IV

**INDEMNIFICATION AND OTHER COVENANTS**

Section 4.01  Participating Servicer's Indemnification and Other Covenants .............. 31

Section 4.02  HUD's Covenants............................................................. 36

Section 4.03  Indemnification Procedures and Limitations................... 37

Section 4.04  Limitations on Indemnification and Damages................. 38

Section 4.05  Redelivery of Insurance Claims; Reassignment of Mortgage Loans .................... 39

# ARTICLE V
## POST-CLAIM SERVICING

Section 5.01  Post-Claim Servicing Period.................................................................. 41

Section 5.02  Post-Claim Servicing Responsibilities.................................................. 41

Section 5.03  Servicing Standards .............................................................................. 41

Section 5.04  Power and Authority ............................................................................. 42

# ARTICLE VI
## AUDITS

Section 6.01  Audits..................................................................................................... 42

# ARTICLE VII
## EVENTS OF DEFAULT

Section 7.01  Participating Servicer Events of Default ............................................. 43

Section 7.02  HUD Events of Default......................................................................... 43

Section 7.03  HUD Remedies for Servicer Event of Default .................................... 44

Section 7.04  Participating Servicer Remedies for HUD Event of Default................ 44

Section 7.05  Additional Remedies of HUD.............................................................. 44

# ARTICLE VIII
## MISCELLANEOUS

Section 8.01  Survival.................................................................................................. 45

Section 8.02  Amendment............................................................................................ 45

Section 8.03  Counterparts........................................................................................... 45

Section 8.04  Entire Agreement .................................................................................. 45

Section 8.05  Rights Cumulative; Waiver .................................................................. 45

Section 8.06  Construction........................................................................................... 45

Section 8.07  Notices ................................................................................................... 46

Section 8.08  Governing Law ...................................................................................... 46

Section 8.09  Submission to Jurisdiction ................................................................... 47

Section 8.10  Waiver of Jury Trial.............................................................................. 47

Section 8.11  Severability ............................................................................................ 47

Section 8.12  Successors and Assigns ........................................................................................ 47

Section 8.13  Third Party Beneficiaries .................................................................................... 48

Section 8.14  Further Assurances .............................................................................................. 48

Section 8.15  Debt Collection ................................................................................................... 48

Section 8.16  Desk Guide .......................................................................................................... 48

Section 8.17  Interim Servicing Agreement.............................................................................. 48

Section 8.18  Confidentiality .................................................................................................... 48

Section 8.19  Claims Process .................................................................................................... 49

Section 8.20  Limitations ........................................................................................................... 49

Section 8.21  Facsimile Signature.............................................................................................. 49

**<u>EXHIBITS</u>**

Exhibit A –   Instructions Regarding Participating Servicer's Preparation of Assignments and Lost Note Affidavits and Related Forms

Exhibit B –   Desk Guide

Exhibit C –   Interim Servicing Agreement

Exhibit D –   Delivery Report

Exhibit E –   SFLS Claim Submission Report

Exhibit E1 – SFLS Claim Submission Report -Self Certification Form

Exhibit F –   Preferred Pooling Eligibility Criteria & Maximum Missed Payments Table

**<u>SCHEDULES</u>**

Schedule I – Schedule of Dates

## PARTICIPATING SERVICER AGREEMENT

THIS PARTICIPATING SERVICER AGREEMENT ("Agreement") is made and entered into as of the __ day of _____, 2014, by and between the Secretary of Housing and Urban Development ("HUD") and _____, whose FHA Mortgagee I.D. No. is _____ ("Participating Servicer").

WHEREAS, pursuant to Sections 601(a) and (d) of Public Law 105-276 (1998), codified at 12 U.S.C. §§ 1710(a) and (g), HUD has established the Single Family Loan Sale (SFLS) Program, which is designed to accelerate the time frame within which claims for the payment of FHA insurance on defaulted single-family mortgage loans are processed and to increase the value of the defaulted single-family loan assets and recoveries to HUD; and

WHEREAS, Participating Servicer has agreed to participate in the SFLS Program and, subject to the terms and conditions set forth herein, HUD has agreed to allow Participating Servicer to participate in the SFLS Program; and

WHEREAS, as a participant in the SFLS Program, Participating Servicer is willing to assign to HUD certain defaulted single-family FHA-insured mortgage loans and HUD is willing to accept an assignment of such loans and pay the FHA insurance claim with respect thereto, all on the terms and subject to the conditions set forth herein.

NOW THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, HUD and Participating Servicer agree as follows:

## ARTICLE I

## DEFINITIONS

"Affiliate" means, with respect to any specified Person, any other Person controlling, controlled by or under common control with such specified Person.

"**Agreement**" means this Participating Servicer Agreement and all exhibits hereto, as amended from time to time.

"**Approved Reimbursable Expenses**" means, with respect to a Mortgage Loan, an amount equal to unreimbursed advances made prior to the Claim Date for taxes, insurance, ground rents, condominium fees, homeownership association fees, special assessments, water, sewer and utility bills, and property preservation and protection expenses incurred in accordance with applicable FHA rules, regulations, mortgagee letters and other issuances; the Due Diligence Reimbursement Expense; the BPO Reimbursement Expense; an amount equal to 75% of the actual and reasonable foreclosure and acquisition related expenses (other than attorneys' fees) incurred prior to the Claim Date; and up to 75% of the attorneys' fee amount approved on HUD's approved schedule for attorneys' fees but not more than the amount of attorneys' fees actually incurred prior to the Claim Date; and such other expenses as may be expressly approved in writing by HUD in connection with an Insurance Claim.

"Assignment and Lost **Note Affidavit**" means an assignment and lost note affidavit substantially in the form of Exhibit A-3.

"**Assignment Claim**" means an Insurance Claim, as defined in this Agreement, submitted by the Participating Servicers in accordance with the procedures set forth in Section 2.03 of this Agreement.

"**Assignment of Lost Note Affidavit**" means an assignment of lost note affidavit substantially in the form of Exhibit A-4 or Exhibit A-5, as applicable.

"**Assignment of Mortgage**" means an assignment of Mortgage substantially in the form of Exhibit A-1 or A-2, as applicable.

"**Bankruptcy Loan**" means a loan with respect to which the Mortgagor (a) has made an assignment for the benefit of creditors or has petitioned or applied to any tribunal for the appointment of a custodian, receiver, trustee or similar Person for the Mortgagor or a substantial part of the Mortgagor's assets, (b) has commenced any proceeding under any bankruptcy, reorganization, readjustment of debt, receivership, dissolution, liquidation or similar law or statute of any jurisdiction, or (c) has pending against him any such petition, application or proceedings.

"**BPO**" means a broker's price opinion obtained by Participating Servicer from one of the BPO Providers, with respect to a Mortgage Loan, dated no earlier than one (1) month prior to the due date for the SFLS Claim Submission Report for such Mortgage Loan, and otherwise meeting the requirements of Section 4.1 of the Desk Guide.

"**BPO Provider**" means a high quality provider of the BPOs required by Section 4.01(d) chosen by the Participating Servicer.

"**BPO Reimbursement Expense**" means the actual per loan BPO cost incurred by the Participating Servicer for (i) each paid Insurance Claim submitted in the form of an Assignment Claim, and (ii) each paid Insurance Claim submitted in the form of a Claim Without Conveyance of Title for a Preferred Pooling Eligible Mortgage Loan.

"**Business Day**" means any day other than a Saturday, Sunday, federal holiday or any other day on which HUD offices or banks in Washington, D.C. are authorized or required to be closed for business.

"**CERCLA**" means the Comprehensive Environmental Response, Compensation & Liability Act, 42 U.S.C. § 9601 *et seq*., as amended, or any successor thereto, and rules and regulations promulgated from time to time thereunder.

"**Claim**" means any claim, (including any counterclaim or defensive claim), demand, complaint, cause of action, suit or proceeding, or judgment.

"**Claim Date**" means, for any Mortgage Loan, the date on which HUD pays the Insurance Claim for such Mortgage Loan to the holder in accordance with Section 2.05.

"**Claim Payment**" means, with respect to any Mortgage Loan, an amount equal to (a) the Unpaid Principal Balance as of the Claim Date, *plus* (b) the Debenture Interest, *plus* (c) the Approved Reimbursable Expenses, *minus* (d) the balance of any escrow and suspense accounts and any unapplied collections or other amounts received by Participating Servicer on behalf of the Mortgagor, *minus* (e) any amounts incurred by HUD required to cure as described in 3.03(f).

"**Claim Submission Date**" means, with respect to any Mortgage Loan, the date on which Participating Servicer submits the Insurance Claims to HUD using Electronic Data Interchange.

"**Collateral File**" means the original hard copy of the Mortgage Note endorsed in accordance with Section 4.01(c) or, if unavailable, an original hard copy of a lost instrument affidavit or bailee letter and assignment in form and substance satisfactory to HUD meeting the requirements of Section 4.01(c), the original or a copy, including an imaged copy (in whatever format is required in the Desk Guide), or a paper or microfiche copy, of the recorded Mortgage and all assignments of the Mortgage, the original or a copy, including an imaged copy, of the title policy referred to in Section 3.02(f).

"**Debenture Interest**" means interest at the Debenture Rate as computed by HUD in accordance with all of its rules and requirements for such calculations, on the Unpaid Principal Balance as of the Claim Date, *plus* the difference between Approved Reimbursable Expenses and the balance of any escrow accounts and collections from (and including) the Default Date to the Settlement Date, *minus* any amount of such interest or expenses that would have been curtailed or for which the Participating Servicer would have been denied reimbursement pursuant HUD's requirements for servicing defaulted notes and processing claims, including 24 C.F.R. § 203.402(k)(i) and (k)(ii), had the Participating Servicer conveyed title to the property securing the Mortgage Loan to the Secretary rather than assigned the Mortgage Loan in connection with an Insurance Claim. However, if the claim is not submitted to HUD within thirty (30) calendar days of the Claim Identification Date or the claim results in a "suspended" claim, Debenture Interest shall be curtailed at the thirtieth (30th) day following Claim Identification Date.

"**Debenture Rate**" means the rate of interest applicable to debentures pursuant to Section 224 of the National Housing Act, 12 U.S.C. § 1715o, as amended, and rules and regulations promulgated from time to time thereunder, which is equal to the higher of the rate in effect on (i) the date the Mortgage Loan was endorsed for FHA insurance, or (ii) the date of the firm commitment to issue FHA insurance with respect to the Mortgage Loan, except that for mortgages endorsed for insurance after January 23, 2004, the debenture interest rate is equal to the monthly average yield, for the month in which the default on the mortgage occurred, on United States Treasury Securities adjusted to a constant maturity of 10 years.

"**Default Date**" means, for any Mortgage Loan, the day on which the second full missed payment was due for such Mortgage Loan under the terms of the Mortgage Note.

"**Desk Guide**" means the Participating Servicer Desk Guide, as the same may be amended, supplemented and updated from time to time by HUD in accordance with Section 8.16, a copy of which is attached as Exhibit B.

"**Due Diligence Reimbursement Expense**" means $600 per loan to cover the cost of any due diligence expenses of the Participating Servicer for each Eligible Mortgage Loan included on the Award Report and submitted for an Insurance Claim in the form of an Assignment Claim, and each Preferred Pooling Eligible Mortgage Loan submitted for an Insurance Claim submitted in the form of a Claim Without Conveyance of Title.

"**Due Diligence Servicing File**" means an imaged copy (in whatever format is required in the Desk Guide) of the Collateral File and the Mortgage File required pursuant to Section 4.01(e). The Collateral File shall include the Mortgage Note(s), recorded Mortgage and all assignments of the Mortgage, and the title policy referred to in Section 3.02(f). With the exception of the Collateral File, documents contained in the Mortgage File, including mortgage correspondence that contains Personally Identifiable Information (PII) should be excluded from the documents provided.

"**Due Diligence Supplement Date**" means the date on which the SFLS Claim Submission Report is required to be submitted to HUD as provided in Section 2.01.

"**Earliest Claim Submission Date**" has the meaning given in Section 2.04.

"**Eastern Time**" means Eastern Standard Time or Eastern Daylight Time, as applicable.

"**Effective Date**" means the date of this Agreement, as first set forth above.

"**Eligible Mortgage Loan**" means a single-family mortgage loan which meets all of the following requirements as of the date of SFLS Claim Submission Report (unless explicitly excepted), and continues to meet all such requirements as of the Claim Date:

    (a) the related Mortgaged Property has no more than four (4) dwelling units;

    (b) it is a FHA-Insured Loan;

    (c) it has an Unpaid Principal Balance of not less than $20,000;

    (d) it is at least six (6) full payments past due under the terms of the Mortgage Note, or at least three (3) full payments past due under the terms of the Mortgage Note and the Participating Servicer has determined that the Mortgaged Property is vacant or abandoned. If the Mortgage Note was permanently modified in connection with a Loss Mitigation Option, the Mortgage Loan as modified must meet the delinquency requirements of the preceding sentence;

    (e) with respect to the current default, Participating Servicer (or a Prior Servicer) has evaluated all FHA Loss Mitigation Home Retention Options (Special Forbearance, FHA-HAMP and Loan Modification)  and  Non-Retention Options (Pre-Foreclosure Sale, and Deed-in-Lieu of Foreclosure)  in accordance regulations at 24 C.F.R. §§ 203.501 and 203.605 and all applicable FHA Handbooks and Mortgagee Letters,  and  has determined the Borrower to be ineligible for any Loss Mitigation or such appropriate Loss Mitigation Options have been attempted and failed;

    (f) The related Mortgaged Property is not a condemned property; or has not been seized by the United States Department of Justice; or is not otherwise the subject of a seizure order;

    (g) it is not subject to an Indemnification Agreement, or other settlement agreement setting forth specific obligations with respect to Mortgage Loan unless such obligations have been fully satisfied;

    (h) the related Mortgaged Property has not sustained any Surchargeable Damage;

    (i) No foreclosure sale has been scheduled for a date prior to the date set forth on the Schedule of Dates ("NFS Date"); and as of the Claim  Date there has been no foreclosure sale or pre-foreclosure sale, and no deed-in-lieu of foreclosure has been accepted;

(j) if it is a Bankruptcy Loan with a confirmed repayment plan under Chapter 13 of the United State Bankruptcy Code, the mortgagor is not current under the terms of that plan;

(k) it is not subject to pending litigation related either to the origination of the Mortgage Loan or the underlying Mortgaged Property securing the Mortgage Loan; and

(l) it has not been previously offered for sale as part of an FHA Single Family Loan Sale, unless the reason for non-delivery as part of the previous sale was the result of additional loss mitigation actions offered by Participating Servicer, Surchargable Damage (that has been subsequently repaired), a bankruptcy action, or litigation (that has been subsequently resolved).

"**FHA**" means the Federal Housing Administration, an administrative unit within the United States Department of Housing and Urban Development.

"**FHA-Insured Loans**" means single-family mortgage loans  actively insured by FHA under either Section 203(b) or Section 234(c) of the National Housing Act, 12 U.S.C. §§ 1709(b) and 1715y(c),  that are secured by Mortgaged Property in jurisdictions other than Hawaii, Guam, American Samoa and the Northern Marianas Islands, and are either (a) owned and serviced by Participating Servicer or (b) serviced (but not owned) by Participating Servicer, but with respect to which Participating Servicer is authorized by the holder to purchase such mortgage loans from, or submit Insurance Claims on behalf of, the holder.

"**FHA System**" has the meaning given in Section 2.02.

"**HUD**" means the Secretary of the United States Department of Housing and Urban Development or the United States Department of Housing and Urban Development, as applicable.

"**HUD Event of Default**" has the meaning given in Section 7.02.

"**HUD Indemnified Parties**" has the meaning given in Section 4.01.

"**HUD Successor**" means any Person to whom HUD or any transferee of HUD or any subsequent transferee of any such transferee of HUD transferred a Mortgage Loan on or after the Claim Date.

"**Indemnification Agreement**" means an agreement pursuant to which a Person has an obligation to indemnify HUD for losses incurred by HUD in connection with HUD's payment of the FHA insurance claim for an FHA-Insured Loan typically due to origination, underwriting or servicing defects or fraud or misrepresentation discovered after origination.

"**Initial Repurchase Date**" means the date on which a repurchase by Participating Servicer is effected pursuant to Sections 3.03(a) and (c).

"**Insolvency Event**" shall mean, with respect to any specified Person, the occurrence of any of the following events:

(a) the specified Person makes an assignment for the benefit of creditors;

(b) the specified Person files a voluntary petition of bankruptcy;

(c) the specified Person is adjudged bankrupt or insolvent or there is entered against the specified Person an order for relief in any bankruptcy or insolvency proceeding;

(d) the specified Person files a petition or answer seeking for such Person any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation;

(e) the specified Person seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the specified Person or of all or any substantial part of the specified Person's properties;

(f) the specified Person files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the specified Person in any proceeding described in clauses (a) through (e);

(g) the specified Person becomes unable to pay its obligations as they become due, and/or the sum of such specified Person's debts is greater than all of such Person's property, at a fair valuation; or

(h) within 120 calendar days of any proceeding against the specified Person seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation if the proceeding has not been dismissed, or within 90 calendar days after the appointment of a trustee, receiver, or liquidator for the specified Person or all or any substantial part of the specified Person's properties without the specified Person's agreement or acquiescence, which appointment is not vacated or stayed, or if the appointment is stayed, for 90 calendar days after the expiration of the stay which period the appointment is not vacated.

"**Insurance Claim**" means, with respect to any Mortgage Loan, the insurance claim made by Participating Servicer for payment by HUD under the FHA mortgage insurance contract in the amount of the Claim Payment as defined in this Agreement.

"**Lien**" means any lien, Claim, mortgage, security interest, pledge, charge, servitude or other encumbrance of any kind.

