**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                         :
                                                         :
JOSEPH WASHINGTON, ST. CLAIR              :
BLACKETT, LUCILLE MASON AND            :          No. 16-CV-03948 (ENV)(SMG)
MELISSA TROTMAN on behalf of              :
themselves and all others similarly           :          Date Served: May 3, 2017
situated,                                             :          upon counsel of record for all
                                                         :          parties via email.
                                 Plaintiffs,            :
                                                         :
                                                         :
                  -against-                          :
                                                         :
UNITED STATES DEPARTMENT OF          :
HOUSING AND URBAN DEVELOPMENT    :
(HUD), JULIAN CASTRO IN HIS OFFICIAL  :
CAPACITY AS SECRETARY OF HUD,        :
EDWARD GOLDING IN HIS OFFICIAL        :
CAPACITY AS COMMISSIONER OF THE     :
FEDERAL HOUSING ADMINISTRATION,     :
CALIBER HOME LOANS, INC., AND U.S.     :
BANK TRUST, N.A., AS TRUSTEE FOR        :
LSF9 MASTER PARTICIPATION TRUST,      :
                                                         :
                                 Defendants.          :
                                                         :
-------------------------------------------------------------X

**CALIBER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ALLEGATIONS IN THE AMENDED COMPLAINT ......................................................4

    I.    The FHA Program................................................................................4

    II.    HUD's Note Sale Program....................................................................5

    III.    Plaintiffs Washington, Blackett, and Mason's Mortgage Loans Are Sold in 2014 Note Sales. ...................................................................................5

ARGUMENT ........................................................................................................7

    I.    Applicable Standards. .........................................................................7

    II.    Plaintiffs Fail to Plausibly Allege That the Caliber Defendants Violated the FDCPA...............................................................................................7

        A.    The FDCPA Claim Fails Because the Caliber Defendants Were Not Obligated to Consider the Plaintiffs for HAMP Modifications. ..................8

            1.    Plaintiffs fail to state a claim under Section 1692e.........................9

            2.    Plaintiffs fail to state a claim under Section 1692d. .....................10

            3.    Plaintiffs also fail to state a claim under Section 1692f.................10

        B.    The Trust Is Not A Debt Collector Under the FDCPA.............................12

    II.    Plaintiffs Fail to Plausibly Allege that the Caliber Defendants Violated Section 349......................................................................................................13

    III.    Plaintiffs Fail to Plausibly Allege an FHA Claim Because They Fail to Allege That the Caliber Defendants' Policies *Caused* the Alleged Disparate Impact. .....15

    IV.    Plaintiffs Fail to Plausibly Allege That the Caliber Defendants Violated RESPA.19

    V.    Plaintiffs Fail to Plausibly Allege That the Trust Is Liable to Plaintiffs. .............20

CONCLUSION......................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)..................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................7

*Bisson v. Bank of Am., N.A.*,
    919 F. Supp. 2d 1130 (W.D. Wash. 2013)..........................................14

*Broder v. Cablevision Sys.*,
    418 F.3d 187 (2d Cir. 2005)................................................................14

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013).....................................................................6, 18

*Conboy v. AT&T Corp.*,
    241 F.3d 242 (2d Cir. 2001)...........................................................13, 14

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...................................................13

*Davidson v. Capital One Bank (USA), N.A.*,
    797 F.3d 1309 (11th Cir. 2015) ...........................................................12

*DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*,
    619 F. App'x 7 (2d Cir. 2015) ...............................................................9

*Dumont v. Litton Loan Servicing, LP*,
    No. 12-cv-2677, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014)..........19, 20

*Gomez-Jimenez v. N.Y. Law Sch.*,
    956 N.Y.S.2d 54 (1st Dept. 2012) .......................................................13

*Harvey v. Bank of Am., N.A.*,
    906 F. Supp. 2d 982 (N.D. Cal. 2012) .................................................14

*Henson v. Santander Consumer USA, Inc.*,
    817 F.3d 131 (4th Cir. 2016),
    *cert. granted*, 137 S. Ct. 810 (2017) ...................................................12

*Izmirligil v. Bank of N.Y. Mellon*,
  No. 11-cv-5591, 2013 WL 1345370 (E.D.N.Y. Apr. 2, 2013) ................................................12

*Lane v. Fein, Such & Crane, LLP*,
  767 F. Supp. 2d 382 (E.D.N.Y. 2013) ...................................................................................9

*Long Island Hous. Servs., Inc. v. Nassau Cty. Indus. Dev. Agency*,
  No. 14-cv-3307, 2015 WL 7756122 (E.D.N.Y. Dec. 1, 2015) ............................................16

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
  962 F. Supp. 2d 472 (E.D.N.Y. 2013),
  *aff'd*, 811 F.3d 542 (2d Cir. 2016) ........................................................................................7

*McAnaney v. Astoria Fin. Corp.*,
  357 F. Supp. 2d 578 (E.D.N.Y. 2005) ................................................................................12

*Mhany Mgmt., Inc. v. County of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ................................................................................................15

*Molina v. F.D.I.C.*,
  870 F. Supp. 2d 123 (D.D.C. 2012),
  *aff'd in part sub nom. Molina v. Ocwen Loan Servicing*,
  545 F. App'x 1 (D.C. Cir. 2013) .........................................................................................18

*Munroe v. Specialized Loan Servicing LLC*,
  No. 14-cv-1883, 2016 WL 1248818 (E.D.N.Y. Mar. 28, 2016) ..................................7, 11, 12

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*,
  720 F. Supp. 2d 254 (S.D.N.Y. 2010) ..............................................................................2, 7

*Obal v. Deutsche Bank Nat'l Tr. Co.*,
  No. 14-cv-2463, 2015 WL 631404 (S.D.N.Y. Feb. 13, 2015) ............................................18

*Okyere v. Palisades Collection, LLC*,
  961 F. Supp. 2d 508 (S.D.N.Y. 2013) ...................................................................................9

*Pereira v. Ocwen Loan Servicing, LLC*,
  No. 11-cv-2672, 2012 WL 1379340 (E.D.N.Y. Mar. 12, 2012),
  *report and recommendation adopted*, No. 11-cv-2672, 2012 WL 1381193
  (E.D.N.Y. Apr. 18, 2012) ....................................................................................................12

