**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                      :

JOSEPH WASHINGTON, ST. CLAIR     :
BLACKETT, LUCILLE MASON AND    :      No. 16-CV-03948 (ENV) (SMG)
MELISSA TROTMAN on behalf of     :
themselves and all others similarly    :
situated,                         :
                                        :
                Plaintiffs,     :
                                        :
          -against-        :
                                        :
UNITED STATES DEPARTMENT OF    :
HOUSING AND URBAN DEVELOPMENT :
(HUD), JULIAN CASTRO IN HIS OFFICIAL :
CAPACITY AS SECRETARY OF HUD,   :
EDWARD GOLDING IN HIS OFFICIAL  :
CAPACITY AS COMMISSIONER OF THE :
FEDERAL HOUSING ADMINISTRATION, :
CALIBER HOME LOANS, INC., AND U.S. :
BANK TRUST, N.A., AS TRUSTEE FOR  :
LSF9 MASTER PARTICIPATION TRUST, :
                                        :
               Defendants.   :
                                        :
-------------------------------------------------------------X

**CALIBER DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND
REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT DISMISSING PLAINTIFFS' RESPA CLAIM</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................4

BACKGROUND .........................................................................................................6

      1.    St. Clair Blackett. ...................................................................8

      2.    Joseph Washington. ................................................................9

      3.    Lucille Mason. .......................................................................10

ARGUMENT .............................................................................................................11

   A.    Caliber's RESPA Obligations to Plaintiffs Washington and Blackett Were Not Triggered Because Neither Submitted a Complete Loss Mitigation Application to Caliber ........................................................................11

      1.    St. Clair Blackett. ...................................................................12

      2.    Joseph Washington. ................................................................14

   B.    Even Assuming That Washington and Blackett Had Submitted Complete Loss Mitigation Applications to Caliber, Caliber Evaluated Plaintiffs for All Loss Mitigation Options Available to Them ..............................................................17

      1.    Caliber evaluated Plaintiffs for all loss mitigation options available to them........................................................................18

      2.    Exceptions to the authority matrix or "waterfall" are not loss mitigation options available to Plaintiffs' loans under RESPA. ................................19

   C.    Plaintiffs' Unpleaded Claim is Procedurally Improper .........................................20

CONCLUSION............................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*Dent v. Inv. Corp. of Am.*,
  No. 15 Civ. 112638, 2015 WL 9694807 (E.D. Mich. Dec. 23, 2015)....................................10

*Myers v. Moore*,
  361 F.R.D. 50 (S.D.N.Y. 2018) ........................................................................................18

## <u>STATUTES/RULES</u>

12 U.S.C. § 2605(b)(1) .............................................................................................................5

15 U.S.C. § 1641(g)(1) .............................................................................................................5

12 C.F.R. § 1024.41 .................................................................................................................4

12 C.F.R. Pt. 1024, Supp. I, § 31 ...........................................................................................16

12 C.F.R. Pt. 1024, Supp. I, § 38 .............................................................................................2

12 C.F.R. Pt. 1024, Supp. I, § 41 ..................................................................................... *passim*

CFPB Bulletin 2014-01, August 19, 2014, § A *available at*
  https://www.federalregister.gov/documents/2014/10/23/2014-24194/ ..............................9, 11

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................................17

Fed. R. Civ. P. Rule 30(b)(6) ..................................................................................................12

Fed. R. Civ. P. Rule 56 ...........................................................................................................18

Defendants Caliber Home Loans, Inc. ("Caliber"), and U.S. Bank Trust N.A., not in its individual capacity but solely as trustee (the "Trustee," and, with Caliber, the "Caliber Defendants") for LSF9 Master Participation Trust (the "Trust"), respectfully file this opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment and Reply in Further Support of their Motion for Partial Summary Judgment Dismissing Plaintiffs' RESPA Claim.

## INTRODUCTION

In their Amended Complaint,[1] Plaintiffs alleged that Caliber violated RESPA "by not evaluating Plaintiffs for a HAMP or HAMP-like modification, even though this program was required to be a part of Caliber's loss mitigation in accordance with HUD Guidance." Am. Compl. ¶ 462. After Caliber filed its Motion to Dismiss, Plaintiffs changed course, conceding that no such requirement exists under RESPA or the HUD Note Sale contract at issue, and asserting instead that Plaintiff Mason received a "HAMP-like" modification and that Caliber therefore should have considered Plaintiffs Washington and Blackett for the same modification. Opp. to Mot. to Dismiss 8 n.6.