"**Loan-to-Value Ratio**" means the ratio determined by dividing the Unpaid Principal Balance as of the SFLS Claim Submission Report Date or Claim Date, as applicable, by the BPO value.

"**Losses**" means any actual loss, liability, damage, expense or cost (including reasonable attorneys' fees and litigation costs).

"**Mortgage**" means a mortgage, deed of trust, or other instrument, including any amendments or modifications thereto, creating a lien on or security interest in a Mortgaged Property securing the Mortgage Note.

"**Mortgagor**" means the obligor on a Mortgage Note.

"**Mortgage Electronic Registration Systems" or "MERS**" means the mortgage electronic registry that tracks the transfer of beneficial ownership in and servicing rights to mortgage loans.

"**Mortgage File**" means, with respect to a Mortgage Loan, all documents and correspondence that are in the possession or control of or otherwise available to Participating Servicer and that relate to the origination or servicing of the Mortgage Loan through the date on which the Mortgage File is delivered to the New Servicer pursuant to this Agreement.

"**Mortgage Loan**" means any Eligible Mortgage Loan for which an Insurance Claim is filed pursuant to this Agreement.

"**Mortgage Note**" means the promissory note or other evidence of indebtedness underlying the Mortgage Loan, where the Mortgagor is obligated to pay a sum certain amount secured by a Mortgage.

"**Mortgaged Property**" means the underlying property securing a Mortgage Loan consisting of a fee simple estate or Ground Lease in a parcel of land improved by a one-to-four family residential dwelling, together with any personal property, fixtures, leases and other property or rights pertaining thereto.

"**New Servicer**" means the servicer to which HUD directs that the servicing to any of the Mortgage Loans be transferred in accordance with Section 4.02(a).

"**NHA**" means the National Housing Act, 12 U.S.C. §§ 1701 *et seq*., as amended, and any successor thereto.

"**Notice**" means a notice or other communication required to be delivered in accordance with Section 8.07.

"**NFS Date**" has the meaning given in subsection (i) of the definition of Eligible Mortgage Loan.

"Participating Servicer" has the meaning given in the preamble to this Agreement.

"**Party**" means either Participating Servicer or HUD and "**Parties**" means Participating Servicer and HUD.

"**Person**" means any individual, corporation, limited liability company, partnership, joint venture, trust, unincorporated organization or federal, state, city, municipal or foreign government or agency or political subdivision thereof.

"Post-Claim Servicing Period" has the meaning given in Section 5.01.

"**Property Value**" means, with respect to any Eligible Mortgage Loan, the value of the Mortgaged Property as set forth in the appraisal obtained at the time of origination or, if no such appraisal is in the Mortgage File, the original Unpaid Principal Balance of such Eligible Mortgage Loan.

"**Preferred Pooling Eligibility Criteria**" means the additional eligibility criteria listed on Exhibit F, according to which HUD will pool Eligible Mortgage Loans. An Eligible Mortgage Loan meeting the Preferred Pooling Eligibility Criteria shall be a "Preferred Pooling **Eligible Mortgage Loan**".

"**Purchaser**" means the person or entity that contracts to purchase and acquires Mortgage Loans from HUD.

"**REO**" means Mortgaged Property to which title has been taken as a result of a foreclosure, acceptance of a deed-in-lieu of foreclosure, or any comparable proceeding.

"**Repurchase Price**" means, with respect to any Mortgage Loan repurchased by Participating Servicer, an amount equal to (a) the Claim Payment,  *plus* (b) all unreimbursed advances made after the Claim Date by HUD or any HUD Successor, *minus* (c) an amount equal to all collections received after the Claim Date by HUD or any HUD Successor, *minus* (d) the balance

at the time of the Initial Repurchase Date of all escrow and suspense accounts with respect to the Mortgage Loan, and, *plus* (d) expenses incurred by HUD in connection with offering the Mortgage Loan and breaching the sales agreement up to one percent of the UPB for the subject Mortgage Loan.

"**RESPA**" means the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617, as amended, and any successor thereto, and rules and regulations promulgated from time to time thereunder.

"**Reverse Repurchase Date**" means the date on which a repurchase by HUD is effected pursuant to Section 3.03(f).

"**Reverse Repurchase Price**" means, with respect to any Mortgage Loan repurchased by HUD, an amount equal to (a) the Repurchase Price, *plus* (b) all unreimbursed advances made after the Initial Repurchase Date by Participating Servicer, *minus* (c) an amount equal to all collections received after the Initial Repurchase Date by Participating Servicer, and, *minus* (d) the balance at the time of the Reverse Repurchase Date of all escrow and suspense accounts with respect to the Mortgage Loan.

"**Servicer Event of Default**" has the meaning given in Section 7.01.

"**Servicing Transfer Date**" means any date on or after the Claim Date designated by HUD pursuant to Section 4.02(a) on which the servicing for all or any designated portion of the Mortgage Loans shall be transferred to New Servicer.

"**Settlement Date**" means, with respect to any Insurance Claim, the date, between the Claim Date and the date on which the Insurance Claim is paid in accordance with Section 2.05, on which HUD processes the Insurance Claim for payment.

"**SFLS**" means single family loan sale.

"**SFLS Claim Identification Date**" means the date identified as the SFLS Claim Identification Date in the SFLS Claim Identification Report described in Section 2.02.

"**SFLS Claim Identification Report**" has the meaning given in Section 2.02.

"**SFLS Claim Submission Report**" has the meaning given in Section 2.01.

"**Surchargeable Damage**" means damage due to fire, flood, earthquake, hurricane, tornado, mortgagee neglect and, in the case of condominiums (only) boiler explosion.  For purposes of this definition, "mortgagee neglect" shall mean damage or destruction due to the mortgagee's failure to take reasonable action to inspect, protect and preserve the property as provided in 24 C.F.R. § 203.377.

"**Suspended Claim**" means any Insurance Claim with respect to which HUD has advised Participating Servicer by posting such information on FHA Connection that the processing of the Insurance Claim has been suspended because of (a) the failure of Participating Servicer or such Insurance Claim to comply with the requirements of Section 2.03, (b) the failure of Participating Servicer to provide complete and accurate information as required by HUD in connection with the submission of the Insurance Claim, or (c) the processing of the Insurance Claim requires additional information from Participating Servicer.

"**TILA**" means the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, as amended, and any successor thereto, and rules and regulations promulgated from time to time thereunder.

"**Transfer/Recordation Requirements**" means document recordation requirements imposed by state and local law.

"**Unpaid Principal Balance**" means, as of the relevant date, the outstanding principal amount due on the mortgage loan.


## ARTICLE II

## FILING AND PAYMENT OF INSURANCE CLAIMS; ASSIGNMENT AND TRANSFER

**2.01** Claim Submission Reports

Participating Servicer shall review its entire portfolio of FHA-Insured Loans for mortgage loans that meet the Eligibility Criteria and Preferred Pooling Eligibility Criteria.  Not later than the SFLS Claim Submission Report Date, as set forth in the Schedule of Dates, Participating Servicer shall submit to HUD (1) a report of all Eligible Mortgage Loans for which it intends to submit Insurance Claims, including all requested information about the Mortgage Loans ("SFLS Claim Submission Report"), and (2) the Participating Servicer Program Eligibility Certification.  Exhibit E describes all information required for the SFLS Claim Submission Report, including the submission procedures, data format for the Report.  The Participating Servicer Program Eligibility Certification is attached as Exhibit E-1.  Participating Service shall submit an update to the SFLS Claim Submission Report on the SFLS Claim Submission Report Update Date, as set forth in the Schedule of Dates, which shall indicate any data that may have changed

since the original submission including updated Unpaid Principal and Escrow Balances, and loans, if any, that Participating Servicer no longer intends to submit Insurance Claims under this Agreement.

**2.02**   <u>**Claim Identification Procedures**</u>.

Not later than the second Business Day after Participating Servicer submits the SFLS Claim Submission Report, HUD will provide Participating Servicer with the SFLS Claim Identification Report indicating the Mortgage Loans, which, upon award, will be designated in the FHA claim processing system for Claim Payment and the SFLS Claim Identification Date for such Mortgage Loans. Without limiting Participating Servicer's obligations in Section 4.01(b), HUD will not issue an SFLS Claim Identification Date for any mortgage loan for which Indemnification Agreement is identified on HUD's system of records.

Not later than the Business Day after Award Date, HUD shall provide Participating Servicer with the list of awarded Mortgage Loans and thus advise Participating Servicer of the Mortgage Loans for which it may submit an Insurance Claim in the form of an Assignment Claim. HUD shall process the list of awarded Mortgage Loans (or the "Award Report") to update the FHA's claim processing system to allow for claim payment for awarded Mortgage Loans.

For all Eligible Mortgage Loans that received a SFLS Claim Identification Date and are included in the Award Report, Participating Servicer must submit an Insurance Claim no later than the Claim Cut-off Date, as set forth in the Schedule of Dates.  If a mortgage loan becomes ineligible after an SFLS Claim Identification Date is issued, Participating Servicer shall not submit an Insurance Claim pursuant to this Agreement for that mortgage loan.

**2.03**   <u>**Insurance Claims That May Be Submitted**</u>.

    **(a)** <u>**Assignment Claim Submission**</u>.  Subject to the provisions of Section 2.04, an Insurance Claim in the form of an Assignment Claim may be submitted by Participating Servicer for an Mortgage Loan provided that (i) the Participating Servicer has received a SFLS Claim Identification Date prior to claim submission, (ii) the Mortgage Loan was included in the Award Report, and (iii) before the Claim Date, Participating Servicer has complied with its obligations in Section 4.01(d).  Insurance Claims in the form of an Assignment Claim may only be submitted for Mortgage Loans that have been awarded by HUD to a Purchaser.

    **(b)** <u>**Not-Awarded Mortgage Loans**</u>. HUD reserves the right, at its sole discretion, to terminate the Single Family Loan Sale in whole or in part at any time, and to accept or reject any and all Bids. For all Mortgage Loans offered as part of a pool of Mortgage Loans for which no bid is received, or for which HUD chooses to exercise its right to not award, Participating Servicer may submit Insurance Claims for those Mortgage Loans in accordance with the Insurance Claims procedures described in Section 2.04(b) below, or through the standard Conveyance Program.

(c) **Undelivered Mortgage Loans**. For all Mortgage Loans that are identified on SFLS Claim Submission Report but for which an Insurance Claim is not submitted, Participating Servicer shall report the reason for non-delivery in the format provided in Exhibit D ("Delivery Report").

2.04    **Insurance Claims Submission Procedures**.

(a) **Assignment Claims**. Participating Servicer may begin submitting Insurance Claims in the form of an Assignment Claim to HUD on such date as HUD specifies via electronic mail notification ("Earliest Claim Submission Date"), however Participating Servicer may be granted early access the Electronic Data Interchange on or about the Electronic Data Interchange Access Date, as set forth in the Schedule of Dates, to begin preparing Insurance Claims for claim submission.  Participating Servicer shall submit all Insurance Claims in the form of an Assignment Claim using the Electronic Data Interchange, and shall enter into the P260 Lender Portal Form HUD-27011, *Single-Family Application for Insurance Benefits*, including Parts A, B, C, D, E, along with all supporting documentation for the amounts claimed.  Insurance Claims must be submitted in accordance with the claims submission instructions contained in Section 5.2 of the Desk Guide.

(b) **Claims without Conveyance of Title**. Upon notification by HUD that a pool of Mortgage Loans will not be awarded, Participating Servicer may begin the process of submitting Insurance Claims pursuant to the Claims without Conveyance of Title ("CWCOT") procedures at 24 C.F.R. § 203.368 and as further described below.

(i) **Claims without Conveyance of Title Demonstration**. In order to submit a CWCOT claim, Participating Servicer must be a participant in the CWCOT Demonstration Program or execute the participation agreement to enroll in the Demonstration Program. Participation in the CWCOT Demonstration Program for Mortgage Loans first offered in an SFLS pool will be governed by the procedures outlined below, which supersede the procedures outlined in in HUD Handbooks 4330.1 and 4330.4.

(1) **Mortgage Loan Criteria**. By opting to use the CWCOT Demonstration Program, Participating Servicer certifies that each Mortgage Loan offered at a CWCOT auction is an Eligible Mortgage Loan (excepting subsection (i) of the definition of "Eligible Mortgage Loan") and Participating Servicer has met the requirements of Section 2.03. Prior to the Foreclosure Auction, Participating Servicer will have taken the first public legal action required to initiate foreclosure, in accordance with the extended Reasonable Diligence Timeframes that HUD granted pursuant to Section 4.01(o) of this Agreement, and will have provided notification to HUD by reporting Status 68 to HUD's Single Family Default Monitoring System ("SFDMS").

(2) **Commissioner's Adjusted Fair Market Value**. The fair market value bid or Commissioner's Adjusted Fair Market Value ("CAFMV") is the fair market value, as determined by an appraisal conforming to section (a) below, less the State-Specific Adjustment.

    (a) **Appraisal**. Participating Servicer must obtain, and review for accuracy, an "as is" FHA appraisal interior and exterior evaluation of the property prior to the Foreclosure Sale. If the property is occupied and an interior evaluation cannot be obtained, an exterior evaluation only will be allowed. As soon as possible following the scheduling of the foreclosure sale, the mortgagee shall make a request for an appraisal to be completed.

    Where appraisals have been completed, HUD will reimburse the full appraisal cost on the CWCOT claim if there was a successful third party bidder or if the Participating Servicer elects to retain title to the property. Alternatively, the appraisal cost may be included on Conveyance Insurance Claims, should the third party sale not be successful and Participating Servicer chooses to convey title.

    (b) **State-Specific Adjustment**. The State-Specific Adjustment Factor is a State-specific percentage reduction in the Fair Market Value for a Mortgaged Property, which when applied to the Fair Market Value of the Mortgaged Property determines the CAFMV. See Table A for the current State-Specific Adjustment Factors applicable for the CWCOT Demonstration Program. HUD reserves the right to adjust the State-Specific Adjustment Factors for the CWCOT Demonstration Program on a periodic basis.

(3) **Auction Service Fee**. Participating Servicer must use an auction service to facilitate the Foreclosure Sale where such servicers are available. HUD will reimburse Participating Servicer for the full amount of the service or five percent of a property's sale value, whichever is less.

(4) **Deficiency Judgments**. Participating Servicer should not pursue deficiency judgments as part of the CWCOT Demonstration Program for these Mortgage Loans.

(5) **Amendments to the CWCOT Demonstration Program**. In the event that Participating Servicer signs a new CWCOT Participation Agreement, the procedures (but not loan eligibility criteria) included in such agreement shall supersede the controlling CWCOT procedure set forth in this Agreement for any remaining Eligible Mortgage Loans.

2.05   **Payment**.

(a) **Assignment Claims.** In full consideration for the sale and assignment of each Mortgage Loan, the submission of the related Insurance Claim and Participating Servicer's performance of its obligations under this Agreement (except for any Post-Claim Servicing Fee payable pursuant to the Interim Servicing Agreement), HUD shall pay the Claim Payment to the holder of such Mortgage Loan as of the Claim Date.  Participating Servicer shall not submit an Insurance Claim for a mortgage loan known to have paid in full after the Claim Identification Date.

(b) **Claims without Conveyance of Title.** With respect to CWCOT claims submitted for Preferred Pooling Eligible Mortgage Loans, in full consideration for participation in the Single Family Loan Sale and the CWCOT Demonstration Program, HUD shall pay Participating Servicer the full Claim Payment (including Approved Reimbursable Expenses as defined in this Agreement) *plus* any applicable Auction Service Fee, *less* the winning bid amount. With respect to CWCOT claims submitted for Mortgage Loans that do not meet the Preferred Pooling Eligibility Criteria, HUD shall pay Participating Servicer the Claim Payment (including Approved Reimbursable Expenses, as defined in this Agreement, but excluding the Due Diligence and BPO Reimbursement Expenses) *plus* any applicable Auction Service Fee, *less* the winning bid amount.

(c) **Repayment**. HUD reserves the right at all times to demand repayment from Participating Servicer (or the holder) and the Participating Servicer shall comply with such demand for repayment of any amount paid in connection with a Claim Payment that exceeds the amount that HUD subsequently determines to be the correct amount of the Claim Payment.  Furthermore, HUD reserves the right at all and in its sole discretion to demand repayment of any amount paid in connection with a Claim Payment for any breach of this agreement as set forth in Section 3.03.

2.06   **Assignment and Assumption**.

Assuming the Claim Payment with respect thereto is made, effective as of the Claim Date, all right, title and interest in, to and under each Mortgage Loan (including all rights to payments on and proceeds thereof) hereby is sold, conveyed, transferred and assigned to, and all obligations arising on or after such Claim Date hereby are assumed by, HUD. The Mortgage Loans that relate to Suspended Claims and other Insurance Claims that are redelivered pursuant to Section 4.05(a) shall not be considered to have been sold, assigned or otherwise conveyed to or assumed by HUD pursuant to this Section or any other provision of this Agreement.

## ARTICLE III

## REPRESENTATIONS, WARRANTIES AND REPURCHASES

3.01   Representations and Warranties of Participating Servicer.

Participating Servicer hereby represents and warrants to HUD as of the Effective Date, the SFLS Claim Submission Report Date, and each Claim Date:

(a) **Organization; Good Standing**. Participating Servicer is a [~~form of business entity~~], duly organized, validly existing and in good standing under the laws of [~~state/or country as appropriate~~]. Participating Servicer is an FHA-approved mortgagee, in good standing with HUD, and has all other licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each jurisdiction in which a Mortgaged Property is located if the laws of such jurisdiction require licensing or qualification in order to conduct business of the type conducted by Participating Servicer. Furthermore, Participating Servicer is not on notice or currently in receivership with the Federal Deposit Insurance Corporation ("FDIC") nor has the Participating Servicer filed for or anticipates filing for bankruptcy.