*Picini v. Chase Home Fin. LLC*,
  854 F. Supp. 2d 266 (E.D.N.Y. 2012) ...................................................................................8

*Polanco v. NCO Portfolio Mgmt., Inc.*,
  132 F. Supp. 3d 567 (S.D.N.Y. 2015) ...................................................................................7

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,
294 F.3d 35 (2d Cir. 2002)................................................................15

*Reynoso v. IndyMac Mortg. Servs., FSB*,
No. 12-cv-2108, 2013 WL 388990 (D. Md. Jan. 30, 2013)....................14

*Rivera v. Bank of Am. Home Loans*,
No. 09-cv-2450, 2011 WL 1533474 (E.D.N.Y. Apr. 21, 2011) ...............8

*Rogers v. Capital One Servs., LLC*,
447 F. App'x 246 (2d Cir. 2011) .........................................................9

*Rojas v. Forster & Garbus LLP*,
No. 13-cv-02825, 2014 WL 3810124 (E.D.N.Y. July 31, 2014)...............10

*Schuh v. Druckman & Sinel, L.L.P.*,
602 F. Supp. 2d 454 (S.D.N.Y. 2009)...................................................11

*Seller v. CitiMortgage, Inc.*,
988 N.Y.S.2d 32 (1st Dept. 2014) ...............................................13, 15

*Summers v. Ocwen Loan Servicing, LLC*,
No. 10-cv-565, 2011 WL 8129475 (E.D. Va. Feb. 11, 2011) .................14

*Sutton v. Fin. Recovery Servs., Inc.*,
121 F. Supp. 3d 309 (E.D.N.Y. 2015) ...........................................10, 11

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
135 S. Ct. 2507 (2015).................................................................15, 16

*Tsombanidis v. W. Haven Fire Dep't*,
352 F.3d 565 (2d Cir. 2003), *abrogated on other grounds by*
24 C.F.R. § 100.500(c)......................................................................15

*Wards Cove Packing Co., Inc. v. Atonio*,
490 U.S. 642 (1989), *superseded by statute on other grounds*,
42 U.S.C. § 2000e-2(k)......................................................................15

*Watson v. N.Y. Pressman's Union No. 2*,
444 F. App'x 500 (2d Cir. 2011) .........................................................15

*Wheeler v. Citigroup*,
938 F. Supp. 2d 466 (S.D.N.Y. 2013)...................................................14

**Statutes/Rules**

12 C.F.R. § 1024.41 ...................................................................18, 19

12 U.S.C. § 2605.................................................................................6

15 U.S.C. § 1641 ................................................................................................6, 11

15 U.S.C. § 1692 ......................................................................................9, 10, 11, 12

42 U.S.C. § 3604 ......................................................................................................3

42 U.S.C. § 3605 ......................................................................................................3

Fed. R. Civ. P. 12(b) ....................................................................................1, 6, 7, 17

**Other**

78 Fed. Reg. 10,696, 10,817 (Feb. 14, 2013) ..........................................................19

Defendants Caliber Home Loans, Inc. ("Caliber") and U.S. Bank Trust N.A., not in its individual capacity but solely as trustee (the "Trustee," and, with Caliber, the "Caliber Defendants") for LSF9 Master Participation Trust (the "Trust"), respectfully move to dismiss the First Amended Class Action Complaint ("Amended Complaint," or "AC") of Plaintiffs Joseph Washington, St. Clair Blackett, Lucille Mason, and Melissa Trotman (collectively, "Plaintiffs") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

The gravamen of Plaintiffs' claims is that they no longer enjoy the benefits of the Federal Housing Administration ("FHA") mortgage insurance program, including certain loan modification rights referred to as "FHA-HAMP."[1]  In this regard, Plaintiffs allege that the Caliber Defendants did not consider Plaintiffs for "HAMP" or "HAMP-like" modifications (collectively "HAMP Modification(s)"), when they are purportedly required to do so by law.  Relying on the Caliber Defendants' purported obligation to offer HAMP Modifications, Plaintiffs assert that the Caliber Defendants violated the Fair Debt Collection Practices Act ("FDCPA") (Fifth Cause of Action) and New York General Business Law § 349 ("Section 349") (Sixth Cause of Action), and that Caliber individually violated the Real Estate Settlement Procedures Act ("RESPA") (Eighth Cause of Action).  But the Amended Complaint cannot state a claim for relief because the Plaintiffs' own allegations confirm that the Caliber Defendants undertook no obligation to consider the Plaintiffs for HAMP Modifications.

The Amended Complaint alleges that Plaintiffs obtained residential mortgages through the FHA mortgage insurance program administered by the U.S. Department of Housing and Urban

---

[1] AC ¶¶ 7-8; *see also* Letter from MFY Legal Services, Inc. to the Court at 3 (Feb. 21, 2017), ECF No. 41 ("The gravamen of Plaintiffs' claims against the [Caliber] Defendants is that, despite being required to offer HAMP or HAMP-like loan modifications to mortgagors, they refuse to consider loans purchased through the Note Sale Program for such modifications.")

Development ("HUD").  The FHA insures loans made by private, FHA-approved lenders to borrowers with low credit scores and income.  AC ¶ 2.  As part of the FHA program, borrowers such as the Plaintiffs paid premiums into an FHA fund ("Fund") for insurance to repay the lenders if the borrowers defaulted on their mortgage loans.  *Id.* ¶¶ 33-35.  A requirement under the FHA program is that the FHA-approved private lenders provide a mortgage modification program for borrowers who are in default, commonly called the FHA-HAMP program, which is similar to (but different and separate from) the HAMP program administered by the U.S. Treasury.  *Id.* ¶ 60.

During the financial crisis, many FHA homeowners, like the Plaintiffs, fell behind on their mortgages, and HUD paid billions in insurance claims, substantially depleting the Fund by 2010.  *Id.* ¶¶ 98-99.  In response, HUD adopted a "Note Sale Program," in which HUD acquired certain "delinquent mortgages it perceived as un-savable" and sold them to new investors, but only after the then-servicer had exhausted all of the FHA loan modification options.  *Id.* ¶¶ 100, 117-18.  In addition, the original owners of the loan submitted FHA insurance claims for the unpaid principal balance plus certain interest at the time of the sale, rather than after extended foreclosure processes.  *Id.* ¶ 108.