As explained in the Caliber Defendants' Memorandum in Support of Their Motion for Partial Summary Judgment ("Opening Brief"), Caliber fully complied with its duties under RESPA, which leaves it to servicers to "develop policies and procedures that are reasonably designed to enable servicer personnel to identify all loss mitigation options available for mortgage loans" it services: Caliber implemented the applicable investor guidelines, the operative authority matrix or "waterfall," and then offered to each Plaintiff the modification for

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Caliber Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Class Action Complaint ("MTD Opening Brief"), and the Caliber Defendants' Motion for Partial Summary Judgment.

which he or she was eligible under the applicable waterfall.  12 C.F.R. Pt. 1024, Supp. I,

§ 38(b)(2)(ii), cmt. 1; Opening Br. 8-12.

In their Memorandum of Law in Opposition to Caliber Defendants' Motion for Partial

Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgement

as to Liability on Plaintiffs' RESPA Claims ("Cross Motion"), Plaintiffs do not contest that

investors have the discretion to set the loan modification options available to borrowers

(Opening Br. 2) or that Plaintiffs' loans were appropriately reviewed for the loan modification

options listed in the applicable waterfalls.  *See* Cross Mot. 16 (basing their claim instead on the

purported existence of a loss mitigation option "outside" of the waterfalls).  Instead, Plaintiffs

newly argue—without support of case law, regulation, or regulatory commentary—that because

Caliber offered Mason a modification in the context of a litigation settlement in *September 2017*,

those settlement terms constitute a separate "loss mitigation option" available to Plaintiffs, and

contend that Caliber violated RESPA by not evaluating Washington and Blackett for that same

modification in *2014* and *2015*.  Cross Mot. 2.

This latest theory and unpleaded claim fails because the record is clear that Caliber

considered Blackett and Washington under then-applicable investor guidelines, the matrices

entitled ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████  In other words, the exceptions to the ██████ waterfall are just that,

exceptions; they do not amend or otherwise alter the loss mitigation options available to ██████

borrowers.  Moreover, the notion that an investor cannot permit a servicer to make such limited

exceptions without also amending the investor guidelines would have the effect of severely

impairing the flexibility needed to resolve delinquency-related litigations by individual settlements.  Such a rule would have a deleterious effect on borrowers, and Plaintiffs cite nothing to suggest that exceptions are somehow impermissible or necessarily become a loss mitigation option available to borrowers under RESPA.

Finally, even if Plaintiffs' most recent theory was viable, their RESPA claim would nonetheless fail because neither Washington nor Blackett submitted a complete loss mitigation application to Caliber—the *sine qua non* required to trigger any duties under section 1024.41(c)(1)(i) or (d).  Plaintiffs do not dispute that the regulations impose duties upon a servicer to evaluate a borrower's eligibility for loss mitigation and to state the reasons for denying any options available to the borrower *only* upon the servicer's receipt of a complete loss mitigation application.  Cross Mot. 1, 10.  Nor do they dispute that Plaintiffs failed to submit to Caliber documentation constituting a complete loss mitigation application.  Instead, they argue that Plaintiffs Blackett and Washington submitted complete loss mitigation applications "to Caliber" because the loans' *prior* servicers had acknowledged receipt of complete loss applications and because Washington purportedly expressed interest in applying for a loss mitigation application.  Cross Mot. 5-7, 12, 15.  But applications to prior servicers, which were processed and completed by those prior servicers, are not somehow reclassified as new by virtue of a transfer (indeed, regulatory rules require just the opposite), and are plainly insufficient in this context, as is an expression of interest without an actual submission of a complete application.

For each of those independent reasons, the Court should grant the Caliber Defendants' summary judgment as to Plaintiffs' RESPA claim and thereby deny the Cross-Motion.

## **BACKGROUND**

As explained in the Opening Brief, Caliber evaluates borrowers for a loan modification upon receipt of a complete loss mitigation application from a borrower.  Etchison Decl. ¶ 8.  A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.  12 C.F.R. § 1024.41(b)(1).  In Caliber's case, this includes, among other things, a hardship letter, income statement, expense statements, pay stubs, and other documentation, if relevant to the borrower's circumstances.  Ex. 20.  Caliber evaluates these complete applications using authority matrices, also called waterfalls, providing borrowers with sequentially considered options in an attempt to meet the borrowers' needs and their ability to make payments.  Etchison Decl. ¶¶ 6, 11.  █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ Etchison Decl. ¶ 12.