(b) **Authority; Binding Agreement**. Participating Servicer has the power and authority to execute and deliver this Agreement and to perform in accordance herewith. The execution, delivery and performance of this Agreement by Participating Servicer and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate or other action. This Agreement constitutes the valid and binding obligation of Participating Servicer, enforceable against Participating Servicer in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and the application of equitable principles in any proceeding, whether at law or in equity.

(c) **Approvals**. All actions, approvals, consents, waivers, exemptions, variances, franchises, orders, permits, authorizations, rights and licenses required to be taken, given or obtained, as the case may be, by or from any federal, state or other governmental authority or agency (other than any such actions, approvals, etc. under any state securities laws, real estate syndication or "Blue Sky" statutes, as to which Participating Servicer makes no such representation or warranty), that are necessary in connection with the execution and delivery by Participating Servicer of this Agreement and the consummation of the transactions contemplated hereby and the performance of its obligations hereunder, have been duly taken, given or obtained, as the case may be, are in full force and effect, are not subject to any pending proceedings or appeals (administrative, judicial or otherwise) and either the time within which any appeal therefrom may be taken or review thereof may be obtained has expired or no review thereof may be obtained or appeal therefrom taken.

**(d) No Breach**.  The execution, delivery and performance by Participating Servicer of, and the consummation of the transactions contemplated by, this Agreement do not and will not (i) result in the breach of any terms or provisions of the charter, articles, by-laws or other constituent documents of Participating Servicer, (ii) result in the breach of any term or provision of, or conflict with or constitute a default under, or result in the acceleration of any obligation under, any material agreement, settlement agreement, indenture or loan or credit agreement or other material instrument to which Participating Servicer or its property is subject, or (iii) result in the violation of any law, rule, regulation, order, judgment or decree to which Participating Servicer or its property is subject.

**(e) No Misstatement or Omission**.  Neither this Agreement nor any statement, report or other document prepared by Participating Servicer and furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby (including the information provided to HUD in connection with the filing of the Insurance Claims) contains any untrue statement of material fact or fails to state a material fact necessary to make the statements contained herein or therein not misleading.

**(f) No Litigation**.  There is not currently pending  an action, suit, proceeding or investigation, nor, to the best of Participating Servicer's knowledge, has such action, suit, proceeding or investigation been threatened against Participating Servicer which, in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of Participating Servicer or in any material impairment of the right or ability of Participating Servicer to carry on its business substantially as now conducted, or in any material liability on the part of Participating Servicer or, if determined against Participating Servicer, would reasonably be likely (i) to draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of Participating Servicer contemplated herein, or, (ii) to impair materially the ability of Participating Servicer to perform under the terms of this Agreement.

**(g) No Violation of Orders, Decrees**.  Participating Servicer is not in default with respect to any order or decree of any court or any order, rule, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the Mortgage Loans or materially and adversely affect its performance under this Agreement.

**(h) Origination and Servicing**.  The origination, where applicable to the Participating Servicer, and collection practices used by Participating Servicer with respect to each Mortgage Note and Mortgage Loan have been in all material respects legal, proper, prudent and customary in the origination and servicing business for first lien FHA-insured single-family mortgage loans.

(j) <u>Systems Capability</u>.  Participating Servicer has and will have, whenever required hereunder, the systems capability to interface with HUD's Electronic Data Interchange and FHA Connection systems.

(k) <u>Servicing Knowledge, Experience</u>.  Participating Servicer is knowledgeable and experienced in complying with all laws, rules and regulations that pertain to the administration, servicing and collection of FHA-insured single-family mortgage loans, including those related to debt collection practices and procedures, and has the knowledge, experience and capability to comply with its obligations during the Post Claim Servicing Period, including those related to debt collection practices and procedures and, without limiting the foregoing, Participating Servicer or its principals have at least five (5) years of experience servicing single-family mortgage loans and at least three (3) years of experience servicing FHA-insured single-family mortgage loans.

(l) <u>Record Holder and Servicer</u>.  The mortgagee identification number, address of the Mortgaged Property and current holder, as set forth on the FHA Connection Portfolio screen submitted pursuant to Section 4.01(d), are true and correct.

(m) <u>Membership in Mortgage Electronic Registration System ("MERS")</u>.  If any of the Mortgage Loans are registered in MERS, then Participating Servicer is a member in good standing of MERS and agrees to remain as a member in good standing during the Post Claim Servicing Period.

(n) <u>Existing FHA Regulations and Guidance</u>.  Participating Servicer represents that the terms and conditions related to this Agreement between the Participating Servicer and HUD are limited to such terms and conditions expressly provided in this Agreement. Existing FHA regulations and guidance regarding filing of FHA-insurance claims are not incorporated into this Agreement unless expressly cited.

**3.02** <u>Individual Mortgage Loans</u>.

Participating Servicer hereby represents and warrants to HUD with respect to each Mortgage Loan as of the SFLS Claim Submission Report Date, each Claim Date for such Mortgage Loan, and on such other dates as are expressly set forth herein, the following:

(a) <u>Eligible Mortgage Loans</u>.  Each Mortgage Loan is an Eligible Mortgage Loan and Participating Servicer has met the requirements of Section 2.04 with respect thereto.

(b) <u>Lost Instrument Affidavits</u>.  In the event any Collateral File contains a lost instrument affidavit in lieu of a Mortgage Note, such lost instrument affidavit, when assigned, will be sufficient to affect the transfer of title to the related Mortgage Loan, without the need

for a judicial proceeding, administrative action, court or regulatory order, or similar action or order.

(c) <u>No Rescission, Set-off, etc</u>.  The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no right of rescission, set-off, counterclaim or defense has been asserted with respect thereto.

(d) <u>No Mechanics' Liens</u>.  There is no mechanics' lien or Claim for work, labor or material affecting any Mortgaged Property, which is or may be a Lien prior to, or equal with, the Lien of the Mortgage except those which are insured against by the title insurance policy referred to in Section 3.02(f).

(e) <u>Compliance with Law</u>.  Each Mortgage Loan, at the time it was originated, complied in all material respects with applicable local, state and federal laws, rules and regulations, including usury, equal credit opportunity and disclosure laws, and since that time, has been serviced in compliance in all material respects with applicable local, state and federal laws, rules and regulations.

(f) <u>Title Policy</u>.  With respect to each Mortgage Loan, a lender's title insurance policy, issued in standard American Land Title Association form or, if the jurisdiction does not accept the standard American Land Title Association form, such other form as is generally acceptable to prudent lending institutions that originate or purchase mortgage loans similar to the Mortgage Loan in that particular jurisdiction, by a title insurance company authorized to transact business in the jurisdiction in which the related Mortgaged Property is situated, together with a condominium endorsement, if applicable, in an amount at least equal to the original principal balance of such Mortgage Loan, insuring Participating Servicer's interest under the related Mortgage Loan as the holder of a valid first priority mortgage lien of record on the real property described in the Mortgage, subject only to exceptions for (i) Liens for real property taxes and assessments not yet due and payable, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of the Mortgage which are acceptable to mortgage lending institutions generally and specifically reflected in the appraisal made in connection with the origination of the Mortgage Loan, and (iii) other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, was effective on any date on or prior to the Claim Date, and, as of the Claim Date, such policy will be valid and thereafter shall continue in full force and effect.

With respect to each Mortgage Loan, the holder is the sole named insured of such mortgage title insurance policy, and such mortgage title insurance policy is in full force and effect and will be in full force and effect and inure to the benefit of HUD (and any subsequent mortgagee) upon the consummation of the transactions contemplated by this Agreement.  No claims have been made under such mortgage title insurance policy and no prior holder of the related Mortgage, including Participating Servicer, has done, by act or omission, anything that would impair the coverage of such mortgage title insurance policy.

(g) **Hazard Insurance**.  With respect to the Mortgage Loans, either (i) the improvements upon a Mortgaged Property are covered by a valid and existing fire and hazard insurance policy with a generally acceptable carrier that provides for extended coverage customary in the area where the Mortgaged Property is located, that is endorsed with a standard mortgagee clause with losses payable to Participating Servicer, and in an amount that is at least equal to the lesser of (A) the Unpaid Principal Balance, (B) the full insurable value of the Mortgaged Property, or (C) the minimum amount required to compensate for damage or loss on a replacement cost basis, or (ii) Participating Servicer maintains a blanket policy insuring against fire and hazards of extended coverage on the Mortgage Loans for which no insurance of the type described in clause (i) exists, naming Participating Servicer as loss payee and providing for coverage in an amount equal to the aggregate Unpaid Principal Balance of all such Mortgage Loans, without co-insurance.

(h) **Flood Insurance**.  For each Mortgage Loan with respect to which the Mortgaged Property is located in an area identified on a Flood Hazard Boundary Map or Flood Insurance Rate Map issued by the Federal Emergency Management Agency as having special flood hazards and flood insurance has been made available, a flood insurance policy meeting the current guidelines of the Federal Insurance Administration with a generally acceptable carrier in an amount representing coverage of not less than the lesser of (i) the Unpaid Principal Balance, or (ii) the maximum amount of insurance which is available under applicable federal law, rules and regulations.

(i) **Binding Mortgage Notes**.  Each Mortgage and Mortgage Note is the legal, valid and binding obligation of the maker thereof and is enforceable in accordance with its terms, except only as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law).  All parties to each Mortgage Loan had full legal capacity to execute all Mortgage Loan documents (including the Mortgage Notes and Mortgages) and convey the estate therein purported to be conveyed, and all Mortgage Loan documents (including the Mortgage Notes and Mortgages) have been duly and properly executed by such parties.

(j) **Modifications; Mortgages Recorded**.  The terms of the Mortgage Note and the Mortgage have not been impaired, altered or modified in any material respect, except by a written instrument which has been recorded, if required, or is in the process of being recorded (and, in either case, contained in the Collateral File), if necessary, to protect the interest of HUD and which has been or will be delivered to HUD.  Each original Mortgage was recorded, and all subsequent assignments of the original Mortgage have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the Lien thereof as against creditors of Mortgagor (or, are in the process of being recorded, or are, in the opinion of counsel to Participating Servicer, which has been provided to HUD and on which HUD is entitled expressly therein to rely, not required to be recorded).

(k) **No Releases**.  No instrument of release or waiver has been executed in connection with the Mortgage Loan, and no Mortgagor has been released, in whole or in part.

(l) **No Condemnation**.  The Mortgaged Property is not subject to a condemnation order, and there is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property.

(m) **Improvements; No Encroachments**.  To the best of Participating Servicer's knowledge, all of the improvements which were included for the purpose of determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of such property, and no improvements on adjoining properties encroach upon the Mortgaged Property.

(n) **No Zoning Violation**.  To the best of the Participating Servicer's knowledge, no improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law, rule or regulation.  To the best of Participating Servicer's knowledge, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities and the Mortgaged Property is or, if vacant, may be lawfully occupied under applicable law.

(o) **Proceeds Disbursed**.  The proceeds of the Mortgage Loan have been fully disbursed, and pursuant to the terms and conditions thereof as of the Claim Date there is no obligation on the part of Participating Servicer, nor will there be any obligation on the part of HUD (or any other mortgagee), to make future advances thereunder, at the option of the Mortgagor or otherwise.  Any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefore have been complied with.  All costs, fees and expenses incurred in making or closing or recording the Mortgage Loans were paid.

(p) __No Security Except Mortgage__.  The related Mortgage Note is not and has not been secured by any collateral, pledged account or other security except the Lien of the corresponding Mortgage.

(q) __No Third Party Obligors__.  There is no obligation on the part of Participating Servicer or any other party to make payments in addition to those made by the Mortgagor.

(r) __Qualified Trustees__.  With respect to each Mortgage constituting a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or will become payable by HUD (or any other mortgagee) to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(s) __Certain Loan Types__.  No Mortgage Loan has a shared appreciation feature, other contingent interest feature, provides for deferred interest or negative amortization.  None of the Mortgaged Property is subject to a land trust.

(t) __Due on Sale__.  The Mortgage contains a customary provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event the related Mortgaged Property is sold without the prior consent of the mortgagee thereunder.

(u) __Single Rate of Interest, Repayment Term__.  The entire Unpaid Principal Balance bears a single interest rate (whether fixed or adjustable), as reflected on the Mortgage Note, and a single repayment term, as will be reflected on the Participating Servicer's SFLS Claim Submission Report.  The interest rate of each Mortgage Loan, as of the Claim Date, will be accurately reflected on the last SFLS Claim Submission Report provided prior to the Servicing Transfer Date that included the Mortgage Loan.

(v) __Benefits of Security__.  The related Mortgage contains customary and enforceable provisions that render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.  There is no homestead or other exemption or other defense available to the Mortgagor which would materially interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage.

(w) __No Hazardous Substances__.  Participating Servicer has no actual knowledge that there exist, with respect to any Mortgaged Property, any hazardous substances, hazardous

wastes or solid wastes, as such terms are defined in CERCLA, or other federal, state or local environmental legislation.

(x) **First Lien Mortgage**. Each Mortgage is a valid and subsisting first Lien of record on the Mortgaged Property subject to (1) the exceptions to title set forth in the title insurance policy, with respect to the related Mortgage Loan, which exceptions are generally acceptable to first mortgage lending companies, and (2) such other exceptions to which similar properties are commonly subject and which do not individually, or in the aggregate, materially and adversely affect the benefits of the security intended to be provided by such Mortgage. Notwithstanding the foregoing, all homeowner association fees, condominium fees, utility bills and pro-rated taxes due and owing at time of claim submission have been fully paid and satisfied.

(y) **Unpaid Principal Balance**. The Unpaid Principal Balance of the Mortgage Loan as of the Due Diligence Supplement Date, as specified by Participating Servicer in the information submitted to HUD, is true, accurate and correct.

(z) **Ground Leases**. If a Mortgaged Property is subject to a ground lease, the terms of the ground lease and the rights of the mortgagee and the obligations of the lessor (whether such rights and obligations arise by contract or under law, rule or regulation) comply in all respects, as of the Claim Date, with the applicable provisions of HUD's Handbook 4150.1. Without limiting the generality of the foregoing, with respect to each such ground lease, (i) the mortgagee is entitled to notice  under the ground lease of each lessee default and is allowed at least 120 calendar days in which to cure any such default before the lessor may terminate such ground lease; (ii) the ground lease is in full force and effect; and (iii) either (A) Participating Servicer has not received any notice of a default thereunder and, to Participating Servicer's knowledge, there exists no condition that, but for the passage of time or the giving of notice or both, would result in a default thereunder or, (B) if Participating Servicer has received notice of any default thereunder, Participating Servicer has cured such default.

(aa) **Complete Collateral File**. The Collateral File, when delivered by Participating Servicer pursuant to and in accordance with Section 4.01(e), will be complete, and contain all of the items required to meet the definition of "Collateral File" in this Agreement.

(bb) **Good and Marketable Title**. Upon the assignment of a Mortgage Loan to HUD in accordance with the terms of this Agreement, HUD will have good and marketable title to such Mortgage Loan and the ability to obtain good and marketable title to the Mortgaged Property securing the Mortgage Loan through normal means, free and clear of any Lien (other than Liens which will be simultaneously released) or any outstanding obligation that may result in a priority lien over the Mortgage.

(cc) **No Litigation**. There is not currently pending any action, suit, proceeding or investigation based on the servicing of the Mortgage Loan by the Participating Servicer, nor threatened against the Participating Servicer, which may result in any material impairment of the right or ability of Purchaser to obtain marketable title or timely process eviction or foreclosure actions with respect to property secured by such Mortgage Loan.

**3.03**   **Repurchases and Other Remedies for Breach.**

(a) **Breach & Other Condition**. All breaches of Sections 3.01(f) or 3.02 (excluding Sections 3.02(m), 3.02(n), 3.02(w) or 3.02(z)) will be determined without reference to Participating Servicer's knowledge. Notwithstanding any qualification in the representation or warranty with regard to Participating Servicer's knowledge, the remedies available under this section for breach shall also be available upon the development of a condition or occurrence of any event described in Sections 3.02(m), 3.02(n), 3.02(w) or 3.02(z)) (hereinafter included in the term "breach").

Upon discovery by HUD with respect to any Mortgage Loan of a breach of any of the representations or warranties in Section 3.01(f) or 3.02, HUD shall give prompt Notice to the Participating Servicer. In such Notice, HUD shall identify the nature of the breach (including the representation(s) breached) as well as HUD's remedy for such breach to include cure, reduction in claim payment, or repurchase by the Participating Servicer. HUD shall have sole and absolute discretion to make the final determination as to the selection of a remedy for any breach.  Participating Servicer shall within sixty (60) calendar days, comply with the terms contained in the Notice and, as directed by HUD, (i) promptly cure such breach in all material respects, (ii) repay any amounts due and owing as a result of the reduction in the amount of claim payment, or (iii) repurchase such Mortgage Loan, in the manner and at the price specified in Section 3.03(c).

(b) **No Duty to Investigate; No Waiver**.  HUD shall have no duty to conduct any affirmative investigation as to the occurrence of any condition requiring the repurchase or cure of any Mortgage Loan pursuant to Section 3.03, including whether any Mortgage Loan constitutes or constituted as of the Claim Date an Eligible Mortgage Loan, and HUD's notice of an SFLS Claim Identification Date shall not constitute or be interpreted or treated as evidence of HUD's knowledge, or that HUD should have had knowledge of the existence, or the waiver by HUD, of any breach of any of Participating Servicer's representations, warranties, covenants or agreements contained in this Agreement.

(c) **Repurchase Price**. The Repurchase Price for any Mortgage Loan repurchased pursuant to Section 3.03(a) shall be paid by Participating Servicer to HUD within five (5) Business Days after the end of the sixty (60) calendar day period described in clause (i) of Section 3.03(a) and the date on which such payment is made shall be the Initial Repurchase Date.