On June 11, 2014, HUD sold all of the mortgages then-listed for auction by HUD in the Note Sale Program, including the mortgage loans of three of the four Plaintiffs (Washington, Blackett, and Mason).  These loans were subsequently transferred to the Trust and serviced by Caliber.  *Id.* ¶¶ 154, 159, 221, 277, 319.  Upon that sale, Plaintiffs' loans were no longer in the FHA mortgage program—meaning that payment of FHA insurance premiums and insurance coverage was terminated, and the Caliber Defendants were *not* required to offer a HAMP Modification or any other particular loan modification.  *Id.* ¶ 127.  While Plaintiffs allege that HUD later announced new modification requirements for buyers in the Note Sale Program in an April 2015 press release, *id.* ¶¶ 138-39,

Plaintiffs concede that the duty to offer a HAMP Modification "is *only* imposed upon the immediate post-Note Sale purchaser *through the contract it enters into with HUD*," *id.* ¶ 140 (emphasis added), and the requirement to offer HAMP Modifications is only listed "in some of the Note Sale contracts," *id.* ¶ 139.  Critically, Plaintiffs never allege that those requirements were included in the 2014 purchase agreements at issue—because they are not.  In short, Plaintiffs fail to allege any facts to plausibly suggest that the Caliber Defendants had a duty to offer HAMP Modifications. Accordingly, the Amended Complaint cannot state a claim under the FDCPA, Section 349, or RESPA.

Plaintiffs also assert an FHA claim under 42 U.S.C. §§ 3604(a) and 3605(a) (Seventh Cause of Action), contending that Caliber's "policy of refusing to offer HAMP or a HAMP-like modification" has a disproportionate adverse impact on African-American homeowners and discriminates in the terms and conditions of such transactions because of race.  Plaintiffs, however, fail to plausibly allege that the Caliber Defendants' actions—as distinct from the manner in which the Federal Defendants allegedly included mortgages in the sale pool—*caused* any disparate impact.  The Amended Complaint is devoid of any factual allegations that meet the "robust causality requirement" linking the challenged neutral policy of Caliber to the alleged disparity.  Plaintiffs fail even to allege that there was a disparity.  As a result, Plaintiffs fail to state a disparate impact claim.

In short, the Amended Complaint fails to state any claim against the Caliber Defendants, and the Court should dismiss the Fifth through Eighth Causes of Action in the Amended Complaint.  As to Plaintiff Trotman, more specifically, the Amended Complaint offers nothing more than vague conjecture.  Not only do Plaintiffs fail to allege that Trotman has suffered an Article III injury, but they also fail to reasonably tie her conjectural harms to the Caliber Defendants.

3

## ALLEGATIONS IN THE AMENDED COMPLAINT

### I.    The FHA Program.

HUD administers the FHA mortgage insurance program. That program insures loans made by private, FHA-approved lenders to borrowers with low credit scores and income. AC ¶ 2. As part of the FHA insurance contract between HUD and these mortgage lenders, if a homeowner defaults on his or her mortgage, and the loan owner must foreclose on the property, HUD will pay to the loan owner the full amount of the unpaid principal balance of the mortgage loan, plus some amount of delinquent interest. *Id.* ¶ 32. In order to make these insurance payments in the event of a homeowner's default, Congress created the Fund, which is funded through the collection of insurance premiums paid for by the homeowner. *Id.* ¶¶ 33-35.

The FHA mortgage insurance program requires FHA mortgage servicers to offer certain pre-foreclosure assistance benefits. *Id.* ¶¶ 45-54. Another requirement under the FHA program is that the FHA-approved private lenders provide a mortgage modification program, commonly called the FHA-HAMP program, which is similar to (but different and separate from) the HAMP program administered by the U.S. Treasury, for borrowers who are in default. *Id.* ¶ 60. According to Plaintiffs, an FHA-HAMP modification may involve: (1) a reduction of the monthly mortgage payment to as low as 25% of the homeowner's gross monthly income; (2) reduced interest rates matching the current market rate; (3) an extension of the mortgage term to 30 years; (4) allowance for a partial claim, which involves HUD paying 30% of the unpaid principle so the mortgage servicer can reduce the monthly payment amount; and (5) allowance for repeated loan modifications, subject to certain limitations. *Id.* ¶¶ 64-66. Plaintiffs do not define what a HAMP-like modification would involve. *Id.* ¶ 139.

Neither the Trust nor Caliber are alleged to have participated in the FHA mortgage insurance program with respect to Plaintiffs.

4

## II.   HUD's Note Sale Program.

During the financial crisis, many FHA homeowners fell behind on their mortgages. *Id.* ¶ 98.

By 2010, HUD had paid billions in insurance claims, substantially depleting the Fund. *Id.* ¶ 99.   In

response, HUD adopted a "Note Sale Program," in which HUD acquired certain "delinquent

mortgages it perceived as un-savable" and sold them to new investors, but only after the first loan

servicer had exhausted all of the FHA loan modification options. *Id.* ¶¶ 100, 117-18.   Instead of

requiring lenders to foreclose upon defaulting homeowners before submitting insurance claims to the

FHA, HUD's Note Sale Program allowed the original owners to submit FHA insurance claims for

the unpaid principal balance plus certain interest simply by assigning the mortgage to HUD. *Id.*

¶ 108.   HUD only permitted a mortgage to be included in the Note Sale Program if: "(i) the

mortgage is six months or more in default; and (ii) the mortgage servicer has exhausted all of the

FHA's loss mitigation options and determined that there is no home-saving solution."  *Id.* ¶ 117.

Once the loan is sold, FHA insurance is terminated, borrowers no longer pay FHA insurance

premiums, and the new creditor and loan servicer are "no longer constrained by FHA

protections."  Letter from MFY Legal Services, Inc. to the Court at 2 (Dec. 15, 2016), ECF No.

37; *see also* AC ¶ 127.