In certain instances, including in a ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████ *E.g.*, Ex. 2 at 15-16 ████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ account for extenuating circumstances, such as a permanent hardship (*e.g., id.* at 42 ("Should the reason for hardship be clearly defined by the borrower as 'permanent,' ██████████████████████████████████████

consideration.")), or the various uncertainties  (*see, e.g.*, Ex. 9 (

)), resulting in fewer loans progressing into foreclosure.

        1.    <u>St. Clair Blackett</u>.

Prior to Caliber, Blackett's loan was serviced by Continental Home Loans ("Continental"). On August 25, 2014, Continental confirmed receipt of a completed application from Blackett (Ex. 16), and in a trial modification agreement dated October 1, 2014, rendered a decision as to Blackett's eligibility. Ex. 17. Pursuant to the October 1, 2014 trial modification agreement, Blackett agreed to make monthly payments of $2,416.13 from November 1, 2014 through January 1, 2015, after which he would be "placed into a[n unspecified] Modification." Ex. 17. Contrary to Plaintiffs' assertion (Cross Mot. 12), when Continental provided its offer to Blackett, Caliber had not yet begun servicing Blackett's mortgage—this did not occur until October 6, 2014. Ex. 87 (stating to Blackett that servicing transferred to Caliber on October 6, 2014).[2]

Per its procedure for in-flight modifications, Caliber honored the terms of Blackett's trial modification agreement from his prior servicer. Etchison Decl. ¶ 27. After completing the forbearance plan, Caliber offered Blackett a five-year, short-term modification pursuant to Caliber's pre-approved modification program. Ex. 18. However, even with the modification,

---

[2] Plaintiffs contend that Caliber began servicing the loan on August 27, 2014. Cross Mot. 12. In support of that assertion, Plaintiffs' point to the TILA notice sent to Blackett. *TILA* requires new creditors to notify borrowers that they have *purchased* their loan when the mortgage loan is transferred. *See* 15 U.S.C. § 1641(g)(1). Consistent with its obligations under TILA, on August 27, 2014, Caliber informed Blackett that the Trust had purchased his mortgage loan. Ex. 68. *RESPA* separately requires that borrowers be notified whenever *servicing* responsibilities are transferred. *See* 12 U.S.C. § 2605(b)(1). Plaintiffs have never alleged that the Caliber Defendants failed timely to notify borrowers when servicing responsibilities were transferred to Caliber—as required by RESPA.

Blackett failed to meet his monthly payment obligations.  Etchison Decl. ¶ 30; Ex. 52.  Caliber then sent five separate solicitations to Blackett asking him to submit a loss mitigation application and informing him that "[t]he following documents are required in order for Caliber to review your application for a loan modification:  Letter of Explanation, Income/Expense Information, Two most recent pay stubs . . . ."  Exs. 20-24.  With no response to these numerous solicitations, and without a complete loss mitigation application, Caliber offered Blackett another pre-approved modification for an interest-only modification.  Ex. 25.[3]

> 2.   Joseph Washington.

Prior to Caliber, Washington's loan was serviced by LoanCare.  On August 5, 2014, LoanCare acknowledged receipt of Washington's complete application (Ex. 6), and in a letter dated August 19, 2014 (Ex. 7), rendered a final decision as to Washington's eligibility.  The August 19, 2014 letter informed Washington that he was approved for a forbearance plan, which reduced his monthly payment from $2,281.47 to $1,487.89 for three months, but that, "[b]ased on [LoanCare's] review of [Washington's] financial circumstances, [they] determined that currently [Washington did] not have a hardship that has caused a long-term or permanent increase in expenses or decrease in income that would require a loan modification."  *Id.* at 3. The letter further states, "[B]ecause [Washington had] a temporary hardship and the capacity to bring [his] mortgage current following this Forbearance Plan, [he was] not eligible for the following loan modification Trial Period Plans:  HAMP Modification, Standard Modification."

---

[3] Plaintiffs misrepresent the plain meaning of the letter when they allege in their motion that the pre-approved modification offer "invited Mr. Blackett to apply for a federal HAMP modification."  Cross Mot. 6.  The letter indicates that Blackett *may be* reviewed for a HAMP modification upon the submission of a complete loss mitigation application, *if eligible.*  Ex. 25 ("If you have not been evaluated for eligibility for a modification under the federal Home Affordable Modification Program (HAMP) and you return a complete package no later than 05/13/2016, *we may be able to offer you a HAMP modification* . . . .") (emphasis added); Etchison Dep. Tr. 170:1-170:17.