**(d)** <u>Participating Servicer to Pay Cost of Cure</u>.  Subject to the provisions of the next succeeding sentence, in the event that a cure is affected with respect to a Mortgage Loan for which a breach of a representation or warranty in Section 3.02 was asserted, Participating Servicer shall be liable for the cost of such cure, without reimbursement from HUD.  In the event that any such cure can be affected by payment of money alone, and Participating Servicer would have been entitled to include all or some portion of such payment in its Approved Reimbursable Expenses if it had made such payment and, thereby, eliminated the cause of the breach prior to the Claim Date, then Participating Servicer shall be liable for the cost to cure such breach only to the extent that such payment exceeds the amount that Participating Servicer would have been entitled to include in its Approved Reimbursable Expenses.  Participating Servicer may not file any supplemental claims seeking reimbursement from HUD for cure costs for which Participating Servicer is liable under this Section.

**(e)** <u>HUD Representations Regarding Repurchased Mortgage Loans</u>.  Upon the repurchase by Participating Servicer of a Mortgage Loan hereunder, as of the date of such repurchase, HUD hereby makes the following representations and warranties with respect to such Mortgage Loan:

(i) the terms of the Mortgage Loan were not modified on or after the Claim Date by HUD or any HUD Successor;

(ii) HUD has title to, and the right to sell, transfer and assign to Participating Servicer, the Mortgage Loan and, immediately prior to its repurchase, the Mortgage Loan will not be subject to any Liens placed by HUD or any HUD Successor;

(iii) on and after the Claim Date, HUD and each HUD Successor employed usual and customary care in the servicing, administration and collection of the Mortgage Loan and the maintenance and preservation of the related Mortgaged Property;

(iv) no instrument of release or waiver was executed in connection with the Mortgage Loan and the Mortgagor was not released, in whole or in part, on or after the Claim Date by HUD or any HUD Successor;

(v) no act or omission on or after the Claim Date by HUD or any HUD Successor has caused (A) the priority of title to the Mortgaged Property or the Lien of the Mortgage to be less than that conveyed to HUD by Participating Servicer or, (B) except to the extent applied for its intended purpose or otherwise expended on the Mortgaged Property in a commercially reasonable manner, the Mortgaged Property securing the Mortgage Loan to be different from that securing the Mortgage Loan on the Claim Date;

(vi) no act or omission on or after the Claim Date by HUD or any HUD Successor has caused (A) a Claim of any Person to arise against HUD or any HUD Successor that, as a result of the repurchase pursuant to this Agreement, might be asserted against Participating Servicer, or (B) a Lien to encumber the Mortgage Loan;

(vii) the contents of the Collateral File and Mortgage File, when returned to Participating Servicer, will include the contents delivered by Participating Servicer pursuant to Section 4.01(e) and such other documentation as has been generated on or after the Claim Date by HUD or any HUD Successor to evidence activity with respect to the Mortgage Loan on and after the Claim Date, except to the extent that items missing from the Collateral File do not materially and adversely affect the ability of Participating Servicer to enforce the Mortgage Loan, and except to the extent that items missing from the Mortgage File do not materially and adversely affect the ability of Participating Servicer to service the Mortgage Loan;

(viii) the title policy referred to in Section 3.02(f), if in effect on the Claim Date and transferred to New Servicer on the Servicing Transfer Date, remains in effect or has been replaced with a comparable policy; and

(ix) the insurance policies referred to in Sections 3.02(g) and (h), if in effect on the Claim Date and transferred to New Servicer on the Servicing Transfer Date, remain in effect or have been replaced with comparable policies.

**(f) Breach of Section 3.03(e).** Participating Servicer may allege a breach of a representation or warranty in Section 3.03(e) only if and when the breach materially and adversely affects the value of the related Mortgage Loan and is not caused by Participating Servicer (including when the Participating Servicer is acting as the Interim Servicer). In the event Participating Servicer alleges such a breach of a representation or warranty in Section 3.03(e), Participating Servicer may demand that HUD repurchase the Mortgage Loan only if the breach is not curable by HUD or Participating Servicer. If a breach is curable, Participating Servicer shall notify HUD in writing of the same and the necessary cure and, subject to the provisions of the next succeeding sentence, HUD shall either cure such breach or authorize Participating Servicer to cure such breach and agree to pay the expenses of the same. HUD shall have sole and absolute discretion to make the final determination as to whether a breach is curable.

To the extent that an alleged breach is curable by the payment of money and the amount of such payment, had it been made by HUD or any HUD Successor prior to the Initial Repurchase Date, would have been includable (but was not included) as an advance when calculating the Repurchase Price, such amount shall be paid by Participating Servicer (without reimbursement from HUD). Subject to the foregoing, in the event there exists a breach of any of the representations or warranties in Section 3.03(e) with respect to a Mortgage Loan and HUD has determined that such breach is not curable, Participating Servicer shall not be required to repurchase such Mortgage Loan (or, if the repurchase has already been effected, shall be entitled to have the Mortgage Loan repurchased by HUD) but shall cooperate with HUD and use commercially reasonable efforts to cure the breach that led to the initial demand that Participating Servicer repurchase such Mortgage Loan and, if such breach is not curable, HUD and Participating Servicer shall negotiate in good faith to reach agreement on an appropriate reduction in the Claim Payment, taking into consideration the breach of Section 3.03(e). Any Mortgage Loan repurchased by

HUD pursuant to this Section shall be repurchased for an amount equal to the Reverse Repurchase Price and, the date on which payment of the Reverse Purchase Price is made shall be the Reverse Repurchase Date.

**(g) Extensions of Certain Times for Repurchased Mortgage Loans.** If a Mortgage Loan is repurchased by Participating Servicer pursuant to this Agreement and, on the Initial Repurchase Date, the time remaining, in order to avoid a curtailment of debenture interest, to take an action pursuant to 24 C.F.R. § 203.355 is less than ninety (90) calendar days, then the time within which Participating Servicer shall be required to take such action shall be and hereby is extended to the 90th calendar day after the Initial Repurchase Date.

**3.04    Representations and Warranties of HUD.**

HUD hereby represents and warrants to Participating Servicer as of the Effective Date:

**(a) Authority; Binding Agreement.** HUD has the power and authority to execute and deliver this Agreement and to perform in accordance herewith. The execution and delivery of this Agreement by HUD and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary action. This Agreement constitutes the valid and binding obligation of HUD, enforceable against HUD in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and the application of equitable principles in any proceeding, whether at law or in equity.

**(b) Approvals.** All actions, approvals, consents, waivers, exemptions, variances, franchises, orders, permits, authorizations, rights and licenses required to be taken, given or obtained, as the case may be, by or from any federal, state or other governmental authority or agency (other than any such actions, approvals, etc. under any state securities laws, real estate syndication or "Blue Sky" statutes, as to which HUD makes no such representation or warranty), that are necessary in connection with the execution and delivery by HUD of this Agreement and the consummation of the transactions contemplated hereby and the performance of its obligations hereunder, have been duly taken, given or obtained, as the case may be, are in full force and effect, are not subject to any pending proceedings or appeals (administrative, judicial or otherwise) and either the time within which any appeal therefrom may be taken or review thereof may be obtained has expired or no review thereof may be obtained or appeal there from taken.

**(c) No Breach.** The execution, delivery and performance by HUD of, and the consummation of the transactions contemplated by, this Agreement do not and will not (i) result in the breach of any term or provision of, or conflict with or constitute a default under, or result in the acceleration of any obligation under, any material agreement or

31

other material instrument to which HUD is subject, or (ii) result in the violation of any law, rule, regulation, order, judgment or decree to which HUD is subject.

**(d) No Litigation.** There is no action, suit, proceeding or investigation pending or, to the best of HUD's knowledge, threatened against HUD which, either in any one instance or in the aggregate, if determined against HUD, would reasonably be likely to draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of HUD contemplated herein, or to impair materially the ability of HUD to perform under the terms of this Agreement.

**(e) No Violation of Orders, Decrees, etc.** HUD is not in default with respect to any order or decree of any court or any order, rule, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would reasonably be likely to materially and adversely affect HUD's performance under this Agreement.

**3.05    Exclusive Remedies.**

Subject to Section 7.05, the right of HUD to require a cure, reduction in claim payment, or repurchase, and the obligation of Participating Servicer to cure, repurchase, repay any excess claim payments following a reduction pursuant to Section 3.03(a), constitute the sole and exclusive remedies of HUD for a breach of Participating Servicer's representations and warranties contained in Section 3.02. The right of Participating Servicer to refuse to repurchase a Mortgage Loan, as set forth in Section 3.03(f), and the obligation of HUD to pay the expense of curing or, if applicable, to negotiate in good faith to agree on a Claim Payment reduction as set forth in Section 3.03(a) and (f), with respect to any such Mortgage Loan are the sole and exclusive remedies of Participating Servicer and the sole and exclusive obligations of HUD in the event there exists a breach of Section 3.03(e). The sole and exclusive remedy of Participating Servicer for a breach of any of HUD's representations and warranties set forth in Section 3.04 shall be to declare a default pursuant to Section 7.02 and exercise its rights pursuant to Section 7.04.

**3.06    Limitations on Representations and Related Remedies.**

Except with respect to any breach of Section 3.02(f) or Section 3.02(x), notice of a breach of a representation or warranty made by Participating Servicer in Section 3.02 with respect to a Mortgage Loan must be made, in writing and delivered to Participating Servicer, within twelve (12) months after the Servicing Transfer Date for such Mortgage Loan. In the event no Notice is received alleging a breach of any of such representations or warranties with respect to a Mortgage Loan within such twelve (12) month period, then the representations and warranties contained in Section 3.02 (other than in Section 3.02(f) or (x)), and the rights and remedies of HUD in Section 3.03, as they relate to such Mortgage Loan, shall expire and be of no further force or effect. The representations and warranties in Section 3.02(f) and 3.02(x) shall survive and shall not be subject to the

limitations contained in this Section.  Notice of a breach of a representation or warranty made by HUD in Section 3.03(e) with respect to a repurchased Mortgage Loan must be made, in writing and delivered to HUD, within three (3) months after the repurchase date for such Mortgage Loan.  In the event no Notice is received alleging a breach of any of such representations or warranties with respect to a Mortgage Loan within such three (3) month period, then the representations and warranties contained in Section 3.03(e), and the rights and remedies of Participating Servicer in Section 3.03(f), as they relate to such Mortgage Loan, shall expire and be of no further force or effect.

**ARTICLE IV**

**INDEMNIFICATION AND OTHER COVENANTS**

4.01   <u>Participating **Servicer's Indemnification and Other Covenants**</u>.

Participating Servicer hereby indemnifies and holds harmless HUD and its employees, agents, contractors, representatives and attorneys ("HUD Indemnified Parties") from and against any and all Claims alleged and Losses incurred as a result of (i) the breach or inaccuracy of any of Participating Servicer's representations or warranties in Section 3.01, and (ii) the breach by Participating Servicer of any agreement, covenant or obligation contained in this Agreement.

Participating Servicer covenants and agrees further as follows:

(a) <u>No Releases or New Foreclosures</u>.  Except as is permitted hereunder during the Post Claim Servicing Period, on and after the Claim Date, Participating Servicer shall not, and shall not cause any other Person to, release the Mortgage (in whole or in part) with respect to any Mortgage Loan.  Except as directed in writing by HUD or New Servicer, after the receipt of an SFLS Claim Identification Date for a Eligible Mortgage Loan and, if no Insurance Claim is filed with respect thereto, until such time as SFLS Claim Identification Date is rescinded or expires, Participating Servicer shall not initiate a foreclosure with respect to such Eligible Mortgage Loan including during any Post Claim Servicing Period.

(b) <u>Delivery Requirement</u>.  Beginning on the Earliest Claim Submission Date, Participating Servicer shall file Insurance Claims for and assign to HUD up to the total number of loans included in the Award Report.  The Parties may mutually agree that Participating Servicer may submit Insurance Claims on additional mortgage loans under this Agreement.

(c) <u>Endorsements and Assignments</u>.  For each Mortgage Loan, Participating Servicer shall prepare and deliver to HUD certain endorsements and Assignments of Mortgage, as set forth in this Section and the instructions set forth on Exhibit A.  The documents prepared by Participating Servicer shall meet the requirements of this Section 4.01(c) and shall be substantially in the form of the applicable form

33

documents attached hereto as Exhibits A-1 through A-5 with only those modifications as are necessary to complete the missing information required to be inserted therein and as may be required to comply with applicable Transfer/Recordation Requirements.

(i)     Each Mortgage Note shall be endorsed (on the Mortgage Note and not by allonge), effective as of the Claim Date, to HUD, in the following manner:

"Payable to the order of the Secretary of Housing and Urban Development of Washington, D.C., and his/her successors and assigns, without recourse."

//s// [Joe Smith]_____

[Joe Smith], Vice President

ABC Bank

unless, in the jurisdiction in which the Mortgaged Property lies, it is required that the person holding the office of Secretary be named, in which case, the endorsement shall be made in the following manner:

"Payable to the order of [name of person] as Secretary of Housing and Urban Development, Washington, D.C., and his/her successors and assigns, without recourse".

//s// [Joe Smith]_____

[Joe Smith], Vice President

ABC Bank

If the original Mortgage Note is not available, in lieu of the foregoing endorsements, Participating Servicer shall prepare an Assignment and Lost Note Affidavit in the form of Exhibit A-3 as well as an Assignment of Lost Note Affidavit in the form of Exhibit A-4 (if the Mortgage Note was misplaced by Participating Servicer) or an Assignment of Lost Note Affidavit in the form of Exhibit A-5 and an Assignment of Lost Note Affidavit in the form of Exhibit A-4 (if the Mortgage Note was misplaced by a prior holder).

(ii)    For each Mortgage not registered in MERS, Participating Servicer shall prepare an Assignment of Mortgage in the form of Exhibit A-1, effective as of the Claim Date, from Participating Servicer to HUD.

Participating Servicer shall also prepare a second Assignment of Mortgage, effective as of the Claim Date and in form and substance recordable under applicable law, from the Secretary of Housing and Urban Development to such transferee as HUD shall direct by Notice from HUD to Participating Servicer delivered prior to the Claim Date. Each such Assignment of Mortgage shall be

substantially in the form of Exhibit A-2, with only such variations therefrom as are described in this Section 4, the instructions included as Exhibit A or as Participating Servicer determines are required to comply with applicable Transfer/Recordation Requirements.

(iii) Participating Servicer shall not record either of the Assignments of Mortgage and shall not execute the second assignment (the assignment from HUD), but shall deliver all such assignments and endorsed Mortgage Notes and any lost note affidavits and assignments as part of the Collateral File in accordance with Section 4.01(e).

(iv) For each Mortgage registered in MERS, Participating Servicer shall, within ten (10) Business Days after the Claim Date, register a transfer of beneficial rights to HUD within MERS, effective as of the Claim Date, and follow any other procedures in the MERS Procedures Manual or MERS Terms and Conditions to facilitate a transfer of beneficial rights to HUD. At the direction of HUD, Participating Servicer shall remove Mortgages from the MERS system and prepare Assignments of Mortgages and deliver them as specified in subsections (ii) and (iii) above.

(d) **BPOs and Supplemental Information**. For each Eligible Mortgage Loan with respect to which an SFLS Claim Identification Date is issued (and with respect to which Participating Servicer intends to submit an Insurance Claim), Participating Servicer shall:

(i) within two (2) Business Days after the receipt of a SFLS Claim Identification Report verify the accuracy of the mortgagee identification number, address of the Mortgaged Property and name of the current holder on the FHA Connection Portfolio screen and, if necessary, update HUD's records to correct any inaccuracies in this information, then print and deliver the corrected screen to HUD, along with the Transmittal Sheet, all in the manner and otherwise as directed in Section 4.2 of the Desk Guide;

(ii) on or before BPO Order Date, order a BPO from a BPO Provider, and, no later than  SFLS Claim Submission Report  Date make the BPO available to HUD (and direct and authorize the BPO Provider to make the BPO available to HUD) pursuant to Section 4.1 of the Desk Guide; and

(iii) on the SFLS Claim Submission Report Date, submit the information set forth on the BPO in the format provided in Exhibit E of this Agreement.

(e) **Collateral Files and Mortgage Files**. On the Due Diligence Due Date, Participating Servicer shall deliver imaged copies of the Due Diligence Servicing Files for each Mortgage Loan to HUD via overnight mail. With the exception of the Collateral File, Participating Servicer shall use reasonable efforts to exclude Personally Identifiable Information (PII) from documents provided as part of the Due Diligence Servicing

Files.  Notwithstanding the definition of Collateral File and any other provision of this Agreement, the Mortgage Note will not be endorsed to HUD prior to the Claim Date.

For each Mortgage Loan, the related Collateral File shall be delivered to such parties as HUD shall direct, within ten (10) Business days of the Settlement Date, in both hard copy and as imaged documents. The Participating Servicer shall deliver the complete related Mortgage File (including PII information) to the New Servicer on the Servicing Transfer Date, all as set forth herein and otherwise in accordance with the Desk Guide.  For purposes of this Section, delivery shall be deemed to have occurred when a Mortgage File or Collateral File is confirmed as received by the recipient.  Until such time as a Collateral File or Mortgage File is confirmed to have been received by the recipient, Participating Servicer shall bear the risk of loss with respect to the Collateral File and Mortgage File.  The Participating Servicer shall retain an imaged copy of the Collateral and Mortgage File for at least twelve (12) months after delivery to the New Servicer.