## III.   Plaintiffs Washington, Blackett, and Mason's Mortgage Loans Are Sold in 2014 Note Sales.

Plaintiffs Washington, Blackett, and Mason defaulted on their mortgages, and it appears

from the allegations in the Amended Complaint that each of them remained in default for a year

or more.  *See id.* ¶¶ 203-04, 210-11, 221 (Washington); *id.* ¶¶ 267, 277 (Blackett); *id.* ¶¶ 308,

319 (Mason).  The Trust purchased Plaintiffs Washington, Blackett, and Mason's mortgage loans

in HUD Note Sales in June 2014 ("2014 Note Sales").  *See id.* ¶¶ 222, 277, 320, 366.[2]  HUD

then conveyed and assigned the mortgages to the Trust, and the Trust later entered into

agreements with Caliber for Caliber to service the mortgages.  *See* AC ¶¶ 157-159, 221, 227,

319.  Consistent with the Truth in Lending Act ("TILA"),[3] Plaintiffs Washington, Blackett, and

Mason were each informed by letter that the Trust had purchased their mortgage loans.  *Id.*

¶¶ 159-60.[4]

     HUD placed no loss mitigation requirements on the post-Note Sale purchasers in 2014,

nor was there a requirement that the post-Note Sale purchaser offer a modification program.  *Id.*

¶ 137.  Moreover, as noted above, while Plaintiffs allege that HUD later announced new

modification requirements for buyers in the Note Sale Program in an April 2015 press release, *id.*

¶¶ 138-39, Plaintiffs concede that the duty to offer a HAMP Modification "is *only* imposed upon

the immediate post-Note Sale purchaser *through the contract it enters into with HUD*," *id.* ¶ 140

(emphasis added), and the requirement to offer HAMP Modifications is only listed "in some of

the Note Sale contracts," *id.* ¶ 139.  Plaintiffs do not allege that those requirements were included

in the 2014 purchase agreements at issue.

---

[2] The final named plaintiff, Melissa Trotman, does not own a mortgage transferred into HUD's Note Sale Program, and the Caliber Defendants at no time purchased or serviced her mortgage.  Thus, the Court should dismiss the Amended Complaint as to Plaintiff Trotman because Plaintiff Trotman fails to allege an injury-in-fact under Article III.  More specifically, she fails to allege an injury that is "certainly impending."  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013).

[3] Under TILA, borrowers must be notified of a change in ownership of their mortgage. *See* 15 U.S.C. § 1641(g)(1).

[4] Another statute (RESPA) imposes a separate obligation on loan servicers.  Specifically, RESPA requires that new loan servicers notify borrowers whenever servicing responsibilities are transferred.  *See* 12 U.S.C. § 2605(b)(1).  Plaintiffs do not allege that the Caliber Defendants failed to notify borrowers when servicing responsibilities were transferred to Caliber.

## ARGUMENT

**I.    Applicable Standards.**

"When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, the Court must assume the truth of 'all well-pleaded, nonconclusory factual allegations' in the complaint." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 962 F. Supp. 2d 472, 474 (E.D.N.Y. 2013) (quoting *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 123 (2d Cir. 2010)), *aff'd*, 811 F.3d 542 (2d Cir. 2016) (granting Rule 12(b)(6) motion to dismiss). "To survive the motion, the complaint must allege facts sufficient to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A plausible claim is one that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"In a putative class action setting, 'named plaintiffs . . . must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*, 720 F. Supp. 2d 254, 264 (S.D.N.Y. 2010) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008)).

**II.   Plaintiffs Fail to Plausibly Allege That the Caliber Defendants Violated the FDCPA.**

"To establish a violation under the FDCPA, '(1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, . . . (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.'" *Munroe v. Specialized Loan Servicing LLC*, No. 14-cv-1883, 2016 WL 1248818, at *4 (E.D.N.Y. Mar. 28,

2016) (quoting *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015)).

### A.   The FDCPA Claim Fails Because the Caliber Defendants Were Not Obligated to Consider the Plaintiffs for HAMP Modifications.

Plaintiffs contend that the Caliber Defendants had a duty to consider them for HAMP Modifications and failed to do so, thereby violating the FDCPA. *See* Letter from MFY Legal Services, Inc. to the Court at 3 (Feb. 21, 2017), ECF No. 41 ("The gravamen of Plaintiffs' claims against the Lone Star Defendants is that, despite being required to offer HAMP or HAMP-like loan modifications to mortgagors, they refuse to consider loans purchased through the Note Sale Program for such modifications."). As the Amended Complaint make clear, however, no such duty exists.

When HUD sold Plaintiffs' mortgage loans in the 2014 Note Sales, Plaintiffs' FHA insurance was terminated and the loans were no longer in the FHA mortgage program. AC ¶ 127. Plaintiffs allege that HUD later announced new requirements for buyers in the Note Sale Program in an April 24, 2015 press release. *Id.* ¶¶ 138-39. Plaintiffs, however, concede that the duty to offer HAMP Modifications "is only imposed upon the immediate post-Note Sale purchaser through the contract it enters into with HUD," *id.* ¶ 140, and the requirement to offer HAMP Modifications is only listed "in some of the Note Sale contracts," *id.* ¶ 139. Critically, Plaintiffs never allege that those requirements were included in the 2014 purchase agreements at issue because the relevant agreement *does not contain such a requirement*. In short, Plaintiffs fail to allege any facts to plausibly suggest that the Caliber Defendants had a duty to offer HAMP Modifications.[5]

_____

[5] Even assuming *arguendo* that the contract between HUD and the Trust contained a requirement that the Caliber Defendants offer HAMP Modifications, Plaintiffs are not parties to the contract. And Plaintiffs fail to allege

The thrust of Plaintiffs' FDCPA claim is that the Caliber Defendants violated the FDCPA by failing to do something that Plaintiffs contend the Caliber Defendants were *required* to do—namely, offer a HAMP Modification. Yet, Plaintiffs' Amended Complaint fails to plausibly allege that the Caliber Defendants were *required* to offer a HAMP Modification to Plaintiffs Washington, Blackett, or Mason. Without that predicate fact being plausibly alleged, Plaintiffs cannot sufficiently plead their FDCPA claim. More specifically, in the absence of a requirement to offer a HAMP Modification, Plaintiffs fail to allege any facts indicating how the Caliber Defendants' purported failure to offer a HAMP Modification can constitute: (i) harassing, oppressive, or abusive conduct under Section 1692d of the FDCPA; (ii) a false, deceptive, or misleading representation under Section 1692e; or (iii) an unfair or unconscionable means to collect or attempt to collect any debt under Section 1692f.