Ex. 7 at 3.  The date to appeal this final decision was September 2, 2014—nearly three weeks before Caliber began servicing Washington's loan.  *Id.*

Although Washington was informed of the sale of his loan to LSF9 Mortgage Holdings, LLC, on August 25, 2014 (Ex. 43), Caliber only began servicing Washington's mortgage on September 16, 2014 (Ex. 91.)  Per its loan transfer procedures, Caliber honored the forbearance plan.  Etchison Decl. ¶ 17.  After Washington completed his forbearance plan, Caliber sent him a letter and modification agreement indicating that he was pre-approved for a modification based on his completion of the forbearance plan.  Ex. 10.  Washington returned the Modification Agreement on December 18, 2014, but it was not signed by the co-borrower, Khansa Doyle.  Ex. 11.  As a result, Washington was denied for this modification.  Etchison Decl. ¶ 20.

> 3.    Lucille Mason.

Unlike Washington and Blackett, Mason (i) did not have an in-flight modification from a prior servicer and (ii) submitted two complete loss mitigation applications to Caliber.  Etchison Decl. ¶ 40.  Caliber received a portion of Mason's first loss mitigation application on June 29, 2015 (Ex. 88), and on August 14, 2015, after receiving additional documents, Caliber confirmed the receipt of a complete loss mitigation application in a letter to Mason.  Ex. 32.  Caliber evaluated Mason's loss mitigation application and offered her a five-year interest-only modification, subject to successful completion of a trial period plan or "TPP."  Etchison Decl. ¶ 42; Ex. 33.  After completing the TPP, Mason rejected Caliber's February 2, 2016 offer of a five-year interest-only modification.  Etchison Decl. ¶ 43.

On August 9, 2016, Mason's counsel at MFY submitted what they characterized as documents "in support of [Mason's] application," which included Caliber's Loss Mitigation Application, Mason's Hardship Letter, paystubs, bank statements, and other documents.  Ex. 89.  In response, and contrary to Plaintiffs' statements in their opposition brief (Cross Mot. 20-21),

Caliber evaluated this second complete loss mitigation application and offered Mason a loan

modification on January 12, 2017 (Ex. 36), pursuant to the operative authority matrices, which

Mason appealed.  Etchison Decl. ¶ 45; Etchison Dep. Tr. 127:13-24 (██████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████.  Following the appeal and in

connection with mediation in a foreclosure proceeding, Caliber re-evaluated Mason's second loss

mitigation application pursuant to the ██████████████████████████████████

████████ Etchison Dep. Tr. 109:7-11; 127:18-24), Caliber offered Mason a loan modification,

which she ultimately accepted as settlement in the ongoing foreclosure litigation.  Ex. 39.  On

February 8, 2018, Justice Noach Dear discontinued the foreclosure action "due to the borrower

entering a loan modification with the Plaintiff."  *See* Nagin Decl., Ex. 1.

## ARGUMENT

A.   Caliber's RESPA Obligations to Plaintiffs Washington and Blackett Were Not
Triggered Because Neither Submitted a Complete Loss Mitigation Application to
Caliber

It is not in dispute that a servicer's obligations under sections 1024.41(c)(1)(i) and (d) are

triggered only once an applicant submits a complete loss mitigation application.  Here, as set

forth in the Etchison Declaration and supporting exhibits thereto, neither Washington nor

Blackett submitted a complete loss mitigation application to Caliber.  Rather, their complete loss

mitigation applications were submitted to, processed, and resolved by their prior servicers.

Plaintiffs have offered no affirmative documents, testimony, or witness affidavits of their own to

the contrary.  (Indeed, they did not even ask Ms. Etchison about the topic during her deposition.)

In light of the affirmative evidence from Caliber that neither Washington nor Blackett submitted

complete loss mitigation applications to Caliber (and in absence of any affirmative evidence

from the Plaintiffs by way of affidavit or otherwise to the contrary), the Court should grant

11

partial summary judgment in favor of the Caliber Defendants and deny Plaintiffs' Cross-Motion
for Partial Summary Judgment on the RESPA claim.