(f) **Preservation of Rights to Insurance**.  In connection with the transfer of the servicing to any Mortgage Loan, Participating Servicer shall notify all insurers of the transfer of such Mortgage Loans to New Servicer and shall otherwise cause to be performed any and all acts required to be performed to preserve the rights and remedies of New Servicer in any insurance policies applicable to the Mortgage Loans (other than blanket policies), including any assignments or endorsements of policies or interests therein, and establishments of co-insured, joint loss payee and mortgagee rights in favor of New Servicer.

(g) **Notice of Transfer of Servicing ("Goodbye Letters")**.  Participating Servicer shall, at its expense, prepare and send to the Mortgagor with respect to each Mortgage Loan identified in each Settlement Statement, a Notice of Transfer of Servicing (a "Goodbye" letter) advising such Mortgagor of the transfer of servicing for their Mortgage Loan. Participating Servicer shall include in such notice all information required by applicable law, including  RESPA and TILA, and prudent servicing practices to be provided to a Mortgagor by Participating Servicer (as a servicing transferor) in connection with the servicing transfer. This Goodbye Letter shall also include notice to the Mortgagor that the FHA mortgage insurance on the Mortgagor's loan has been or will be terminated and no further mortgage insurance premiums will be due, and other information required by HUD and described in the Desk Guide.

In the event a Goodbye letter is sent to a Mortgagor and the servicing for the related Mortgage Loan is not transferred to a new servicer, then Participating Servicer shall send (on behalf of itself) a second letter to such Mortgagor advising such Mortgagor that the servicing transfer will not take place.   Furthermore, in the event a Mortgage Loan is subject to repurchase pursuant to this Agreement, the Participating Servicer shall send (on behalf of itself and New Servicer) a second letter to the Mortgagor advising the Mortgagor of such repurchase, the reinstatement of  their FHA mortgage insurance <u>and</u> the reinstatement of  their FHA mortgage insurance premium

obligation.  Any such correspondence with the Mortgagor shall be in compliance with applicable law, including RESPA and TILA.

(h) **Notice to Tax Authorities and Bankruptcy Trustees**.  In connection with the transfer of the servicing and ownership for any Mortgage Loans, Participating Servicer shall provide written notice to tax bill services or tax authorities (as applicable) of the assignment of the Mortgage Loans and shall provide notice, in accordance with applicable court procedures, to bankruptcy trustees with respect to the assignment of any Bankruptcy Loans.  Copies of all such notices shall be provided to New Servicer.

(i) **Tax Reporting**.  For any period prior to (but not including) the Servicing Transfer Date, Participating Servicer shall prepare, report to the Internal Revenue Service and provide to Mortgagors, all in accordance with applicable law, rules and regulations, any and all tax information required to be provided with respect to the Mortgage Loans for that period.  Participating Servicer shall not be obligated hereunder to prepare, provide to Mortgagors or report to the Internal Revenue Service such tax information for any period after (and including) the Servicing Transfer Date.

(j) **Invoices**.  All bills and invoices (including taxes and insurance) relating to the Eligible Mortgage Loans for which an SFLS Claim Identification Date is received, which bills and invoices are received by Participating Servicer before the Claim Date, regardless of when due or payable, and all utility, homeowners association fees, condominium fees and similar bills, that are due as of the Claim Date and about which Participating Servicer has knowledge prior to the Claim Date, shall be paid by Participating Servicer prior to the Claim Date.

(k) **Post-Servicing Transfer Date Items**.  Any checks or other funds with respect to a Mortgage Loan that are received by Participating Servicer after the Servicing Transfer Date shall be endorsed, without recourse, and forwarded by Participating Servicer on a weekly basis, by overnight delivery service, to New Servicer.  All Mortgagor and insurer correspondence, tax bills and other correspondence or documentation relating to the Mortgage Loans that is received by Participating Servicer after the Servicing Transfer Date shall be delivered promptly to New Servicer.

(l) **Servicing and Payment History Information**.  On or before the SFLS Claim Submission Report Date, the Participating Servicer shall deliver to HUD the following materials: (i) Loan Servicing Comments on the Mortgage Loans for at least the last 23 months and up to 36 months, to the extent such histories are available; and (ii) Payment Histories on the Mortgage Loans for at least the last 23 months and up to 36 months, to the extent such histories are available.

**(m) Servicing Transfer Information.** Within five (5) Business Days after the Servicing Transfer Date for any Mortgage Loans, Participating Servicer shall deliver to New Servicer with respect to such Mortgage Loans:

(i) a trial balance as of Claim Date, if available, and as of the Servicing Transfer Date that reflects the Unpaid Principal Balance prior to application of the FHA Insurance Claim Proceeds and any subsequent Mortgagor payments;

(ii) a list or indication on the trial balance information sheet, identifying Bankruptcy Loans, and Mortgage Loans with respect to which the foreclosure process has been initiated or with regard to which litigation exists;

(iii) master record data as of the Servicing Transfer Date in an electronic format;

(iv) one or more reports itemizing dates and amounts of payments received and applied, including each principal and interest payment, tax payment, special assessment, hazard insurance premium payment, mortgage insurance premium payment, ground rent payment and other payments (including each advance);

(v) histories for a period of not less than 23 months and up to 36 months, to the extent such histories are available, prior to the Servicing Transfer Date;

(vi) escrow data, including escrow balances, coverage, accrual and payees;

(vii) default data, including any modification and repayment plan terms and the names and addresses of any foreclosure or bankruptcy attorneys or trustee; and

(viii) to the extent not included in the foregoing, the records and information required to be provided to New Servicer in accordance with Section 5.02(g).

Without limiting the foregoing, Participating Servicer shall capture the Unpaid Principal Balance (and any escrow and other balances) of each Mortgage Loan as of the Claim Date and thereafter record all activity (each individual transaction) with respect to the Mortgage Loan during the Post Claim Servicing Period and provide such information electronically to New Servicer in a format that allows New Servicer to readily reconcile the balance of each Mortgage Loan as of the Servicing Transfer Date. Furthermore, for any Mortgage Loan registered in MERS, Participating Servicer shall, within five (5) calendar days after the Servicing Transfer Date for any Mortgage Loan, register a transfer of servicing rights on MERS to the New Servicer, effective as of the Servicing Transfer Date, in accordance with the MERS Procedures Manual, the MERS Terms and Conditions, and the Participating Servicer Desk Guide, unless otherwise directed by HUD.

**(n) Life of the Loan Contracts.** Any life of loan tax contracts and/or flood service contracts required by FHA rules or regulations with respect to the Mortgage Loans will be transferred to the New Servicer on the Servicing Transfer Date.

(o) **Foreclosure Sale.** For each Mortgage Loan for which no foreclosure sale has been scheduled  as of the SFLS Claim Submission Report Date, Participating Servicer will not schedule such a foreclosure sale. For each Mortgage Loan for which a foreclosure sale has been scheduled after the NFS Date as set forth in the Schedule of Dates, Participating Service will postpone such sale, unless prohibited by state law.

HUD will grant Participating Servicer an extension of the six-month deadline to take the first legal action to initiate foreclosure, or the Reasonable Diligence Time Frames, as appropriate, for a Mortgage Loan that was included on the SFLS Claim Identification Report prior to expiration of the six-month deadline or the Reasonable Diligence Time Frame, as applicable. Each extension shall be for the same number of days as the Participating Servicer spent attempting to process the Insurance Claim through this Sale provided that (i) the Mortgage Loan was eligible as of the SFLS Claim Submission Report Date but later became ineligible for the Sale for which the Mortgage Loan was submitted, or (ii) the Mortgage Loan was not awarded; and Participating Servicer failed to meet the first legal action to initiate foreclosure deadline or Reasonable Diligence Time Frames set forth in Mortgagee Letter 2013-38, Attachment 1, as the direct result of the Participating Servicer's attempt to process the related Insurance Claim through the Sale. HUD will grant this extension to allow Participating Servicer to complete an action pursuant to the CWCOT procedures herein or 24 C.F.R. § 203.355 and avoid curtailment of debenture interest when such curtailment would occur solely as the result of a delayed foreclosure sale in order to comply with the terms of this Agreement.

**4.02    HUD's Covenants.**

HUD covenants and agrees as follows:

(a) **Transfer of Servicing Direction.** By electronic mail notice delivered to Participating Servicer, HUD shall identify the following: (i) the Mortgage Loans for which servicing shall be transferred and for which Participating Servicer is directed to prepare and send "goodbye/hello" letters in accordance with Section 4.01(g), (ii) the Purchaser, and (iii) Purchaser information including the name telephone number and other contact information of the contact person at Purchaser with whom Participating Servicer is to correspond and coordinate servicing transfer activities.  On each such Servicing Transfer Date, the servicing with respect to the Mortgage Loans identified as those for which the servicing is to be transferred on that Servicing Transfer Date shall be transferred.

(b) **Recordation of Assignments.**  Prior to the Claim Date, HUD shall not record any assignment of a Mortgage which relates to that Insurance Claim.

**4.03    Indemnification Procedures and Limitations.**

(a) **Notice.**  In the event any Claim is made or any event occurs which would give rise to a right of indemnification by any HUD Indemnified Party against Participating

Servicer, such HUD Indemnified Party shall give Notice to Participating Servicer no later than twenty (20) calendar days after such HUD Indemnified Party receives notice of such Claim or event, describing in reasonable detail the facts forming the basis of such Claim and the basis on which it asserts a right to indemnification hereunder. The failure to give such Notice or delay in giving such Notice pursuant to the preceding sentence shall not relieve Participating Servicer of its obligation to indemnify except to the extent Participating Servicer is materially prejudiced thereby.

(b) <u>Selection of Counsel</u>. Unless criminal actions are alleged, or Participating Servicer is also a Person against whom a third party Claim is made and the HUD Indemnified Party determines in good faith that, as a result of conflicting defenses available to Participating Servicer and the HUD Indemnified Party, joint representation would be inappropriate (in either of which cases, the HUD Indemnified Party shall have the right to defend the Claim at Participating Servicer's expense), Participating Servicer shall have the right to assume control of the defense, compromise and settlement of the Claim, in its name or in the name of the HUD Indemnified Party, at the expense and with counsel and other representatives selected by Participating Servicer (and reasonably satisfactory to the HUD Indemnified Party); provided, however, that Participating Servicer shall not (i) compromise or settle a Claim unless it assumes the obligation to indemnify for all Losses relating thereto, or (ii) compromise or settle any third party Claim without the consent of the HUD Indemnified Party (A) if injunctive or other equitable relief would be imposed against the HUD Indemnified Party or (B) such settlement or compromise does not provide for the release of the HUD Indemnified Party of liability with respect to the Claim.

Participating Servicer shall notify the HUD Indemnified Party within ten (10) Business Days of having been notified pursuant to Section 4.03(a) whether Participating Servicer elects to assume the defense of any such Claim and employ counsel, provided, however, that the HUD Indemnified Party does not object to such counsel in the reasonable exercise of its discretion. The HUD Indemnified Party shall have the right to employ its own counsel if Participating Servicer so elects to assume such defense, but the fees and expenses of such counsel shall be at the HUD Indemnified Party's expense, unless (i) the employment of such counsel shall have been authorized in writing by Participating Servicer; (ii) Participating Servicer shall not have promptly employed counsel to take charge of the defense of such action after electing to assume the defense thereof; or (iii) such HUD Indemnified Party shall have reasonably concluded that there may be defenses available to it that are different from or additional to those available to Participating Servicer or criminal actions are alleged against the HUD Indemnified Party (in either case, Participating Servicer shall not thereafter have the right to continue to direct the defense of such action on behalf of the HUD Indemnified Party), in any of which events said reasonable fees and expenses shall be borne by Participating Servicer. Subject to 24 C.F.R Part 15, the HUD Indemnified Party shall cooperate with Participating Servicer in connection with the defense of any third party Claim and make available, upon reasonable notice during ordinary business hours, its employees and records, and shall provide

Participating Servicer with such information as to the defense of such Claim as Participating Servicer shall reasonably request.

(c) <u>Settlement of Claims</u>. The HUD Indemnified Party may notify Participating Servicer at any time by Notice to Participating Servicer of its intention to settle or compromise any Claim against the HUD Indemnified Party in respect of which indemnification payments may be sought from Participating Servicer, but shall not settle or compromise any Claim for which indemnification may be sought, in excess of $5,000, without the consent of Participating Servicer. Any settlement or compromise of any Claim in accordance with the preceding sentence, or any final judgment or decree entered with respect to any Claim with respect to which Participating Servicer did not assume the defense in accordance herewith, shall be deemed to have been consented to by, and shall be binding upon, Participating Servicer as fully as if Participating Servicer had assumed the defense thereof and a final judgment or decree had been entered with regard to such Claim by a court of competent jurisdiction for the amount of such settlement, compromise, judgment or decree.

4.04    <u>Limitations on Indemnification and Damages</u>.

(a) <u>Actual Losses Only</u>. Regardless of whether a Claim is made by one Party against the other Party or by a third party against a Party, and regardless of whether any such Claim is asserted pursuant to an indemnification provision or otherwise (whether based on contract, tort, strict liability or any other legal theory, including fraud), except for such other or additional amounts as HUD is permitted to recover under any statute, rule or regulation, a Party may recover from the other Party only the actual Losses incurred by the Party claiming recovery, including such Party's costs and expenses (including attorneys' fees and litigation and similar costs) to pursue such recovery.

(b) <u>No Consequential Damages</u>. Without limiting the provisions in Section 4.04(a), except for such other or additional amounts as HUD is permitted to recover under any statute, rule or regulation, neither Party shall indemnify or otherwise be liable to the other Party, under any theory of contract, tort, strict liability or other legal or equitable theory, including fraud, for any consequential, special, indirect or punitive damages, including lost profits or operating losses or lost investment or business opportunity (regardless of whether any such damages are characterized as direct or indirect), exemplary damages, treble damages or nominal damages, each of which is hereby excluded by agreement of the Parties, regardless of whether or not the other Party has been advised of the possibility of any such damages, unless, in each case, such Losses are incurred by the Party asserting the Claim as a direct result of a Claim asserted against such Party by a third party (other than an Affiliate, director, officer, partner, employee, agent or contractor of such Party).

(c) **Performance Condition**.  Neither Party shall indemnify or otherwise be liable to the other Party for any Losses with respect to which the Party asserting the Claim has failed, in any material respect, to perform its obligations under this Agreement.

(d) **Recoveries**.  Neither Party shall make any Claim or seek indemnification or otherwise seek recovery from the other Party for any Loss that is reimbursed by or recovered from any other Person, including any insurer and including any Loss that is recoverable through the use by such Party of a direct contractual right of or tax benefit available to it.

(e) **Mitigation**.  Each Party shall be obligated to use commercially reasonable efforts to mitigate all Losses that could be incurred by it and for which it seeks or may seek indemnification or recovery, subject to Section 7.05 of this Agreement, from the other Party upon becoming aware of any event that could give rise to Losses, including seeking to recover such Losses from a third party against whom such Party has a right of action, provided, however, that neither Party shall be required to litigate or pursue any other formal action (such as arbitration) against a third party in order to mitigate a Loss unless both Parties agree to do so.

4.05    **Redelivery of Insurance Claims; Reassignment of Mortgage Loans**.

(a) **Rejection of Suspended and Other Insurance Claims**.  In its sole and absolute discretion, HUD may reject for processing and redeliver to Participating Servicer any Suspended Claim that (A) is not an Eligible Mortgage Loan, (B) with respect to which Participating Servicer has failed to comply with its obligations under Section 2.03, or (C) is a Suspended Claim on the day that is thirty (30) calendar days after the submission of the Insurance Claim.  In the event HUD requires that a Suspended Claim be redelivered to Participating Servicer pursuant to the preceding sentence, within five (5) Business Days after Participating Servicer's receipt of notice of the same (which may be delivered by electronic mail), the redelivery shall be deemed to have occurred and, as soon as practical after receipt of Notice from Participating Servicer requesting the same, HUD shall deliver to Participating Servicer all related collections and other amounts remitted to HUD or New Servicer after the Claim Date, *plus* the balance of all escrow and suspense accounts at the time of the redelivery. For all redeliveries of Suspended Claims, as soon as practical after Notice to HUD from Participating Servicer requesting the same, HUD shall return to Participating Servicer any endorsements and assignments delivered in connection with the submission of the Insurance Claim, all of which shall be cancelled, and the remainder of the Collateral File delivered in connection with the submission of the Insurance Claim.

**(b) Reassignment of Mortgage Loans**.  For each Mortgage Loan repurchased by Participating Servicer under this Agreement, HUD shall, as soon as practical after receipt of Notice from Participating Servicer requesting the same, (i) reassign such repurchased Mortgage Loan to Participating Servicer (or the holder thereof as of the Claim Date) by delivery of a Mortgage assignment and (ii) deliver to Participating Servicer the Mortgage Note, duly endorsed without recourse to Participating Servicer (or the holder thereof as of the Claim Date), and the remainder of the Collateral File and the Mortgage File.  Participating Servicer shall pay all costs and fees of recording any Mortgage assignment delivered for any Mortgage Loan repurchased pursuant to this Agreement, including an assignment of the Mortgage to HUD from a HUD Successor.

**(c) Reinstatement of FHA Insurance**.  In the event any Mortgage Loan is repurchased pursuant to this Agreement, and FHA insurance was actively in effect on such Mortgage Loan on the Claim Date, upon request of Participating Servicer by Notice to HUD and compliance by Participating Servicer (or the holder thereof as of the Claim Date) with such conditions as HUD may specify (including payment of all FHA insurance premiums due or that would have been due but for the termination of the FHA insurance), HUD shall reinstate the FHA insurance on such Mortgage Loan as if the FHA insurance had never been terminated.  Following reinstatement of FHA insurance on any Mortgage Loan repurchased pursuant to this Agreement, all relevant FHA statutes, regulations, handbook and mortgagee letter guidance for the payment of a full-conveyance insurance claim will apply to any claim subsequently submitted for the insured Mortgage Loan.