### 1.  Plaintiffs fail to state a claim under Section 1692e.

Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A Section 1692e claim will not lie where the complaint fails to explain how an apparently true statement was false, deceptive, or misleading. *See DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7, 10 (2d Cir. 2015) (per curiam); *see also Rogers v. Capital One Servs., LLC*, 447 F. App'x 246, 248 (2d Cir. 2011) (per curiam). Because the Caliber Defendants had no duty to offer a HAMP Modification to the Plaintiffs, any statement that they did not offer a HAMP Modification is not actionable. *See DiMatteo*, 619 F. App'x at 10 (affirming dismissal of

---

any facts suggesting that the potentially relevant contracts' terms give Plaintiffs the right to sue as third-party beneficiaries. *See, e.g.*, *Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 272 (E.D.N.Y. 2012) (dismissing third-party beneficiary claims based on purported HAMP rights arising from service participation agreement between Fannie Mae and mortgage servicer); *Rivera v. Bank of Am. Home Loans*, No. 09-cv-2450, 2011 WL 1533474, at *3-4 (E.D.N.Y. Apr. 21, 2011) (same).

Section 1692e claim, finding that the communication at issue could not have been misleading as plaintiff did not cite to any authority that imposed on defendant a requirement to include the information plaintiffs alleged should be included).

### 2.      Plaintiffs fail to state a claim under Section 1692d.

Section 1692d of the FDCPA prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d applies to actions taken with the sole or primary purpose of harassing the debtor. *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2013); s*ee also Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 521 (S.D.N.Y. 2013) (noting examples of behavior that violated Section 1692d, like where a debtor threatened to withhold medical services if creditor did not pay debt).

It follows that a mortgagee simply failing to offer a borrower a particular loan modification that it was not required to offer could not violate Section 1692d. Plaintiffs fail to allege facts sufficient to explain how the Caliber Defendants harassed them by purportedly failing to offer HAMP Modifications to which they concede they were not entitled. *See Rojas v. Forster & Garbus LLP*, No. 13-cv-02825, 2014 WL 3810124, at *3 (E.D.N.Y. July 31, 2014) (dismissing Section 1692d claim for failing to allege any activity that would naturally harass or abuse the borrower).

### 3.      Plaintiffs also fail to state a claim under Section 1692f.

Section 1692f proscribes all "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f; *see also id.* § 1692f(1)-(2). "[V]iable claims under [S]ection 1692f are generally defined by either (1) the unauthorized taking of money or property (e.g., collecting amounts not authorized by law, charging for communications, or unlawfully garnishing money or property), or (2) communicating with a consumer in a manner that will

10

cause their public embarrassment or invasion of privacy (e.g., sending a postcard or stamping an envelope as from a debt collector)." *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 315 (E.D.N.Y. 2015). Courts have consistently held that "relatively innocuous" communications that "correctly inform[ ]" debtors of their potential liability and are "not misleading," "deceptive," or "abus[ive] [of] the debt collector's superior economic position" do not violate section 1692f. *Id.*; *see also Rojas*, 2014 WL 3810124, at *5-6 (dismissing Section 1692f claim, explaining that even if the creditor had breached an agreement with borrower, that would not suggest that its actions were unfair or unconscionable as a matter of law). Merely refusing to offer Plaintiffs a HAMP Modification—whether the Caliber Defendants were required to or not—does not rise to the level of "unfair" or "unconscionable" conduct covered by 1692f.

Plaintiffs fail to plausibly allege facts establishing that the purported decision not to offer a HAMP Modification rises to the level of harassing, abusive, misleading, unjust, or unconscionable conduct that the FDCPA prohibits. *See Sutton*, 121 F. Supp. 3d at 316 (dismissing claim where plaintiff "ha[d] not alleged a violation of any of the subsections of 1692f and, more generally, ha[d] not alleged any of the defining characteristics of a claim under section 1692f's prefatory claim—that [defendant] has attempted to take his money or property, or that it has caused him public embarrassment").[6]

---

[6] To the extent Plaintiffs' FDCPA claim depends on alleged misstatements contained in the initial letters Caliber sent to Plaintiffs, *see* AC ¶¶ 159-161, 433(a), the claim is time-barred. The FDCPA provides for a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). An FDCPA claim based on a false statement generally accrues when the false statement is made. *See Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (holding that claim accrued on day letter containing false statement was sent). Plaintiffs filed their original Complaint on July 15, 2016. Plaintiffs allege that Caliber sent Plaintiff Washington a letter containing the purported misstatement on August 25, 2014, AC ¶ 221, *before* July 15, 2015. While Plaintiffs provide no detail regarding the precise date the TILA letters were sent to Plaintiffs Blackett and Mason, the alleged facts plausibly suggest they were sent before July 15, 2015 as well. Specifically, the mortgages were purchased on June 11, 2014, TILA requires that creditors provide notice of loan transfer within thirty days of sale, and Plaintiffs do not allege that the TILA notice that Caliber sent was untimely. *Compare id.* ¶¶ 277, 319 (alleging that mortgages were sold in June 11,

### B.      The Trust Is Not A Debt Collector Under the FDCPA.

To state an FDCPA claim against the Trust, Plaintiffs must plausibly allege that the Trust is a "debt collector." *Munroe*, 2016 WL 1248818, at *4.  The term debt collector refers to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  As a general matter, creditors are not considered debt collectors under the FDCPA.  *See Munroe*, 2016 WL 1248818, at *5; *see also McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 592 (E.D.N.Y. 2005).  Plaintiffs recognize this rule and therefore allege that, because the Trust acquired the mortgages while they were in default, the Trust is a debt collector. *See* AC ¶ 431.  But this purported distinction does not save Plaintiffs' claim, and the FDCPA claim against the Trust should be dismissed.