      1.    St. Clair Blackett.

As explained in the Opening Brief, the Amended Complaint does not allege that Blackett
ever submitted a complete loss mitigation application to Caliber, notwithstanding Plaintiffs'
acknowledgement of RESPA's requirement in that regard.  *See, e.g.*, Am. Compl. ¶ 455.
Nevertheless, Plaintiffs now contend that "[b]ecause Mr. Blackett had submitted a complete
application [to his *prior servicer*] when Caliber began servicing his loan, Caliber owed him
duties under RESPA."  Cross Mot. 12.  That argument fails, however, because Blackett's prior
servicer made a determination on the complete loss mitigation application *before* Caliber
assumed servicing obligations.  Although a transferee servicer may at times be obligated to
continue the evaluation of a complete loss mitigation application that had been submitted to a
prior servicer where that evaluation is still underway at the time of transfer, 12 C.F.R. Pt. 1024,
Supp. I, § 41(i), cmt. 2 (stating that "[a] servicer that obtains the servicing of a mortgage loan for
which an evaluation of a complete loss mitigation option is in process should continue the
evaluation to the extent practicable"), as the CFPB has recognized, a loss mitigation application
is no longer pending for a transferee servicer's review once a TPP has been approved, *see* CFPB
Bulletin 2014-01, August 19, 2014, § A (distinguishing obligation to review loans with "pending
loss mitigation applications" from loans without such obligations including "approved loss
mitigation plans (*including trial modification plans*)" (emphasis added)), *available at*
https://www.federalregister.gov/documents/2014/10/23/2014-24194/ compliance-bulletin-and-
policy-guidance-mortgage-servicing-transfers (hereinafter "Compliance Bulletin and Policy
Guidance:  Mortgage Servicing Transfers").  RESPA does not require a transferee servicer to re-
evaluate a complete loss mitigation application pursuant to which the transferor servicer already

offered a TPP to the borrower, and Plaintiffs do not cite to any authority to the contrary.[4]
Accordingly, once Blackett entered into his trial modification agreement with Continental, his
loss mitigation application was no longer pending for Caliber's further review.

Blackett submitted an application to his prior servicer, Continental, and Continental
deemed the application complete on August 25, 2014.  Ex. 16.  Continental subsequently offered
Blackett a trial modification on October 1, 2014, which Blackett accepted.  Ex. 17.  Pursuant to
the trial modification, Blackett agreed to make monthly payments of $2,416.13 from November
1, 2014 through January 1, 2015.  Contrary to Plaintiffs' assertions, Caliber did not begin
servicing Blackett's loan until October 6, 2014.  Ex. 87 (stating to Blackett that servicing
transferred to Caliber on October 6, 2014).  Once Caliber began servicing the loan, it honored the
terms of the October 1, 2014 trial modification agreement between Blackett and his prior
servicer.  Etchison Decl. ¶ 27.  Blackett made all three payments required under the trial
modification, and Caliber sought to provide Blackett with a modification that would result in a
monthly payment amount akin to the $2,416.13 monthly payment provided in the trial
modification offered by Blackett's prior servicer.  Etchison Decl. ¶¶ 27-28.

As described in the Caliber Defendants' Opening Brief, Caliber used the then-operative
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 9) to determine which step in the waterfall would achieve the
desired payment amount and informed Blackett that he was approved for a modification that
reduced his total monthly payment to $2,416.05—an amount nearly identical to the payment

---

[4] In arguing the contrary, Plaintiffs' reliance on *Dent v. Inv. Corp. of Am.*, No. 15 Civ. 112638, 2015 WL 9694807
(E.D. Mich. Dec. 23, 2015), is misplaced.  *Dent* involved an incomplete application submitted to a prior servicer.  In
that context, the court explained there was a "colorable argument" that the defendant had to follow up on the
application and noted that mortgage servicers "may not escape their duty to address loan modification requests by
simply noting that such requests were made to a prior servicer."  *Id.* at *5.  Here, Caliber respected the agreement
between Blackett and his prior servicer by honoring the loan modification agreement entered into prior to the
transfer of service.

amount under the in-flight trial modification—for a period of five years.  Etchison Decl. ¶ 29; Exs. 18-19.[5]  Blackett accepted the offer.  *Id.*  In early 2015, Blackett started to fall behind on his monthly mortgage payments, and Caliber sent at least five invitations to submit a loss mitigation application.  Etchison Decl. ¶ 30; Exs. 20-24.  It is undisputed that Blackett did not respond to any of Caliber's solicitations.  Etchison Decl. ¶ 30.