**(d) Extensions of Certain Times for Redelivered Mortgage Loans**.  If a Mortgage Loan is redelivered by HUD pursuant to this Agreement and, at the time of such redelivery, the time remaining, in order to avoid a curtailment of debenture interest, to take an action pursuant to 24 C.F.R. § 203.355 is less than ninety (90) calendar days, then the time within which Participating Servicer shall be required to take such action shall be and hereby is extended to the 90th calendar day after the redelivery date.

## ARTICLE V

## POST-CLAIM SERVICING

**5.01    Post-Claim Servicing Period**.

Following the Claim Date, Participating Servicer shall continue to service the Mortgage Loans and Suspended Claims until the Servicing Transfer Date ("Post-Claim Servicing Period").  For Mortgage Loans registered in MERS, Participating Servicer shall remain as servicer of record on MERS during the Post-Claim Servicing Period.  The Servicing Transfer Date for any Mortgage Loan shall be the date identified by HUD to Participating

Servicer in accordance with Section 4.02(a), but shall not be later than the day that is three (3) months after the Claim Date for the last Insurance Claim submitted hereunder.

**5.02**   <u>Post-Claim Servicing Responsibilities</u>.

During the Post-Claim Servicing Period, Participating Servicer shall comply with the obligations contained in this Section and in the Interim Servicing Agreement attached as Exhibit C. The Participating Servicer and Purchaser(s) shall both execute the Interim Servicing Agreement. The Interim Servicing Agreement may only be modified by mutual consent of the parties thereto.

Except as otherwise expressly set forth herein, Participating Servicer shall service and administer a Suspended Claim or Mortgage Loan identified for repurchase as a Mortgage Loan according to the terms of the Interim Servicing Agreement during the Post-Claim Servicing Period, with the exception that any services to be provided on behalf of the Purchaser or the New Servicer will instead be provided on behalf of HUD. Additionally, for a Suspended Claim or Mortgage Loan identified for repurchase, any direction or consent to be provided under the Interim Servicing Agreement by the Purchaser or the New Servicer will instead be provided by HUD.

**5.03**   <u>Servicing Standards</u>.

Except as is otherwise expressly set forth in this Article V or the provisions of the Interim Servicing Agreement or directed in writing by HUD, Participating Servicer shall continue, until the Claim Payment (if any) is made, to service, administer and collect all Suspended Claims in accordance with applicable FHA servicing requirements and standards with not less than the degree of care, skill, prudence and attention that Participating Servicer generally exercises with respect to other comparable FHA-insured single-family mortgage loans and Mortgaged Properties that it services for itself. Except as is otherwise expressly set forth in this Article V or the Interim Servicing Agreement or directed in writing by the Purchaser, Participating Servicer shall service, administer, collect and foreclose on the Mortgage Loans other than the Suspended Claims in accordance with the customary and usual procedures of institutions which service and collect similar mortgage loans or receivables portfolios secured by similar properties and, in any event, not less than the degree of care, skill, prudence and attention that Participating Servicer generally exercises with respect to comparable loans that it services for itself.

**5.04**   <u>Power and Authority</u>.

During the Post Claim Servicing Period, Participating Servicer shall service, administer and collect the Mortgage Loans and the Suspended Claims in compliance with the terms of the Interim Servicing Agreement.

## ARTICLE VI

## AUDITS

**6.01** **Audits**.

Without limiting their rights under applicable statutes, rules and regulations, HUD, the General Accounting Office, the Office of the Inspector General and any other federal government agency or instrumentality and any Person designated by any of the foregoing may, from time to time, upon reasonable notice to and during normal business hours of Participating Servicer, conduct audits and compliance and other reviews of any matter relating to this Agreement (including the payment of any Claim Payment) and shall be entitled to review, during any such audit or compliance or other review, Participating Servicer's books, papers, records, accounts and servicing practices and procedures to the extent the same relate to this Agreement. Participating Servicer shall make available, during any such audit or compliance or other review, all books, papers, records and accounts that relate to this Agreement and Participating Servicer's activities hereunder or in connection herewith and information concerning Participating Servicer's servicing practices and procedures. Participating Servicer shall make available for interviews during any such audit or compliance or other review Participating Servicer's personnel, and Participating Servicer shall bear any costs and expenses incurred by it in making available its personnel (including the expense of their wages and salaries) and in making available its books, papers, records, accounts and information concerning its servicing practices and procedures. Without limiting the foregoing, it is anticipated that HUD will conduct annual compliance reviews with respect to Participating Servicer's obligations under this Agreement.

## ARTICLE VII

## EVENTS OF DEFAULT

**7.01** **Participating Servicer Events of Default**.

The following events shall constitute a default by Participating Servicer of this Agreement (each a "Servicer Event of Default"):

(a) the breach by Participating Servicer of any provision of this Agreement other than Section 3.02, all breaches of which shall be governed by Section 3.03, and the failure of Participating Servicer, within five (5) Business Days of Notice of the same to Participating Servicer by HUD, either to cure such breach or to provide HUD with a plan acceptable to HUD to cure such breach. Notwithstanding the preceding paragraph, if a Participating Servicer acted reasonably to prevent the disclosure of Personally Identifiable Information in the Due Diligence Servicing File, the inadvertent inclusion of such information in the imaged documents shall not constitute a breach of Section 4.01(e);

(b) Participating Servicer is indicted for or convicted of a crime, or any act or omission of Participating Servicer under or in connection with this Agreement is grossly negligent or constitutes fraud or willful misconduct;

(c) the breach by Participating Servicer of any of Participating Servicer's representations or warranties contained in Section 3.01 and the failure of Participating Servicer, within five (5) Business Days after Notice of the same to Participating Servicer by HUD, either to cure such breach or to provide HUD with a plan acceptable to HUD to cure such breach; or

(d) there occurs, with respect to Participating Servicer, or any Person controlling Participating Servicer, an Insolvency Event.

**7.02** **HUD Events of Default**.

The following events shall constitute a default by HUD of this Agreement (each a "HUD Event of Default"):

(a) the breach by HUD of any material provision of this Agreement and the failure of HUD, within five (5) Business Days after Notice of the same to HUD by Participating Servicer, either to cure such breach or to provide Participating Servicer with a plan to cure such breach; or

(b) the breach by HUD of any representation or warranty contained in Section 3.04 and the failure of HUD, within five (5) Business Days after Notice of the same to HUD by Participating Servicer, either to cure such breach or to provide Participating Servicer with a plan to cure such breach.

**7.03** **HUD Remedies for Servicer Event of Default**.

Subject to Section 7.05, in the event of the occurrence of any Servicer Event of Default, HUD may terminate this Agreement, and make a Claim against and recover from Participating Servicer, subject to such limitations on recoveries as are set forth in Section 4.04, pursuant to the indemnification provisions of this Agreement, which provisions shall survive any termination of this Agreement.  Upon termination of the Agreement pursuant to this Section, all rights and obligations of the Parties hereunder shall terminate except for such rights and obligations as the Parties may have with respect to Mortgage Loans for which Insurance Claims were properly submitted prior to the date of termination (but excluding any such Insurance Claims that are or become Suspended Claims unless HUD, in its sole and absolute discretion, makes a Claim Payment), including the representations and warranties of the Parties, the right of Participating Servicer to receive Claim Payments, the right of HUD to require cures, redeliveries and repurchases, and the right of Participating Servicer to receive reassignments and reinstatements of FHA insurance for repurchased Mortgage Loans.

**7.04** **Participating Servicer Remedies for HUD Event of Default**.

In the event of the occurrence of any HUD Event of Default, Participating Servicer may terminate this Agreement and make a Claim against HUD for any actual Losses and (subject to the limitations set forth in Section 4.04) recover from HUD such Losses incurred by Participating Servicer as a result of the occurrence of the HUD Event of Default.  Upon termination of this Agreement pursuant to this Section, all rights and obligations of the Parties hereunder shall terminate except for such rights and obligations

as the Parties may have with respect to Mortgage Loans for which Insurance Claims were properly submitted prior to the date of termination (but excluding any such Insurance Claims that are or become Suspended Claims unless HUD, in its sole and absolute discretion, makes a Claim Payment), including the representations and warranties of the Parties as they relate to such Mortgage Loans, the right of Participating Servicer to receive Claim Payments, the right of HUD to require cures, redeliveries and repurchases, and the right of Participating Servicer to receive reassignments and reinstatements of FHA insurance for repurchased Mortgage Loans.

7.05   Additional Remedies of HUD.

Notwithstanding any other provision to the contrary, nothing in this Agreement shall in any way limit the rights and remedies available to HUD pursuant to any statute, rule or regulation for any act or omission of Participating Servicer regardless of whether such act or omission constitutes a Servicer Event of Default or a breach of this Agreement, nor shall any provision of this Agreement constitute a waiver of any right or responsibility of HUD or any other Federal agency to investigate or initiate other actions pursuant to its lawful authority.

## ARTICLE VIII
## MISCELLANEOUS

**8.01   Survival.**

The representations, warranties, covenants and agreements of the Parties contained in this Agreement shall survive the sale and transfer of any Mortgage Loan and the payment of any Insurance Claim and, to the extent set forth in Sections 7.03 and 7.04, the termination of this Agreement.

**8.02   Amendment.**

Except as is permitted pursuant to Section 8.16, this Agreement may not be amended except by an instrument in writing signed on behalf of Participating Servicer and HUD.

**8.03   Counterparts.**

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall be considered one and the same instrument.

**8.04   Entire Agreement.**

This Agreement (including all exhibits hereto) contains the entire agreement between Participating Servicer and HUD and supersedes all prior oral and written negotiations, agreements, arrangements, representations, warranties and understandings relating to the subject matter hereof.

8.05   **Rights Cumulative; Waiver.**

Except as otherwise expressly provided herein, the rights of each of the Parties under this Agreement are cumulative, may be exercised as often as any Party considers appropriate and are in addition to each such Party's rights under law.  The Parties may not waive or vary any right hereunder except by an express written waiver or variation.  Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right.

8.06   **Construction.**

The section and article headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement. References in this Agreement to articles, sections and subsections are to articles, sections and subsections of this Agreement.  This Agreement shall be construed fairly as to both Parties and not in favor of or against either Party regardless of which Party prepared this Agreement.  Terms defined in this Agreement include the plural, as well as the singular, and pronouns and variations thereof used in this Agreement refer to the masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require.  Use of the term or phrase "including", "including, without limitation" or "including, but not limited to" shall mean "including, without limitation".  References in this Agreement to a "state" shall include the District of Columbia, the Virgin Islands and Puerto Rico.

If the Agreement does not expressly provide Business Days, then the number of days shall be in terms of calendar days where, however, calendar days shall not be inclusive of federal holidays or any day in which the federal government is not operating.

8.07   **Notices.**

All Notices shall be in writing and, except for such electronic copies as are specified herein, shall be delivered by hand delivery, by overnight courier or United States Express Mail, or by registered or certified mail (return receipt requested, postage prepaid), and shall be deemed to have been duly given when received in all cases addressed to the Parties at the following addresses (or at such other addresses as shall be specified by like Notice):

If to HUD:

U. S. Department of Housing and Urban Development
451 7th Street, S.W., Room 3136
Washington, D.C.  20410
Attention:     Asset Sales Office
               Director of the SFLS Program

with an electronic copy to: assetsales@hud.gov

If to Participating Servicer:

_____

_____

_____

Attention:        _____

**8.08** <u>Governing Law</u>.

This Agreement shall be governed by and construed in accordance with federal law and, in the event there is no applicable federal law, this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to any conflict of laws rule or principle that might refer the governance or the construction of this Agreement to the law of another jurisdiction).

**8.09** <u>Submission to Jurisdiction</u>.

Participating Servicer hereby irrevocably and unconditionally:

(a) (i) agrees that any suit, action or proceeding against it arising out of or relating to or in connection with this Agreement may be instituted, and that any suit, action or proceeding by it against HUD arising out of or relating to or in connection with this Agreement shall be instituted only, in the U.S. District Court for the District of Columbia or the U.S. Court of Claims (and appellate courts from either of the foregoing), as the Person instituting such suit, action or proceeding may elect in its sole discretion, (ii) consents and submits, for itself and its property, to the jurisdiction of such courts for the purpose of any such suit, action or proceeding instituted against it, and (iii) agrees that a final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law;

(b) (i) waives any objection that it may now, or hereafter, have to the laying of venue of any suit, action or proceeding arising out of, relating to, or in connection with, this Agreement brought in any court specified in Section 8.09(a), (ii) waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum, and (iii) agrees not to plead or claim either of the foregoing.

**8.10** <u>Waiver of Jury Trial</u>.

**EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, ARISING OUT OF OR RELATING TO OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED THEREBY.**

**8.11**   **Severability**.

Should any provision of this Agreement or the application thereof for any reason be declared by a court of competent jurisdiction to be invalid, illegal or unenforceable, such provision shall be construed and enforced as if it had been more narrowly drawn so as not to be invalid, illegal or unenforceable, and the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

**8.12**   **Successors and Assigns**.

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Notwithstanding anything to the contrary contained in this Agreement, neither HUD nor Participating Servicer may assign or otherwise transfer this Agreement (in whole or in part) or delegate its rights or duties hereunder except with the prior written consent of the other, and any attempted assignment, transfer or delegation in violation of this provision shall be void *ab initio*.

**8.13**   **Third Party Beneficiaries**.

This Agreement is intended for the sole benefit of the Parties and their respective successors and permitted assigns, and there shall be no third party beneficiaries.

**8.14**   **Further Assurances**.

The Parties shall act reasonably and in good faith in complying with their obligations under this Agreement.  Without limiting the foregoing, HUD and Participating Servicer shall each cooperate with one another to carry out to the fullest extent possible the purposes of this Agreement.

**8.15**   **Debt Collection**.

Nothing in this Agreement shall limit, impair or restrict any right HUD may have under applicable laws, rules and regulations with respect to the collection of any debt Participating Servicer or the holder of an FHA-insured mortgage loan may owe to HUD.

**8.16**   **Desk Guide**.

The Desk Guide, attached as Exhibit B, is an integral part of this Agreement.  HUD may unilaterally amend, supplement or change the provisions of the Desk Guide, but only in a manner that does not have a material adverse effect (including a material adverse economic or financial effect) on the rights and obligations of Participating Servicer under this Agreement.

**8.17    Interim Servicing Agreement**.

The Interim Servicing Agreement attached as Exhibit C, is an integral part of this Agreement.  The Purchaser(s) (or HUD in the case of Suspended Loans) may amend, supplement or change the provisions of the Interim Servicing Agreement only by mutual consent of the parties.

**8.18    Confidentiality**.

 HUD is aware of the non-disclosure obligations of Participating Servicer with respect to certain mortgage loan data provided to HUD pursuant to this Agreement, and HUD agrees that all third parties to which any such mortgage loan data is made available will be bound by a confidentiality obligation or agreement with HUD.

**8.19    Claims Process**.

Unless and to the extent to do so would be inconsistent with the provisions of this Agreement (including the Desk Guide), Participating Servicer shall follow and remain subject to all provisions of HUD's rules and regulations, HUD Handbook 4330.4 Rev. 1, and other issuances relating to the filing of FHA mortgage insurance claims.

**8.20    Limitations**.

(a) **Engagement as New Servicer**.   Notwithstanding any other provision of this Agreement to the contrary, in the event Participating Servicer (or any Affiliate thereof) is engaged by the winning bidder to service the Mortgage Loans, Participating Servicer will, upon HUD's request, execute and deliver to HUD an affidavit or certification, in form and substance acceptable to HUD, that Participating Servicer:  (a) has performed loss mitigation on all the Mortgage Loans in accordance with applicable law, rules, regulations and HUD mortgagee letters and other issuances, and (b) maintains separate operations for servicing its portfolio of FHA-insured mortgage loans from its operations for servicing the sale portfolio.

**8.21    Facsimile Signature**.

This Agreement (and any amendments thereto), to the extent signed and delivered by means of a facsimile machine or  email (of scanned original), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of a Party to this Agreement, any other Party so executing and delivering this Agreement (or any amendment thereto) by means of a facsimile machine or email (of scanned original) shall re-execute original forms thereof and deliver them to the requesting Party.  No Party shall raise the use of a facsimile machine or email delivery of a signature or the fact that any signature or agreement was transmitted or communicated through the use of a facsimile machine or email as a defense to the formation or enforceability of a contract and each such Party forever waives any such defense.

IN WITNESS WHEREOF, this Agreement has been executed and delivered on behalf of each of the Parties by a duly authorized officer or agent, effective as of the day and year first above written.

SECRETARY OF

HOUSING AND URBAN DEVELOPMENT

By: _____  **Erik Cribbs**
**Authorized Agent**

FOR  Carol J. Galante

Assistant Secretary for Housing – Federal Housing Commissioner

PARTICIPATING SERVICER

Freedom Mortgage Corporation

By: _____

Name: Stanley C. Middleman

Title: CEO

Date: 3/31/14

52

EXHIBIT A

## INSTRUCTIONS REGARDING PARTICIPATING SERVICER'S
## PREPARATION OF
## ASSIGNMENTS AND LOST NOTE AFFIDAVITS

**Initially capitalized terms used and not defined in these instructions have the meanings given such terms in the Participating Servicer Agreement.**

Participating Servicer should prepare mortgage assignments and note endorsements in accordance with the Agreement and the following more specific guidelines, which HUD believes will help ensure Participating Servicer's compliance with the requirements of the Agreement:

1.  Please prepare Assignments of Mortgage from Participating Servicer to HUD in substantially the form attached as Exhibit A-1.

2.  Please prepare Assignments of Mortgage from HUD to the winning bidder, as directed in writing by HUD in substantially the form attached as Exhibit A-2.