While in certain instances an entity's purchase of a debt in default can make that entity a debt collector, this conclusion is inapplicable where, as here, the entity is not principally involved in debt collection ***on behalf of another***.  "[E]ven where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or seek to collect on its own behalf rather than '***for another***.'"  *Munroe*, 2016 WL 1248818, at *5 (emphasis added) (quoting 15 U.S.C. § 1692a(4)); *accord Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135 (4th Cir. 2016), *cert. granted*, 137 S. Ct. 810 (2017); *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1315 (11th Cir. 2015).  Plaintiffs do not allege any facts suggesting that the Trust acquired Plaintiffs Washington, Blackett, and Mason's loans to collect for anyone other than itself, as *creditor*.  As such, the fact that Plaintiffs Washington, Blackett,

---

2014 Note Sale), *with* 15 U.S.C. § 1641 (requiring creditors to provide notice of loan transfer within thirty days of sale).

and Mason's mortgages were in default when the Trust purchased them, *see* AC ¶ 431, does not

suddenly transform the Trust into a debt collector.  *See Munroe*, 2016 WL 1248818, at *5;

*Henson*, 817 F.3d at 134-41 (rejecting arguments like Plaintiffs' that a creditor is a debt collector

simply because it purchased a debt in default).[7]

 While the FDCPA claim should be dismissed in its entirety, it separately must be

dismissed as to the Trust because Plaintiffs fail to plausibly allege that the Trust was a debt

collector.

### III. Plaintiffs Fail to Plausibly Allege that the Caliber Defendants Violated Section 349.

 To establish a Section 349 claim, a plaintiff must show "(1) 'the challenged act or

practice was consumer-oriented'; (2) the act or practice 'was misleading in a material way'; and

(3) 'the plaintiff suffered injury as result of the deceptive act.'"  *Dash v. Seagate Tech. (U.S.)*

*Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (quoting *Stutman v. Chem. Bank*, 95

N.Y.2d 24, 29 (N.Y. 2000)).

 As an initial matter, the Court should dismiss Plaintiffs' Section 349 claim because it

rests upon, and assumes, a non-existent obligation to provide a HAMP modification.  *See, e.g.*,

AC ¶ 440.  As described above, *see supra* Part II.A, the Caliber Defendants were not required to

offer a HAMP Modification to Plaintiffs.  Thus, the Caliber Defendants' acts and statements

could not be misleading.  *See Gomez-Jimenez v. N.Y. Law Sch.*, 956 N.Y.S.2d 54, 59 (1st Dept.

2012) (dismissing Section 349 claim because "a party does not violate GBL 349 by simply

---

[7] *See also Izmirligil v. Bank of N.Y. Mellon*, No. 11-cv-5591, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) ("Plaintiff does not allege, nor does he argue in opposition that he can allege, that either BNYM's 'principal purpose' is the collection of debts or that BNYM 'regularly collects' debts owed another.  Rather, plaintiff alleges that BNYM is a 'debt collector' simply 'because [BNYM] took an assignment of the alleged debt while the debt was allegedly in default.'"); *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-cv-2672, 2012 WL 1379340, at *3 (E.D.N.Y. Mar. 12, 2012) ("[I]f the note and mortgage were assigned to Ocwen, then [Ocwen] is not a debt collector as defined by the FDCPA unless the transfer of the debt in default was solely for the purpose of facilitating collection of the debt for another."), *report and recommendation adopted*, No. 11-cv-2672, 2012 WL 1381193 (E.D.N.Y. Apr. 18, 2012).

publishing truthful information and allowing consumers to make their own assumptions about the nature of the information").

But Plaintiffs' Section 349 claim fails as a matter of law for another independent reason. Specifically, "a cause of action under General Business Law § 349 alleging violations of HAMP rules and directives would constitute an impermissible 'end run' around the absence of a private right of action under HAMP." *Seller v. CitiMortgage, Inc.*, 988 N.Y.S.2d 32, 34 (1st Dept. 2014). In *Conboy v. AT&T Corp.*, the Second Circuit held that a plaintiff cannot manufacture a private right of action under a statute by arguing that the defendant "engaged in a 'deceptive act' within the meaning of [G.B.L.] § 349 by violating [the other statute]." *Id.*, 241 F.3d 242, 257-58 (2d Cir. 2001) (dismissing Section 349 claim based on alleged violation of New York state law that lacked private right of action). And in *Broder v. Cablevision Systems*, the Second Circuit extended *Conboy*, holding that Section 349 could not be used to "circumvent the lack of a private right of action for violation of a *federal* law." *Id.*, 418 F.3d 187, 199 (2d Cir. 2005) (emphasis in original) (dismissing Section 349 claim based on alleged violation of federal law that lacked private right of action). The Court reasoned: "Were we to hold . . . that GBL § 349 may be used to assert a private right of action for violation of a federal law otherwise lacking one, we would essentially be attributing to the New York legislature an intent to thwart Congress's intentions on a significant scale." *Id.*

Here, the heart of the Amended Complaint is that Caliber purportedly failed to evaluate Plaintiffs for a HAMP Modification, as allegedly required by HUD. *See* Letter from MFY Legal Services, Inc. to the Court at 3 (Feb. 21, 2017), ECF No. 41 (explaining that the gravamen of Amended Complaint is that Caliber Defendants were required to offer HAMP Modifications and failed to do so). Numerous courts, however, have held that there is no private right of action

against a lender to enforce HAMP requirements.[8]  Several other courts have extended this

reasoning to FHA-HAMP specifically.[9]

Plaintiffs cannot re-cast their HAMP Modification allegations under Section 349, and the

Court should dismiss their Section 349 claim under *Conboy* and *Broder*.  *See Seller*, 988

N.Y.S.2d. at 34.

## IV.    Plaintiffs Fail to Plausibly Allege an FHA Claim Because They Fail to Allege That the Caliber Defendants' Policies *Caused* the Alleged Disparate Impact.

A plaintiff establishes a prima facie disparate impact claim under the FHA by showing

"(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or

disproportionate impact on persons of a particular type produced by the defendant's facially

neutral acts or practices."  *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir.