In short, by placing Blackett into a trial modification, Blackett's prior servicer made a determination on the complete loss mitigation application *before* Caliber assumed servicing obligations.  *See* Compliance Bulletin and Policy Guidance:  Mortgage Servicing Transfers, August 19, 2014, § A (distinguishing obligation to review loans with "pending loss mitigation applications" from loans without such obligations including "approved loss mitigation plans (*including trial modification plans*)" (emphasis added)).  As a result, Blackett did not have a "pending, unresolved, complete application" when Caliber began servicing the loan (Cross Mot. 11), and the Court should reject any attempt by Plaintiffs to construe the complete loss mitigation application submitted to Blackett's *prior* servicer as triggering any RESPA obligations on Caliber.

        2.    <u>Joseph Washington</u>.

As with Blackett, Washington submitted a complete loss mitigation application to his prior servicer (Etchison Decl. ¶ 16; Ex. 6), and that prior servicer, LoanCare, evaluated his application and rendered a decision before it transferred servicing of the loan to Caliber. Etchison Decl. ¶ 16; Ex. 7.  Indeed, the Amended Complaint fails even to allege that Washington submitted a complete loss mitigation application to Caliber.  Though it alleges that "[i]n or

---

[5] Plaintiffs' reliance on Caliber's January 6, 2015 letter to Blackett setting forth the loan modification terms as evidence that Caliber ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Etchison Dep. Tr. 163:20-24.

around September of 2014, Washington submitted a new loss-mitigation application to Caliber"
(Am. Compl. ¶ 226), it does not allege that the application was *complete*.  More importantly,
Caliber has no record of a complete loss mitigation application from Washington in September
2014 or at any other time (Etchison Decl. ¶ 25), and Plaintiffs have produced no evidence that
Washington submitted such an application.  Now, Plaintiffs vaguely contend that Washington's
"*oral* communications with Caliber" constitute an "application" and that Caliber's December 9,
2014 loan modification offer letter "demonstrates that it deemed his application complete,"
thereby triggering RESPA obligations.  Cross Mot. 15 (emphasis added).  Having offered no
witness affidavit from Washington, and having declined to raise during Caliber's Rule 30(b)(6)
deposition the issue of whether Washington submitted a complete loss mitigation applications to
Caliber, Plaintiffs have resorted to belatedly stitching together selective snippets from Caliber's
servicing notes.  But the evidentiary record belies Plaintiffs' latest assertions.

On August 5, 2014, Washington's prior servicer, LoanCare, advised Washington that it
had received a facially complete loss mitigation application and subsequently notified
Washington that he was approved for a three-month forbearance plan, which reduced his
monthly payment from $2,281.47 to $1,487.89.  Etchison Decl. ¶ 16; Ex. 7.  On September 16,
2014, Caliber began servicing Washington's loan and honored the terms of the forbearance plan.
Etchison Decl. ¶¶ 16-18; Ex. 91  Upon successful completion of the forbearance plan, Caliber
sought to provide Washington with a monthly payment amount akin to the $1,487.89 monthly
payment amount that he made pursuant to the forbearance plan with his prior servicer.  Etchison
Decl. ¶ 18.  To do so, Caliber used the then-operative ███████████████ to determine
which step in the waterfall would achieve the desired payment amount.  Etchison Decl. ¶ 18; Ex.
9.  On December 9, 2014, Caliber notified Washington that he was approved for a modification

under which he would make interest-only payments of $1,487.29. Etchison Decl. ¶ 19; Ex. 10. Washington signed and returned the modification agreement to Caliber on or around December 18, 2014, but Caliber was unable to process it because it was not signed by the co-borrower on Mr. Washington's loan, Khansa Doyle. (Etchison Decl. ¶ 20; Ex. 11.)

Plaintiffs have not put forth any evidence indicating that Washington submitted a complete loss mitigation application to Caliber. In their Cross Motion, Plaintiffs refer to various telephone calls to Caliber where Washington allegedly "inquir[ed] about the status of his loan modification," including a September 24, 2014 call in which "Caliber confirmed that the home was owner-occupied and informed Mr. Washington that his forbearance information had been transferred from the prior servicers." Cross Mot. 15 (citing Ex. 55 lines 2751-56). Although the calls between September 2014 and December 2014 regard Washington's in-flight loan forbearance plan, Washington often made these calls simply to confirm whether his payments had been received. *See, e.g.*, Ex. 55 lines 2689-92 ("Joseph J Washington was calling in because he wanted to advise that he had mailed out overnighted his first pymnt [sic] for TPP.").