3.  HUD understands that applicable Recordation/Transfer Requirements may necessitate changes from the forms of Assignments of Mortgage included as Exhibits A-1 and A-2, and Participating Servicer should make such changes. Nonetheless, it is important that each Assignment of Mortgage include in some manner the language in paragraph 2 of Exhibits A-1 and A-2 (regarding the assignment of other collateral documents including title and hazard insurance policies).

4.  Please ensure that all blanks on the Assignments of Mortgage are properly completed, including missing recordation information, missing execution dates and missing dates in the notary blocks. These Assignments of Mortgage will be delivered to such parties as HUD shall direct, but any Assignments of Mortgage that are not recordable will be returned to Participating Servicer to be redone at its expense.

5.  Please leave blank the block for the name and address of the person to whom the recorded instrument is to be sent after recordation.

6.  Endorsements are to be stamped on the Mortgage Notes. Please do not send allonges. The form of endorsement by Participating Servicer to HUD is contained in Section 4.01(c) of the Agreement.

EXHIBIT A

7.  If the Mortgage Note has been lost, please prepare an Assignment and Lost Note
    Affidavit in the form of Exhibit A-3 as well as an Assignment of Lost Note
    Affidavit in the form of Exhibit A-4 (if the Mortgage Note was misplaced by
    Participating Servicer) or an Assignment of Lost Note Affidavit in the form of
    Exhibit A-5 and an Assignment of Lost Note Affidavit in the form of Exhibit A-4
    (if the Mortgage Note was misplaced by a prior holder).  Also, please include with
    each shipment of files a list of those files for which Mortgage Notes cannot be
    located.

8.  If a notary block requires a reference to the authorizing body (such as a board of
    directors), please refer to the Secretary of Housing and Urban Development, as
    HUD has no board of directors.  Authorized agents are authorized to sign on
    behalf of the Secretary by the Secretary.

9.  Please place the two Assignments of Mortgage and the endorsed Mortgage Note
    (or any lost note affidavits or the Assignment and Lost Note Affidavit, and any
    Assignments of Lost Note Affidavit) in the front of the Collateral File delivered to
    HUD.

A-2

EXHIBIT A-1

## FORM OF ASSIGNMENT OF MORTGAGE TO HUD

FHA Loan No.:_____

**After recording, please return to:**

**This instrument prepared by:**

_____
_____
_____
_____

_____
_____
_____
_____

## ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

_____ whose address is _____
("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to the Secretary of Housing and Urban Development, Washington, D.C., and his/her successors and assigns,[1] without recourse, the following:

1. that certain _____ dated _____, ____, and recorded **[as Instrument Number _____] [in Book/Volume/Liber/Register/Reel _____, at Page/Folio _____],** among the land records of _____ County, _____, as amended or modified (the "Mortgage"), which Mortgage secures that certain promissory note dated _____, ____ (the " Note"); and

2. such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

_____

[1]  If the jurisdiction in which the Mortgaged Property lies requires that the person holding the office of Secretary be named, the assignment shall be made in the following manner: "to [name of person] as Secretary of Housing and Urban Development, Washington, D.C., and his/her successors and assigns".

A-1

EXHIBIT A-1

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the \_\_\_\_\_ day of _____, 20\_\_\_.

_____

_____     By:_____

WITNESS                                 Name:_____

                                        Title:_____

Name and Address of Assignee:

Secretary of Housing and Urban Development
451 7th Street, S.W.
Washington, D.C. 20410

**ACKNOWLEDGMENT**

_____)

        ), ss:

_____)

        The foregoing instrument was acknowledged before me on _____, 20\_\_\_ by _____, as _____ for _____, in the capacity noted in the foregoing instrument.

_____

                                        Notary Public

[SEAL]                                  My commission expires _____

A-2

EXHIBIT A-2

## FORM OF ASSIGNMENT OF MORTGAGE TO THE WINNING BIDDER

FHA Loan No.:_____

**After recording, please return to:**

_____

_____

_____

_____

**This instrument prepared by:**

_____

_____

_____

_____

### ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

The Secretary of Housing and Urban Development, whose address is 451 7th Street, S.W., Washington, D.C. 20410 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to [WINNING BIDDER] and its successors and assigns, without recourse, the following:

1.     that certain _____ dated _____, ____, and recorded [as **Instrument Number _____] [in Book/Volume/Liber/Register/Reel _____, at Page/Folio _____**], among the land records of _____ County, _____, as amended or modified (the "Mortgage"), which Mortgage secures that certain promissory note dated _____, ____ (the " Note"); and

2.     such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

EXHIBIT A-2

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the _____ day of _____, 20___.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

_____     By:_____
WITNESS                               Name:_____
                                      Title:      Authorized Agent

Name and Address of Assignee:

[WINNING BIDDER]
[Address to be Determined]


**ACKNOWLEDGMENT**

CITY OF WASHINGTON            )
                              )
DISTRICT OF COLUMBIA          )

The foregoing instrument was acknowledged before me on _____, 20___ by _____, as Authorized Agent for the Secretary of Housing and Urban Development, in the capacity noted in the foregoing instrument.

_____
Notary Public

[SEAL]                        My commission expires _____

EXHIBIT A-3

## FORM OF ASSIGNMENT AND LOST NOTE AFFIDAVIT TO HUD

### ASSIGNMENT AND LOST NOTE AFFIDAVIT
### (Mortgage Note/Deed of Trust Note)

FHA Loan No. _____

Borrower Name _____

City, State _____

I, _____, [INSERT INFORMATION ON POSITION WITH PARTICIPATING SERVICER], on oath depose and state the following:

    1.    On _____, _____, a certain [indicate Mortgage Note or Deed of Trust Note or other instrument] ("Note") in the face amount of $_____ [insert face amount of Note] was executed by _____ [insert name of original maker of Note] in favor of _____ [insert name of original payee][IF PARTICIPATING SERVICER INSERT ("Assignor")].  (A copy of said Note is attached herewith, if available.)

    [2.    The Note was assigned to [Participating Servicer] ("Assignor") by _____on _____, _____. ][USE ONLY IF NOTE WAS ASSIGNED TO PARTICIPATING SERVICER.  IF PARTICIPATING SERVICER WAS THE ORIGINAL PAYEE THEN OMIT AND RENUMBER REMAINING PARAGRAPHS]

    3.    The Note was secured by a [indicate Mortgage or Deed of Trust or other document] ("Mortgage") recorded in Volume _____, Page _____, _____ County, _____ [insert applicable recording information].

A-3-1

EXHIBIT A-3

4.      The Note was not where it was assumed to be, and a diligent search to locate the Note was undertaken, without results.


5.      Pursuant to the terms and conditions of that certain Participating Servicer Agreement between Assignor and the Secretary of Housing and Urban Development ("HUD") ("Assignee"), dated as of _____, 201__, the Note and all rights thereunder and under this Assignment and Lost Note Affidavit is hereby assigned to the Assignee without recourse.


6.      Assignor has not transferred, assigned or conveyed the Note or any rights thereunder or under this Assignment and Lost Note Affidavit to any person or entity other than Assignee. In the event that Assignor subsequently locates the Note, Assignor shall provide written notice thereof to the Assignee and shall deliver and endorse the Note to the Assignee in accordance with written instructions received from the Assignee (or such other party designated in writing by the Assignee).


**IN WITNESS WHEREOF**, Assignor has caused this Assignment and Lost Note Affidavit to be executed and dated as of the _____ day of _____, 201__.


ATTEST/WITNESS:                                    [PARTICIPATING SERVICER]



_____          By:   _____
[Name]                                                   [Name]
[Title]                                                     [Title]

A-3-2

EXHIBIT A-3

## ACKNOWLEDGEMENT

STATE OF _____ )

                                  )

COUNTY OF _____ )


      The foregoing instrument was acknowledged before me on _____, 20____ by _____, as Authorized Agent for the Secretary of Housing and Urban Development, in the capacity noted in the foregoing instrument.

_____
Notary Public

[SEAL]                   My commission expires _____

A-3-3

EXHIBIT A-4

## FORM OF ASSIGNMENT OF LOST NOTE AFFIDAVIT TO WINNING BIDDER

### ASSIGNMENT OF LOST NOTE AFFIDAVIT
**(Mortgage Note/Deed of Trust Note)**

Borrower Name: _____

City, State: _____

       The Secretary of Housing and Urban Development ("HUD"), pursuant to the terms of that certain Conveyance, Assignment and Assumption Agreement by and among HUD, [To be Determined] and [WINNING BIDDER] ("Assignee") dated as of _____, 201__, and in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, hereby assigns, transfers, sets over and conveys, without recourse, to Assignee, its successors and assigns, that certain Assignment and Lost Note Affidavit executed by [PARTICIPATING SERVICER] in favor of and delivered to HUD together with all rights thereunder and under the note to which such Assignment and Lost Note Affidavit relates.

       IN WITNESS WHEREOF, HUD has caused this Assignment to be executed and delivered by its duly authorized agent as of the _____ day of _____, 20___.

SECRETARY OF HOUSING AND

WITNESS:                           URBAN DEVELOPMENT

_____      By:_____

_____

                                Authorized Agent

Name and Address of Assignee:
 [WINNING BIDDER]
[Address to be Determined]

A-4-1

EXHIBIT A-4

ACKNOWLEDGEMENT

CITY OF WASHINGTON         )
                                          )

DISTRICT OF COLUMBIA        )

The foregoing instrument was acknowledged before me on _____, 20___ by _____, as Authorized Agent for the Secretary of Housing and Urban Development, in the capacity noted in the foregoing instrument.

_____
Notary Public

[SEAL]           My commission expires _____

A-4-2

EXHIBIT A-5

**FORM OF ASSIGNMENT OF LOST NOTE AFFIDAVIT TO HUD**

ASSIGNMENT OF LOST NOTE AFFIDAVIT

**(Mortgage Note/Deed of Trust Note)**

Borrower Name: _____

City, State: _____

        [PARTICIPATING SERVICER] ("Assignor"), pursuant to the terms of that certain Conveyance, Assignment and Assumption Agreement by and among HUD, [To be Determined] and [WINNING BIDDER] ("Assignee") dated as of _____ __, 201__, and in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, hereby assigns, transfers, sets over and conveys, without recourse, to Assignee, its successors and assigns, that certain [Lost Note Affidavit ("Lost Note Affidavit")] [refer here to the actual title of the lost note affidavit held by Participating Servicer]executed in favor of and delivered to [Participating Servicer or other Assignee identified on Lost Note Affidavit] together with all rights thereunder and under the note to which such Lost Note Affidavit relates.

        IN WITNESS WHEREOF, [PARTICIPATING SERVICER] has caused this Assignment to be executed and delivered by its duly authorized agent as of the _____ day of _____, 20___.

WITNESS:                             [PARTICIPATING SERVICER]

_____

_____        By:_____

                             Name:_____

                             Title:

Name and Address of Assignee:

Secretary of Housing and Urban Development

451 7th Street, S.W.

Washington, D.C. 20410

E-i

EXHIBIT A-5

## ACKNOWLEDGEMENT

)
)
)

The foregoing instrument was acknowledged before me on _____, 20____
by _____, as _____ for
_____, in the capacity noted in the foregoing instrument.

_____
Notary Public

[SEAL]                                   My commission expires _____

EXHIBIT B

**<u>Exhibit B</u>**

**DESK GUIDE**

[Attached]

EXHIBIT C


**INTERIM SERVICING AGREEMENT**


[Attached]


E-i

EXHIBIT D

## DELIVERY REPORT

In accordance with Section 2.03 this Report provides the reason for non-delivery of Mortgage Loan that were identified on SFLS Claim Submission Report but for which an Insurance Claim was not submitted. This Delivery Report is due 30 Business days after the Participating Servicer's last SFLS Claim submission.

**A. Loans Removed for Loss Mitigation:** For each Mortgage Loan removed due to Loss Mitigation activity provide the date of the Borrower Contact that resulted removal of the Mortgage Loan from the sale, and check the type of Loss Mitigation offered.

| FHA Case Number | Date of Contact with Borrower | Type of Loss Mitigation Offered (indicate any and all) | Forbearance Repayment Plan | Special Forbearance | Modification | FHA-HAMP | Pre-foreclosure Sale | Deed in lieu | Other - specify |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |

**B. Loans Removed for Reasons Other than Loss Mitigation:** For loans that were removed for reasons other than Loss Mitigation activity provide the specific reason the loan why an Insurance Claim was not submitted.

| FHA Case Number | Reason for Removal from the Sale (including whether the reason was due to loss of eligibility after the date of the SFLS Claim Submission Report) |
|---|---|
|  |  |

EXHIBIT C

## SFLS CLAIM SUBMISSION REPORT - FILE LAYOUT AND FIELD DEFINITIONS

To be used for SFLS Claim Submission Report (must include BPO and FICO Score data).

<u>Format Required</u>: Microsoft Excel 2007 or later.

Dates should be provided as MM/DD/YYYY.

Currency should be provided in the Numeric Value format.

<u>Media</u>: E-mail at assetsales@hud.gov..

### SFLS Claim Submission Report - File Layout and Field Definitions

| | | DESCRIPTION | |
|---|---|---|---|
| A | FHA_CASE | FHA Case Number | Text |
| B | Prop_Address | Property Street Address | Text |
| C | Prop_City | Property City | Text |
| D | Prop_State | Property State | Text |
| E | Prop_Zip | Property Zip Code | Integer Value |
| F | County | Property County | Text |
| G | As-of Date | Data As-of Date | mm/dd/yyyy Format |
| H | Current_UPB | Current Unpaid Principal Balance | Numeric Values, Two Decimals |
| I | Current_Scheduled_PI_Payment | Current Scheduled Principal and Interest Payment | Numeric Values, Two Decimals |
| J | Current_Interest_Rate | Current Interest Rate | Decimal Value e.g. .05, or .0375 not 5 or 3.75 |
| K | Paid_To_Date | The Day, Month, and Year Through Which the Mortgage is Paid, Without Regard to When the Payment Was Made | mm/dd/yyyy Format |
| L | Date_Last_Paid | The Day, Month, and Year on Which the Last Mortgage Payment was Made, Without Regard to When the Payment Was Due | mm/dd/yyyy Format |
| M | Amount_Last_Paid | Amount of Last Payment | Numeric Values, Two Decimals |
| N | Paid_Last_Twelve_Months | Sum of Payments Made by the Borrower in the Last 12 Months | Numeric Values, Two Decimals |
| O | Escrow_Balance | Escrow Balance | Numeric Values, Two Decimals |
| P | Fixed_Variable | Is Interest Rate Fixed or Adjustable? | Text - Fixed or ARM |
| Q | Origination_Date | Origination Date | mm/dd/yyyy Format |
| R | Original_Balance | Original Balance | Numeric Values, Two Decimals |

EXHIBIT C

| S | First_Payment_Date | First Payment Date | mm/dd/yyyy Format |
|---|---|---|---|
| T | Maturity | Maturity Date | mm/dd/yyyy Format |
| U | Original_Term | Original Term (Months) | Integer Value |
| V | Remaining_Term | Remaining Months to Maturity | Integer Value |
| W | Payment_Frequency | Payment Frequency | Text - Monthly or Semi Annual or Annual |
| X | Modified | Loan Has Been Modified | Yes or No |
| Y | Modification_Date | Date of Latest Modification | mm/dd/yyyy Format - If Not Modified Leave Blank |
| Z | Modification_First_Pay_Date | Modified First Payment Date | mm/dd/yyyy Format - If Not Modified Leave Blank |
| AA | Note | Note in File? | Yes or No |
| AB | Mortgage | Mortgage in File? | Yes or No |
| AC | Title | Evidence of Lender's Title Insurance in File | Yes or No |
| AD | Title_Held | Manner in Which Title is Held (Fee Simple/Leasehold) | Fee or Leasehold |
| AE | Lien_Position | Lien Position Securing the Note | Text, e.g. First, Second, Third.... etc. |
| AF | Sub_Lien | Is There a Subordinate Lien | Yes or No |
| AG | Sub_Lien_Amount | Subordinate Lien Amount | Numeric Values, Two Decimals - If None Use 0 |
| AH | Original_Appraisal_Date | Date of Original Appraisal | mm/dd/yyyy Format |
| AI | Original_Appraised_Value | Original Appraisal Value | Integer Value |
| AJ | Original_LTV | Original Loan-to-Value Ratio | Decimal Value e.g. .75, or .9 not 75 or 90 |
| AK | Prop_Type | Property Type | 2U = 2 Unit, 3U = 3 Units, 4U = 4 Units, DBLW = DoubleWide, C = Condo, PUD = Planned Urban Development, SFR = Single Family Residence |
| AL | Sale_Price | Selling Price of Subject Property | Integer Value - If Unknown Leave Blank |
| AM | Loan_Purpose | Loan Purpose | CRFI = Cash Out Refinance, CTFR = Rate and Term Refinance, PUR = Purchase, RTRF = Rate Term Refinance, STRA = Streamlined Refinance with Appraisal, STRN = Streamline Refinance without appraisal |
| AN | Borrower1_Original_Credit_Score1 | Borrower 1: Original Credit Score 1 | Integer Value - if Score Not Available Leave Blank |
| AO | Borrower1_Original_Credit_Score2 | Borrower 1: Original Credit Score 2 | Integer Value - if Score Not Available Leave Blank |