2016) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53

(2d Cir. 2002)).  "[T]he basis for a successful disparate impact claim involves a comparison

between two groups—those affected and those unaffected by the facially neutral policy."  *See*

*Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003), *abrogated on other*

*grounds by* 24 C.F.R. § 100.500(c), *as recognized in Mhany Management*, 819 F.3d at 618-19;

*see also Watson v. N.Y. Pressman's Union No. 2*, 444 F. App'x 500, 501 (2d Cir. 2011) (per

curiam) (affirming dismissal of complaint where plaintiff failed to identify appropriate

comparable classes).  This comparison must reveal that the facially neutral policy in fact

---

[8] *See, e.g.*, *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013) ("HAMP does not create a private right of action for borrowers against loan servicers."); *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1136 (W.D. Wash. 2013) ("[A] Plaintiff cannot sue to compel compliance with HAMP or to obtain loan modifications through HAMP."); *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 990 (N.D. Cal. 2012) ("Defendant is correct in saying there is no private right of action for HAMP violations.").

[9] *See, e.g.*, *Reynoso v. IndyMac Mortg. Servs., FSB*, No. 12-cv-2108, 2013 WL 388990, at *4 (D. Md. Jan. 30, 2013); *Summers v. Ocwen Loan Servicing, LLC*, No. 10-cv-565, 2011 WL 8129475, at *1 (E.D. Va. Feb. 11, 2011) ("Such ground is based solely on alleged violations of federal regulations and the FHA-HAMP program, and no cause of action exists for plaintiff to pursue such claims.").

disparately impacts a protected class. *See id.* But the mere presence of a disparity is not enough to establish a disparate impact claim. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523 (2015) [hereinafter, *Inclusive Communities*] ("Racial imbalance . . . does not, without more, establish a prima facie case of disparate impact." (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 653 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k))). The plaintiff must also plausibly allege that defendant's facially neutral policy *caused* the alleged disparate impact. Even at the pleading stage, the plaintiff must "allege facts . . . demonstrating a causal connection" between the alleged discriminatory practice and the disparate impact. *Inclusive Communities*, 135 S. Ct. at 2523; *see also Long Island Hous. Servs., Inc. v. Nassau Cty. Indus. Dev. Agency*, No. 14-cv-3307, 2015 WL 7756122, at *3 (E.D.N.Y. Dec. 1, 2015) ("[A] causal connection can be established by, for example, pointing to a 'defendant's policy or policies causing that disparity.'" (quoting *Inclusive Communities*, 135 S. Ct. at 2523)).

Here, Plaintiffs allege that the Caliber Defendants' purported "policy of refusing to offer HAMP or a HAMP-like modification such as an FHA-HAMP and instead offering a five-year interest-only or a five-year standard modification at a higher-than-HAMP interest rate" to borrowers whose loans were purchased in the Note Sales has a disproportionate adverse impact on African-American homeowners and predominantly African-American communities in New York City and "makes housing unavailable by causing housing to become unaffordable." AC ¶ 450. Such conclusory assertions are insufficient to sustain a disparate impact claim. The Amended Complaint is devoid of sufficient facts—as opposed to conclusions—alleging that the Caliber Defendants' purported policies *caused* the alleged adverse or disproportionate impact on

16

African-Americans, or that there was any disparate impact.  These pleading defects require that the FHA claim be dismissed.

To support their claim, Plaintiffs proffer statistics concerning: (1) the number of African-American homeowners who were issued FHA loans, *id.* ¶¶ 82, 179; (2) the percentage of mortgages sold in Note Sales that are in predominately African-American neighborhoods, *id.* ¶¶ 180, 182-83; and (3) the percentage of mortgages sold in Note Sales in predominantly Non-Hispanic White, Hispanic, Asian, and "Other" neighborhoods, *id.* ¶ 181.  Giving these statistics a liberal reading, they allege, at most, that African-American homeowners may have been disproportionately represented among those whose loans were sold in Note Sales.  But the Caliber Defendants do not administer the Note Sale program.  *See, e.g.*, *id.* ¶¶ 179-81, 185-86. Indeed, Plaintiffs concede that the *Federal Defendants* created the policies governing the Note Sale Program, and they allege that the administration of the Note Sale policies by the *Federal Defendants* disparately impacted African-Americans.  *See id.* ¶ 181.  Conclusory allegations that the Caliber Defendants' "policy" of not offering HAMP Modifications "makes housing unavailable by causing housing to become unaffordable based on the unsustainable modifications Caliber . . . has offered," *id.* ¶ 450, are insufficient to plausibly allege that the Caliber Defendants' policies *caused* the alleged disparate impact.

Put simply, even accepting Plaintiffs' allegations that the Note Sale impacted a higher percentage of mortgages in predominantly African-American neighborhoods than in other neighborhoods, that is insufficient to show: (i) that the Caliber Defendants' policies caused that alleged disparity, or (ii) that there is a disparate impact as relevant to the Caliber Defendants (*i.e.*, that African-Americans' homes, which were sold to the Caliber Defendants in Note Sales, have

been or will be foreclosed upon at a higher rate than others' homes).  Therefore, the Court should dismiss Plaintiffs' FHA claim under Rule 12(b)(6).

The Court also should dismiss Plaintiffs' FHA claim under Rule 12(b)(1) because Plaintiffs allege only highly speculative future injuries.  To survive a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, Plaintiffs "must allege facts that affirmatively and plausibly suggest that [they] ha[ve] standing to sue."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (dismissing complaint for lack of standing).  The Amended Complaint cannot survive a Rule 12(b)(1) motion to dismiss to the extent it relies on a "highly attenuated chain of possibilities," *Clapper*, 133 S. Ct. at 1148.  Yet, Plaintiffs' sole allegations of injury in support of their FHA claim are just that.  Specifically, they contend that, because of the Caliber Defendants' policies: (1) in five or six years, Caliber will dramatically increase their monthly payment amounts; (2) they will not be earning higher incomes than they do now; and (3) they may default on their loans in the future.  *See* AC ¶¶ 238-41, 256, 286-87, 289-90, 325-29, 337-38.  Plaintiffs further clarified in their pre-motion letter that the purported harm stemming from the alleged FHA violations was a risk of future foreclosure.  *See* Letter from MFY Legal Services, Inc. to the Court at 3 (Dec. 15, 2015), ECF No. 38 ("Plaintiffs allege that for notes purchased through HUD's Program, Lone Star Defendants' policy is to only offer two types of modifications to former-FHA borrowers: five year interest-only and five-year standard, both of which make foreclosure and the loss of the property ***all but certain***." (emphasis added)).  Plaintiffs' FHA claim fails because the harm they allege they will suffer from the Caliber Defendants' policies is too speculative.  *See Molina v. F.D.I.C.*, 870 F. Supp. 2d 123, 130 (D.D.C. 2012), *aff'd in part sub nom. Molina v. Ocwen Loan Servicing*, 545 F. App'x 1 (D.C. Cir. 2013) (dismissing FHA disparate impact claim based on purported risk of future foreclosure

18

for lack of standing); *see also Obal v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-2463, 2015 WL 631404, at *3 (S.D.N.Y. Feb. 13, 2015) (dismissing other legal claims based on purported risk of future foreclosure for lack of standing).