And although it appears that Washington at one point inquired as to when the trial payments under the forbearance plan would end and the "reg mod" would begin (*id.* lines 2287-89),[6] there is no evidence that Washington provided "information the servicer would evaluate in connection with a loss mitigation application" that might give rise to treating a borrower inquiry about the status of an ongoing payment plan as a loss mitigation application. 12 C.F.R. Pt. 1024, Supp. I, § 41(b)(1), cmt. 2; *see also id.* cmt. 3(i)-(ii) (reiterating that no loss mitigation application is submitted where the borrower does not "provide any information that a servicer

---

[6] As confirmed later in the servicing notes, the "reg mod" could not be processed because Washington's co-borrower did not sign the Modification Agreement. *See, e.g.*, Ex. 55 lines 2219-42.

would consider for evaluating a loss mitigation application").  Contrary to Plaintiffs' suggestion, mere mention in Caliber's servicing notes of Washington's owner-occupancy status or a question regarding a "reg mod" are plainly insufficient to satisfy this standard.  As put by the CFPB Official Commentary to which Plaintiffs cite, Washington's phone calls would be considered "inquiries that are not applications."  12 C.F.R. Pt. 1024, Supp. I § 41(b)(1), cmt. 3.  Therefore, because Caliber did not have a complete loan modification application, it made a loan modification offer on December 9, 2014, that matched the payment offered by the prior servicer.  Etchison Dep. Tr. 155:15-21 (stating that this offer was ████████████████████████ ██████████████████████████████████).

In sum, Washington has never submitted a complete loss mitigation application to Caliber, and his RESPA claim fails as a result.

**B.      Even Assuming That Washington and Blackett Had Submitted Complete Loss Mitigation Applications to Caliber, Caliber Evaluated Plaintiffs for All Loss Mitigation Options Available to Them**

It is undisputed that RESPA does not require servicers to offer or evaluate borrowers for any particular type of loan modification—only those established in the owner or investor's discretion.  *See* Cross Mot. 17 (quoting 12 C.F.R. Pt. 1024, Supp. I, § 41(c)(1), cmt. 2 ("The loss mitigation options available to a borrower are those options offered by an owner . . . of the borrower's mortgage loan.")  Furthermore, RESPA does not dictate the manner in which a servicer must conduct a modification evaluation.  To the contrary, "[t]he conduct of a servicer's evaluation with respect to any loss mitigation option is in the *sole discretion of a servicer*.  A servicer meets the requirements of § 1024.41(c)(1)(i) if the servicer makes a determination regarding the borrower's eligibility for a loss mitigation program."  12 C.F.R. Pt. 1024, Supp. I, § 41(c)(1), cmt. 1 (emphasis added).

17

It is further undisputed that Caliber evaluates borrowers under the authority matrix in effect at the time the borrower is reviewed for a loss mitigation option and that the applicable matrix for the Washington, Blackett, and Mason loans ██████████████████Etchison Decl. ¶¶ 13-14. ████████████████████████████████████████████████

██████████████████████ *E.g.*, Ex. 2 at 15-16 ████████████████████████████████

██████████████████████████████.  Plaintiffs, however, contend that Caliber's ability to deviate from the authority matrix or waterfall has creates a separate loss mitigation option in the form of Mason's settlement terms, which Caliber must also use to evaluate Plaintiffs.

Separate and apart from the lack of any complete loss mitigation application (which is dispositive), Plaintiffs' new, unplead RESPA claim fails because Plaintiffs in fact were evaluated for loan modifications using the applicable ████ waterfall, and any ██████████exceptions to the waterfall are not "loss mitigation options" available to Plaintiffs under RESPA.

1. <u>Caliber evaluated Plaintiffs for all loss mitigation options available to them</u>.

Plaintiffs do not dispute that Caliber evaluated their loans for modifications using the ████████████ Caliber used the then-operative ████████████████in December 2014 to offer Washington an in-flight loan modification (Etchison Decl. ¶¶ 18-19), in March 2015 to offer a three-month TPP (*id.* ¶¶ 21-22), and again in July 2015 to offer a five-year interest-only modification (*id.* ¶¶ 23-24).  Caliber used the same ████████████in January 2015 to offer Blackett a modification that closely tracked his in-flight forbearance plan (*id.* ¶¶ 28-29) and the ████████████████████in April and the ████████████████in August 2016 to offer preapproved modifications (*id.* ¶¶ 31-32, 34-35).  Caliber also used the ████████████████

████in August 2015 to offer Mason a modification in response to her first loss mitigation application (*id.* ¶¶ 41-43) and ████████████████████████████in response to

18

Mason's second loss mitigation application (*id.* ¶¶ 44-45).  Plaintiffs do not dispute that these waterfalls were the loss mitigation options established by the investor to be applied to their loans.