EXHIBIT C

| AP | Borrower1_Original_Credit_Score3 | Borrower 1: Original Credit Score 3 | Integer Value - if Score Not Available Leave Blank |
|---|---|---|---|
| AQ | Borrower1_Current_Credit_Score1 | Borrower 1: Current Credit Score 1 | Integer Value - if Score Not Available Leave Blank |
| AR | Borrower1_Current_Credit_Score2 | Borrower 1: Current Credit Score 2 | Integer Value - if Score Not Available Leave Blank |
| AS | Borrower1_Current_Credit_Score3 | Borrower 1: Current Credit Score 3 | Integer Value - if Score Not Available Leave Blank |
| AT | Borrower1_Current_Average_Credit_Score | Borrower 1: Average Current Credit Score | Integer Value - if Score Not Available Leave Blank |
| AU | Credit_Date_Original | Date of Original Credit Report | mm/dd/yyyy Format - if Unknown Leave Blank |
| AV | Credit_Date_Current | Date of Current Credit Report | mm/dd/yyyy Format |
| AW | Borrower_Current_Income | Borrower's Current Gross Monthly Income | Integer Value - If Unknown Leave Blank |
| AX | Borrower_Current_Income_Date | As of Date for Borrower's Current Gross Monthly Income | mm/dd/yyyy Format - if Unknown Leave Blank |
| AY | Backend_Ratio | Principal, Interest, Property Taxes, Hazard Insurance (PITI) mortgage payment plus minimum monthly payments from other liabilities divided by the Borrower's Current Gross Monthly Income. | Decimal Value e.g. .45, or .5 not 45 or 50 - If Unknown Leave Blank |
| AZ | Frontend_Ratio | All Primary Mortgage Debt (PITI) divided by Borrower's Current Gross Monthly Income | Decimal Value e.g. .45, or .5 not 45 or 50 - If Unknown Leave Blank |
| BA | Backend_Ratio_LossMit | The PITI Mortgage Payment plus the Minimum Monthly Payments from other Liabilities as of the Last Underwriting Date Divided by Borrower's Current Gross Monthly Income. | Decimal Value e.g. .45, or .5 not 45 or 50 - If Unknown Leave Blank |
| BB | Frontend_Ratio_LossMit | PITI divided by Borrower's Current Gross Monthly Income as of the Last Underwriting Date. | Decimal Value e.g. .45, or .5 not 45 or 50 - If Unknown Leave Blank |
| BC | Latest_Underwriting_Date | Latest Underwriting Date | mm/dd/yyyy Format - if Unknown Leave Blank |
| BD | Employment | Is Borrower Employed? – Employment status as of the most recent date possible | Yes or No - If Unknown Leave Blank |
| BE | Employment_Date | The day, month, and year that the Employment status was last verified. | mm/dd/yyyy Format - If Unknown Leave Blank |
| BF | Not_Intnt | Notice of Intent To Foreclose Issued? | Yes or No - If Unknown Leave Blank |
| BG | Date_Intnt | Date Notice of Intent To Foreclose Issued | mm/dd/yyyy Format - If Unknown Leave Blank |

EXHIBIT C

| | | |
|---|---|---|
| BH | T_Foreclose | Property in Foreclosure | Integer Value - Use Only  0=Not In Foreclosure, 1=Referred to Attorney, 2=First Legal Filed, 3=Sale Set, 4=Sale Held, 5=REO |
| BI | Date_Foreclosure_Initiated | Date Foreclosure Initiated | mm/dd/yyyy Format  - If Not in Foreclosure Leave Blank |
| BJ | Bankruptcy | Has Borrower Filed Bankruptcy | Yes or No |
| BK | Bk_Chapter | Bankruptcy Chapter | Integer Value - If No Bankruptcy Leave Blank |
| BL | Bk_Date | Bankruptcy Filing Date | mm/dd/yyyy Format - If No Bankruptcy Leave Blank |
| BM | Unapplied_Funds | Suspense Balance | Numeric Values, Two Decimals - If None Use 0 |
| BN | Insurance_Proceeeds | Insurance Proceeds | Numeric Values, Two Decimals - If None Use 0 |
| BO | File_Referred_Date | Date the file was referred to the attorney's office | mm/dd/yyyy Format - If Not Referred Leave Blank |
| BP | First_Action_Date | Depending on state, initial action, notice of default, complaint, petition or publication | mm/dd/yyyy Format - If No First Action Leave Blank |
| BQ | Service_Complete | When the complaint has been served | mm/dd/yyyy Format - If No Complaint Served Leave Blank |
| BR | Judgment_Entered | The date a judgment is entered by the court | mm/dd/yyyy Format - If No Judgment Entered Leave Blank |
| BS | Sale_Scheduled | The date sale scheduled | mm/dd/yyyy Format - If No Sale Scheduled Leave Blank |
| BT | Hold_Description | If there is a foreclosure hold | Text – If No Hold leave Blank |
| BU | Reason_For_Default | The reason why the Borrower has become delinquent on the loan. | Numeric Values: 01 = Death of Borrower 02 = Illness 03 = Marital Problems 04 = Unemployment 05 =Business Failure 06 = Temporary Curtailment of Income 07 = Bankruptcy 08 = Over-Obligated (Excessive use of Credit) 09 = Casualty Loss 10 = Moved / Vacated 11 = Dissatisfied with property 12 = Energy / Environmental Cost 13 = Servicing Problems 14 = Auto Repairs |

EXHIBIT C

| | | | 15 = Abandonment of Property<br>16 = Death of Principal Mortgagor's Family Member<br>17 = Fraud<br>18 = Inability to Rent Property<br>19 = Inability to Sell Property<br>20 = Incarceration<br>21 = Individual Voluntary Arrangement<br>22 = Military Service<br>23 = Natural Disaster<br>24 = Payment Adjustment<br>25 = Payment Dispute<br>26 = Property Problem<br>27 = Relationship Breakdown<br>28 = Unable to Contact Borrower<br>29 = Other |
|---|---|---|---|
| BV | Servicer | Current Loan Servicer | Text |
| BW | Borrower_Type | Borrower Type | Text - Individual or Corporation or Partnership or Trustee |
| BX | Originator | Original Lender | Text |
| BY | Current_BPO_Date | Date of Current BPO | mm/dd/yyyy Format |
| BZ | BPO_Property_Type | Property Type From BPO | Text - 2U = 2 Unit, 3U = 3 Units, 4U = 4 Units, DBLW = Double-Wide, C = Condo, PUD = Planned Urban Development, SFR = Single Family Residence |
| CA | BPO_Property_Condition | Property Condition | Text - Excellent, Good, Average, Fair or Poor |
| CB | BPO_Occupancy | Occupancy From BPO | Text - Occupied or Vacant only |
| CC | BPO_Location | Property Location, i.e. Urban, Suburban | Text - Urban or Suburban or Rural Only |
| CD | BPO_Neighborhood | Neighborhood Rating | Text - Excellent, Good, Average, Fair or Poor Only |
| CE | BPO_Neighborhood_Value_Trend | Value Trend in the Neighborhood | Text - Improving, Stable or Declining Only |
| CF | BPO_Market_Time | Estimated Marketing Time to Sell the Property in As-Is Condition at the Estimated BPO Value if Placed on the Market as of the Date of the BPO (Days) | Integer Value |
| CG | BPO_Square_Feet_GLA | GLA Square Footage of Subject Property | An Integer Value for the Number of Finished Square Feet Entirely Above Grade (Gross Living Area) |

EXHIBIT C

| CH | BPO_Square_Feet Below Grade | Square Feet Wholly or Partially Below Grade | Integer Value - if None Use 0 |
|---|---|---|---|
| CI | BPO_Bedrooms | Number of Bedrooms | Integer Value |
| CJ | BPO_Bathrooms | Number of Baths | Numeric - May be Either Integer or Numeric with One Decimal, e.g. 1.5 |
| CK | BPO_Year_Built | Approximate Year Built | Integer Value - if Unknown Leave Blank |
| CL | BPO_Value | Current As-Is Value that corresponds to the BPO_Market_Time in Column CH | Integer Value |
| CM | BPO_90_Day_Marketing_Value | The Price That the Property Would Sell for in As-Is Condition Ninety (90) Days From the Date of the BPO. | Integer Value |
| CN | BPO_120_Day_Marketing_Value | The Price that the Property Would Sell for in As-Is Condition One Hundred and Twenty (120) Days From the Date of the BPO. | Integer Value |
| CO | BPO_180_Day_Marketing_Value | The Price that the Property Would Sell for in As-Is Condition One Hundred and Eighty (180) Days from the Date of the BPO. | Integer Value |
| CP | BPO_For_Sale | Is the Property for Sale? | Yes or No |
| CQ | BPO_Comments | BPO Preparer Comments | Text |
| CR | Current_LTV | Current Loan to Value Ratio (Current_UPB/ BPO VALUE) | Decimal Value e.g. .75, or 1.1 not 75 or 110 |
| CS | Comp1_Address | Comparable 1 - Property Address | Text |
| CT | Comp1_Bedrooms | Comparable 1 - Number of Bedrooms | Integer Value |
| CU | Comp1_Bathroms | Comparable 1 - Number of Baths | Numeric - May be Either Integer or Numeric with One Decimal, e.g. 1.5 |
| CV | Comp1_Square_Feet_GLA | Comparable 1 - GLA Square Footage of Subject Property | An Integer Value for the Number of Finished Square Feet Entirely Above Grade (Gross Living Area) |
| CW | Comp1_Date | Comparable 1 - Date of Sale | mm/dd/yyyy Format |
| CX | Comp1_Price | Comparable 1 - Selling Price | Integer Value |
| CY | Comp2_Address | Comparable 2 - Property Address | Text |
| CZ | Comp2_Bedrooms | Comparable 2 - Number of Bedrooms | Integer Value |
| DA | Comp2_Bathroms | Comparable 2 - Number of Baths | Numeric - May be Either Integer or Numeric with One Decimal, e.g. 1.5 |

EXHIBIT C

| DB | Comp2_Square_Feet_GLA | Comparable 2 - GLA Square Footage of Subject Property | An Integer Value for the Number of Finished Square Feet Entirely Above Grade |
|----|----|----|----|
| DC | Comp2_Date | Comparable 2 - Date of Sale | mm/dd/yyyy Format |
| DD | Comp2_Price | Comparable 2 - Selling Price | Integer Value |
| DE | Comp3_Address | Comparable 3 - Property Address | Text |
| DF | Comp3_Bedrooms | Comparable 3 - Number of Bedrooms | Integer Value |
| DG | Comp3_Bathroms | Comparable 3 - Number of Baths | Numeric - May be Either Integer or Numeric with One Decimal, e.g. 1.5 |
| DH | Comp3_Square_Feet_GLA | Comparable 3 - Square Footage | An Integer Value for the Number of Finished Square Feet Entirely Above Grade |
| DI | Comp3_Date | Comparable 3 - Date of Sale | mm/dd/yyyy Format |
| DJ | Comp3_Price | Comparable 3 - Selling Price | Integer Value |

EXHIBIT E-1

# SFLS CLAIM SUBMISSION REPORT-SELF CERTIFICATION FORM

Participating **Servicer**
Eligibility Certification

**U. S. Department of Housing
and Urban Development**

This Participating Servicer Eligibility Certification Form will be used by Participating Servicers to self-certify the compliance of the Participating Servicer's list of Mortgage Loans submitted to HUD on the applicable dates meet the eligibility criteria applicable to SFLS Claims, as set forth in the SFLS 2014-2 Participating Servicer Agreement..

**Submit completed with SFLS Claim Submission Report via e-mail to:** assetsales@hud.gov

| 1. Participating Servicer (Name, Address and ZIP Code) | 2. Participating Servicer Identification Number | 3. Participating Servicer Contact Information (Name, Phone Number and e-mail Address) |
|---|---|---|
|  |  |  |
| 3. Date of Submission | 4. Number of Mortgage Loans Submitted | 5. Unpaid Principal Balance of Mortgage Loans Submitted |
|  |  |  |

## CERTIFICATION

Participating Servicer, through the undersigned, certifies to the best of its knowledge and belief that:

(a) Each Mortgage Loan on the list of Mortgage Loans submitted to HUD on the applicable dates meets the eligibility criteria for SFLS 2014-2 as set forth the definition of Eligible Mortgage Loan of the Participating Servicer Agreement;

(b) Detailed supporting records for each Mortgage Loan together with a copy of this Certification Form are being held in the Participating Servicer's files;

(c) Participating Servicer, has confirmed, through a custodial review, its physical possession of the complete Collateral File for each Mortgage Loan;

(d) Participating Servicer, with respect to each Mortgage Loan, has fully evaluated the borrower for all available Loss Mitigation options in accordance with FHA's Loss Mitigation program and such Loss Mitigation has failed or Participating Servicer has determined that no additional Loss Mitigation actions are appropriate for the borrower, and will pursue foreclosure or a foreclosure alternative but for submission of the Mortgage Loan to the SFLS Program;

EXHIBIT E-1

(e) Each request for Claim Payment from HUD by Participating Servicer will be for the proper Claim amount,  including properly computed Approved Reimbursable Expenses and curtailed debenture interest;

(f) By submitting a request for Claim Payment to HUD for any Mortgage Loan listed on the SFLS Claim Submission Report, Participating Servicer certifies to item (e) above, with each claim constituting a separate certification; and

(g) Upon request of any authorized official of the Department of Housing and Urban Development or of the Comptroller General of the United States, it will furnished or make available for audit all applicable documentation.

PARTICIPATING SERVICER

_____

By:_____

Name:_____

Title of Certifying Official: _____

_____

Date:_____

EXHIBIT E-1

# PREFERRED POOLING CRITERIA

Participating Servicer may submit to HUD Eligible Mortgage Loans that do not meet the Preferred Pooling Criteria. However, Participating Servicer acknowledges that the pooling of non-preferred Mortgage Loans may significantly decrease the likelihood of those Mortgage Loans meeting the reserve price. Participating Servicer is therefore cautioned against submitting non-preferred Mortgage Loans for the National Sale as they may not be awarded if the reserve price for the corresponding pool is not achieved. Moreover, Participating Servicers will not be reimbursed the Due Diligence or BPO Reimbursement fee for Mortgage Loans that do not meet the Preferred Eligibility Criteria and are included in a pool that is not awarded. HUD reserves the right not to offer Mortgage Loans in its sole discretion.

HUD will pool Mortgage Loans without regard to the Preferred Pooling Criteria for the Neighborhood Stabilizing Outcome ("NSO") portion of the Sale.

The Preferred Pooling Criteria are as follows: (1) the Mortgaged Property is occupied, (2) the LTV ratio for the Mortgage Loan is not less than 87.5 percent, and (3) the Mortgage Loan has not exceeded the Maximum Missed Payments limit for the state in which the Mortgaged Property is located

**1.) Occupancy Status.** The Mortgaged Property is occupied.

HUD will accept a Participating Servicer's classification of an Eligible Mortgage Loan as occupied for the purpose of meeting the Preferred Pooling Criteria if, as of SFLS Claim Submission Report Date, the Participating Servicer has complied with the Initial and Visual Inspection requirements described in 24 C.F.R. § 203.377 and Handbook 4330.1 Rev-5, has determined that the property is not vacant or abandoned, and the BPO inspection determined that the property is occupied (Column CB of the SFLS Claim Submission Report).

**2.) Loan-to-Value.** The Eligible Mortgage Loan has a Loan to Value Ratio of at least 87.5 percent.

With respect to the Preferred Pooling Criteria, Loan-to-Value Ratio or "LTV" means the ratio determined by dividing the Unpaid Principal Balance as of the SFLS Claim Submission Report Date by the BPO Value (Column CL of the SFLS Claim Submission Report).

**3.) Maximum Missed Payments.** The Eligible Mortgage Loan is not past due, as of the SFLS Claim Submission Report Date, by more than the Maximum Missed Payments for the jurisdiction in which the Mortgaged Property is located.

EXHIBIT E-1

## MAXIMUM MISSED PAYMENTS CHART

| State | Max Missed Payments (in months) | State | Max Missed Payments (in months) |
|---|---|---|---|
| AK | 14 | NJ | 34 |
| AL | 18 | ND | 12 |
| AR | 18 | NE | 24 |
| AZ | 20 | NH | 17 |
| CA | 19 | NM | 25 |
| CO | 18 | NV | 31 |
| CT | 30 | NY | 41 |
| DC | 35 | OH | 26 |
| DE | 28 | OK | 22 |
| FL | 36 | OR | 21 |
| GA | 21 | PA | 28 |
| HI | 21 | PR | 35 |
| IA | 26 | RI | 20 |
| ID | 17 | SC | 20 |
| IL | 29 | SD | 19 |
| IN | 28 | TN | 18 |
| KS | 18 | TX | 18 |
| KY | 24 | UT | 20 |
| LA | 23 | VA | 18 |
| MA | 29 | VI | N/A |
| MD | 25 | VT | 33 |
| ME | 35 | WA | 22 |
| MI | 22 | WI | 25 |
| MN | 19 | WV | 15 |
| MO | 16 | WY | 13 |
| MS | 20 | | |
| MT | 27 | | |
| NC | 22 | | |

SCHEDULE I

## SCHEDULE OF DATES

| | | |
|---|---|---|
| SFLS 2014-2  National Sale Date | June 4, 2014 | |
| SFLS 2014-2  NSO Sale Date | June 25, 2014 | |
| | National Sale Dates | NSO Sale Dates |
| Earliest BPO Order Date | March 1, 2014 | March 1, 2014 |
| SFLS Claim Submission Report Date | April 11, 2014 | April 11, 2014 |
| Due Diligence Due Date | April 11, 2014 | April 11, 2014 |
| Electronic Data Interchange Access Date | May 5, 2014 | May 5, 2014 |
| SFLS Claim Submission Report -Update Date | May 21, 2014 | June 11, 2014 |
| Earliest Anticipated Claim Submission Date | June 5, 2014 | June 26, 2014 |
| Anticipated First Settlement Date | July  6, 2014 | July 27, 2014 |
| Claims Cut-off Date | August  6, 2014 | August  27, 2014 |
| NFS Date | August  15, 2014 | September 5, 2014 |
| Anticipated Second Settlement Date | August  15, 2014 | September 5, 2014 |
| Latest Servicing Transfer Date | September 30, 2014 | October 31, 2014 |