**V.    Plaintiffs Fail to Plausibly Allege That the Caliber Defendants Violated RESPA.**

The Amended Complaint also alleges that Caliber violated RESPA, 12 C.F.R. § 1024.41, by failing to consider Plaintiffs for a HAMP Modification.  AC ¶¶ 462-63.  For the reasons discussed above, *see supra* Part II.A, the Caliber Defendants were not required by HUD to offer HAMP Modifications to Plaintiffs.  Nor does RESPA itself impose an obligation on Caliber to provide a HAMP Modification to the Plaintiffs.  The relevant RESPA provision requires loan servicers to "[e]valuate the borrower for all loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(c)(1)(i).  RESPA's drafters, however, specifically considered and rejected proposals that would have required creditors to offer any particular types of modifications.[10] Instead, Section 1024.41 was meant to ensure only that servicers oversaw the loan modification process in a fair manner.  Subsection 1024.41(a) makes this explicit: "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option."

Given that Caliber was under no obligation to offer HAMP Modifications to Plaintiffs, the RESPA claim should be dismissed.

---

[10] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,817 (Feb. 14, 2013) ("A coalition of 60 consumer advocacy groups . . . commented that the Bureau should require loan modification programs similar to HAMP using a public and transparent net-present-value test mandated by the Bureau. . . .  On the other hand, three consumer advocacy groups expressly stated that the Bureau should not mandate specific loan modification programs and requirements. . . .  After careful consideration of the comments, the Bureau . . . decided to refrain . . . from mandating specific loss mitigation programs or outcomes.").

**VI.     Plaintiffs Fail to Plausibly Allege That the Trust Is Liable to Plaintiffs.**

Finally, Plaintiffs fail to allege any facts suggesting that the Trust communicated with them at all regarding the servicing of their mortgages.[11]  Rather, Plaintiffs allege that they communicated with Caliber in that regard.  *See, e.g.*, AC ¶¶ 153-75.  *Dumont v. Litton Loan Servicing, LP*, No. 12-cv-2677, 2014 WL 815244, at *18 (S.D.N.Y. Mar. 3, 2014), is instructive. There, the district court dismissed claims against a loan servicer's parent company, which were based on the alleged wrongdoing of the loan servicer.  *See id.*  As in *Dumont*, "it is clear" from the Amended Complaint "that Plaintiffs do not have any basis on which to bring a direct claim against" the Trust "on any count."  *Id.*

Plaintiffs attempt to plead around this basic failure by peppering the Amended Complaint with allegations that Caliber acted "as agent" of the Trust.  *See, e.g.*, AC ¶¶ 228-31.  These conclusory suggestions are insufficient to plausibly allege an agency relationship under New York law, just as the district court found in *Dumont*.  *See id.*, 2014 WL 815244, at *23-24 & n.46.

While the Complaint in its entirety should be dismissed as against the Caliber Defendants, the claims as against the Trust fail for the separate, independent reason that there are no specific allegations regarding the Trust.

**CONCLUSION**

For all the foregoing reasons, the Caliber Defendants respectfully submit that Plaintiffs' Amended Complaint should be dismissed with prejudice in its entirety.

---

[11] Plaintiffs repeatedly allege that Caliber acted as the Trust's agent.  *See, e.g.*, AC ¶ 221.  For the convenience of the Court, the Caliber Defendants have conformed with Plaintiffs' usage in this memorandum and referred to "the Trust."  But the Caliber Defendants note that suit is brought against the Trustee, not the Trust, and for the reasons explained, the Court should dismiss the lawsuit against the Trustee.

Dated: May 3, 2017

/s/ Benjamin R. Nagin
Benjamin R. Nagin
bnagin@sidley.com
Melissa Colón-Bosolet
mcolon-bosolet@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 839-5300
Fax.: (212) 839-5599

Angela C. Zambrano
angela.zambrano@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel.: (214) 981-3300
Fax.: (214) 981-3400

*Counsel for Defendants Caliber Home Loans, Inc.
and U.S. Bank Trust N.A., not in its individual
capacity, but solely as trustee for LSF9 Master
Participation Trust*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2017, the foregoing Memorandum of Law in Support of

the Caliber Defendants' Motion to Dismiss the First Amended Class Action Complaint was

served on the following persons by email at the email addresses listed below, in accordance with

the agreement of the parties to email service and the Individual Rules of the Honorable Eric N.

Vitaliano.

Carolyn E. Coffey
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, NY 10007
ccoffey@mfy.org

Christopher Fasano
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, NY 10007
cfasano@mfy.org

Linda Jun
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, NY 10007
ljun@mfy.org

Elizabeth M. Lynch
MFY Legal Services, Inc.
299 Broadway, 4th Floor
New York, NY 10007
elynch@mfy.org

Diane L. Houk
Emery Celli Brinckerhoff & Abady PC
600 Fifth Avenue, 10th Floor
New York, NY 10020
dhouk@ecbalaw.com

Douglas E. Lieb
Emery Celli Brinckerhoff & Abady PC
600 Fifth Avenue, 10th Floor
New York, NY 10020
dlieb@ecbalaw.com

Matthew D. Brinckerhoff
Emery Celli Brinckerhoff & Abady PC
600 Fifth Avenue, 10th Floor
New York, NY 10020
mbrinckerhoff@ecbalaw.com

/s/ Melissa Colón-Bosolet
Melissa Colón-Bosolet