> 2.  <u>Exceptions to the authority matrix or "waterfall" are not loss mitigation options available to Plaintiffs' loans under RESPA.</u>

The loss mitigation options available to borrowers are established by the investor.  *See* 12 C.F.R. Pt. 1024, Supp. I, § 41(c)(1), cmt. 2 ("The loss mitigation options available to a borrower are those options offered by an owner or assignee of the borrower's mortgage loan.").  ██████ ████████████████████████████████████████████████ as the loss mitigation options available to Washington, Blackett, and Mason.  Etchison Decl. ¶ 14.  ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ However, ████████████████████████████████████████████████ ████████████████ Accordingly, the loss mitigation options available to other ████████ ████████████████████████████████████████████████ *See* 12 C.F.R. Pt. 1024, Supp. I, § 31, Loss mitigation option, cmt. 2 (defining the loss mitigation options "available" to a borrower as those options "for which a borrower may apply").

Moreover, as with litigation settlements generally ████████████████ may take into account circumstances beyond borrower and property characteristics, such as litigation costs, the nature and merits of a borrower's case, the complexity of the borrower's case, in terrorem increments, and the costs of making the modification exception in that borrower's case, among other considerations.  Grafting settlement terms onto a loan modification authority matrix would ignore the role of those additional settlement considerations.  It also would require the servicer to invent investor preferences as to the order in which such settlement loan modification options are

offered to borrowers.  Plaintiffs have not explained how Mason's modification could have been
incorporated into █████████████████[7]

The rule Plaintiffs propose—requiring the terms of any settlement to be extended to all
other similarly situated borrowers—would have the highly undesirable effect of tying servicers'
hands in litigation settlement discussions.  It would create powerful incentives driving servicers
toward one of two possible outcomes:  (1) all settlements would strictly conform to the investor
matrices, removing the servicer discretion needed to craft the exceptions that enable some
borrowers, including Mason, to avoid foreclosure, or (2) the servicer would have to build into its
section 1024.41(c)(1)(ii) notices each of the settlement-based loan modifications, continuously
updating those notices as additional mediations or litigations are resolved for loans held by a
particular investor.  While both outcomes are problematic, the second path—structuring a
settlement as a "loss mitigation option" raises a host of practical problems because such
settlements are not driven purely by property and borrower characteristics, as noted above.

C.      Plaintiffs' Unpleaded Claim is Procedurally Improper

As the Court will recall, the Court directed the parties to engage in limited discovery on
the unpleaded argument raised in opposition to the Motion to Dismiss - that is, that Plaintiff
Mason received a HAMP-like modification and therefore Caliber should have considered
Washington and Mason for that same modification.  Plaintiffs have now moved for summary
judgment in their favor on this unpleaded claim.  While the RESPA claim as pleaded should be
dismissed in accordance with Rule 12(b)(6) and the new, unpleaded claim dismissed under Rule

---

[7] Furthermore, in arguing that Mason's ███████████████ should have been offered to her earlier in time,
Plaintiffs have offered no evidence suggesting that Mason's modification had been offered before.  Even if a
settlement offer could become a loan modification option under RESPA, there is no evidence that Mason's 2017
modification was available in 2014 and 2015, when Blackett's and Washington's loan offers were made, or when
Mason submitted her first loss mitigation application in 2015.

56 for the reasons set forth in the Motion for Partial Summary Judgment, Plaintiffs certainly

cannot obtain judgment on the claim without seeking approval to amend their complaint for a

third time and, if granted, providing the Caliber Defendants with an opportunity for discovery

based on an actual, well-pleaded claim.  *See generally Myers v. Moore,* 361 F.R.D. 50, 61

(S.D.N.Y. 2018).

## **CONCLUSION**

For the above reasons, Defendants request that the Court grant partial summary judgment

in favor of the Caliber Defendants on Plaintiffs' Eighth Cause of Action for alleged violations of

RESPA and deny Plaintiffs' Cross-Motion for Partial Summary Judgment.


Dated: October 11, 2018


/s/ Benjamin R. Nagin
Benjamin R. Nagin
bnagin@sidley.com
Melissa Colón-Bosolet
mcolon-bosolet@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599

Angela C. Zambrano
angela.zambrano@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Tel.: (214) 981-3300
Fax.: (214) 981-3400

*Counsel for Defendants Caliber Home Loans, Inc.
and U.S. Bank Trust N.A., not in its individual
capacity, but solely as trustee for LSF9 Master
Participation Trust*