UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH WASHINGTON, et al.,<br><br>                Plaintiffs,<br><br>  -against-<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.,<br><br>                Defendants. | No. 16-CV-3948 (ENV) (SMG) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

Mobilization for Justice, Inc.
100 William Street, 6th Floor
New York, New York 10038
(212) 417-3700

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## **TABLE OF CONTENTS**

**PAGE NO.**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT ......................................................................................................................1

    I.    CALIBER OWED RESPA DUTIES TO EACH OF THE PLAINTIFFS BECAUSE EACH SUBMITTED A COMPLETE LOSS MITIGATION APPLICATION ..................................................................................................1

        A.    Mr. Blackett Submitted a Complete, Written Application .........................2

        B.    Mr. Washington Made an Oral Application to Caliber...............................4

    II.    CALIBER VIOLATED § 1024.41 BY FAILING TO EVALUATE PLAINTIFFS FOR ALL AVAILABLE LOSS MITIGATION OPTIONS ............6

        A.    Caliber Violates RESPA By Creating Limitless "Exceptions" to Its Loss Mitigation Rules..................................................................................8

        B.    Even if RESPA Did Countenance a "Litigation Exception," Caliber Cannot Substantiate Its Claim That That is What Ms. Mason Received.....9

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

**PAGE NO.**

**Statutes & Regulations**

12 C.F.R. § 1024.31 ................................................................................................................ 4, 5

12 C.F.R. § 1024.41 ............................................................................................................ *passim*

12 C.F.R. part 1024, Supp. I ¶ 41(i)(2) ................................................................................ *passim*

15 U.S.C. § 1641 ........................................................................................................................ 2

**Other Authorities**

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X),
    78 Fed. Reg. 10696 (Feb. 14, 2013) ............................................................................ 7, 8, 9

**PRELIMINARY STATEMENT**

Having violated the clear procedural requirements laid out in the Real Estate Settlement Procedures Act ("RESPA"), Caliber tries to evade liability by grafting an exception onto the statute which has no foundation in law and which would swallow the rule. Plaintiffs Mason, Blackett, and Washington all submitted complete loan modification applications to Caliber, which triggered Caliber's duty to evaluate them for *all* loss mitigation options available to them. The law is clear: a loss mitigation option is "available" to borrowers if it is *offered* by the owner of the loan. Here, Caliber offered Ms. Mason a modification with terms that resemble the Home Affordable Modification Program ("HAMP"). It never evaluated Mr. Washington or Mr. Blackett for this option and did not evaluate Ms. Mason for it when she first applied—even though the same entity owned all three loans. By not evaluating Plaintiffs and at least 95 percent of similarly situated borrowers for this HAMP-like modification, Caliber violated RESPA.

Caliber simply asserts that it is permitted to make exceptions to RESPA's loss mitigation procedures, particularly in the context of litigation. The law gives Caliber no authority to do so. If it did, Caliber could side-step the requirement to evaluate borrowers for all available loss mitigation options by claiming to grant "exceptions," without explaining why it did so or how it arrived at the terms of the modifications it eventually offered. The Court should decline this invitation to rewrite the law and should grant Plaintiffs' cross-motion for summary judgment as to liability to enforce RESPA's mandate of fair, transparent loss mitigation procedures.

**ARGUMENT**

**I.    CALIBER OWED RESPA DUTIES TO EACH OF THE PLAINTIFFS BECAUSE EACH SUBMITTED A COMPLETE LOSS MITIGATION APPLICATION**

When a servicer receives a complete loss mitigation application, it must evaluate the applicant borrower for all loss mitigation options available to that borrower. 12 C.F.R.

§ 1024.41(c)(1)(i). In its opposition brief ("Opp.," Dkt. #100), Caliber concedes that Ms. Mason submitted a complete application. *See* Opp. 10. So too did Mr. Blackett and Mr. Washington.

### A. Mr. Blackett Submitted a Complete, Written Application

There is no dispute that Mr. Blackett submitted a modification application to Continental Home Loans ("Continental"), which deemed the application complete on August 25, 2014. *See* Opp. 13. Caliber contends that it had no responsibilities under RESPA because Continental offered Mr. Blackett a trial modification before transferring servicing rights to Caliber. *See* Opp. 14. This argument fails for two separate reasons. First, Caliber began servicing Mr. Blackett's loan no later than August 27, 2014. Second, Continental never evaluated the application, so Caliber continued to have RESPA duties to Mr. Blackett on whichever date it assumed servicing rights for his loan.

On August 27, 2014, Caliber sent Mr. Blackett a letter stating that it was the new servicer of his loan. Ex. 68. Its language is unequivocal: "LSF9 Mortgage Holdings, LLC *now* owns your loan" and that "the servicer (identified below)"—Caliber—"*acts* on the new owner's behalf to handle the ongoing administration of your loan." *Id.* (emphasis added). Caliber attempts to walk away from this admission by claiming that it did not begin servicing the loan until October 6, 2014. *See* Opp. 13 (citing Ex. 87). But Caliber's August 27 letter to Mr. Blackett was a legally required notice that a new creditor must send after the sale of a loan. *See* 15 U.S.C. § 1641(g). It plainly states that LSF9 now owns Mr. Blackett's loan and that Caliber now services it.

In any event, any factual discrepancy is immaterial. Continental never evaluated Mr. Blackett's complete loss mitigation application within the meaning of RESPA, which means that even on the date Caliber claims to have begun servicing his loan, Mr. Blackett's complete application had not been evaluated. A servicer "evaluates" an application by considering the borrower for all available loss mitigation products—both trial and permanent modifications. *See*

2

12 C.F.R. § 1024.41(d)(1) (requiring written denial for "trial or permanent loan modification option"); *id.* § 1024.41(h)(1) (right to appeal denial of "any trial or permanent loan modification").

In the ordinary course, if a borrower accepts a trial plan that includes all terms needed for a modification—interest rate, term extension, forbearance, etc.—then the trial plan will, as the name suggests, become a permanent modification once the borrower successfully completes the payments. An evaluation for both the trial and permanent modifications occurs at once, before the servicer offers a trial plan. But here, Continental offered Mr. Blackett a monthly trial payment of $2,416.13 without specifying any of the remaining terms necessary to effectuate a modification of his mortgage loan. Ex. 17. The interest rate, the term, and any forbearance were unknown. *See id.* Had Continental continued to service Mr. Blackett's loan, and had he successfully made all trial payments to Continental, Continental still would have needed to do more work—to conduct an *evaluation*—to determine what permanent loss mitigation product Mr. Blackett would receive. If it found Mr. Blackett ineligible for a permanent modification, it would have had to give him a written denial, which he could have appealed. 12 C.F.R. §§ 1024.41(d)(1), (h)(1).

When servicing was transferred from Continental to Caliber no later than October 6, 2014, Caliber stepped into Continental's shoes with respect to Mr. Blackett's complete-but-not-yet-evaluated application. 12 C.F.R. part 1024, Supp. I ("Off. CFPB Interp.") ¶ 41(i)(2) ("A servicer that obtains the servicing of a mortgage loan for which an evaluation of a complete loss mitigation option is in process should continue the evaluation to the extent practicable."). Even if Continental offered Mr. Blackett a trial plan while it still serviced his loan, there is no question that Continental did not complete the evaluation process for a permanent modification. Nor could it have, since he did not make his first trial payment until after the latest possible date Caliber began servicing the loan. Ex. 17. In fact, *Caliber* reviewed Mr. Blackett for a permanent modification using the

waterfall on its authority matrix, as was its policy when it received a modification "in flight." *See* Dep. (Ex. 83) at 164:24-25; 165:1-19; 133:15-19. Given that Mr. Blackett's application for a permanent modification was evaluated by Caliber and not by Continental, Caliber cannot reasonably claim that the application was no longer pending when it began servicing the loan.

### B.     Mr. Washington Made an Oral Application to Caliber

Mr. Washington submitted a complete application by providing necessary information to Caliber over the phone. A "[l]oss mitigation application means an *oral or written request* for a loss mitigation option that is accompanied by *any information* required by a servicer for evaluation for a loss mitigation option." 12 C.F.R. § 1024.31 (emphasis added). To achieve RESPA's consumer protection goals, this definition is "considered expansively." *See* Off. CFPB Interp. ¶ 41(b)(2). Expressing an interest in applying for a loss mitigation option and providing *any* information that a servicer would consider in evaluating that application constitutes an application. *See* Off. CFPB Interp. ¶ 41(b)(3) (explaining that an oral request is not an application only if the "borrower does not provide any information that a servicer would consider for evaluating a loss mitigation application"). Once a servicer receives an application, including an oral one, it must send a written notice within five business days listing which documents are necessary to complete the application. 12 C.F.R. § 1024.41(b)(2)(i)(B). If the servicer does not request additional information, the application is deemed "facially complete" and treated as a complete application unless and until the servicer does request additional information. *Id.* § 1024.41(c)(2)(iv). The application is incomplete only if the servicer requests more information and the borrower fails to respond in a reasonable time. *Id.*; *see* Off. CFPB Interp. ¶ 41(c)(2)(iv).

Here, Mr. Washington repeatedly expressed interest in obtaining a loan modification. For example, after submitting all three payments under the forbearance plan, Mr. Washington called

4

Caliber to ask when he would receive a "regular" modification. Ex. 55 at 17284, lines 2287-92; *see also id.* at 17289, lines 2607-12 (requesting a modification during pendency of the forbearance plan). In fact, Caliber's modification offer states that Caliber made it in response to Mr. Washington's request. Ex. 10 (thanking Mr. Washington "for contacting [Caliber] to obtain assistance" and confirming that his "request for a loan modification [had] been approved").

In support of his request for a modification, Mr. Washington provided necessary information directly to Caliber over the phone. For example, information about owner occupancy is "required by a servicer for evaluation for a loss mitigation option." *See* 12 C.F.R. § 1024.31. Caliber's servicing notes clearly show that Mr. Washington orally informed Caliber that he lived in the home as early as September 24, 2014. Ex. 55 at 17292, lines 2751-56. On its loss mitigation application form, Caliber specifically asks borrowers about their occupancy of the property. Ex. 21, Q. 6. Thus, Caliber's claim that Mr. Washington did not provide any information over the phone that it would use to evaluate his application is simply false.

Mr. Washington also provided relevant information to Caliber through documents he delivered to his prior servicer, Loancare. "Documents and information transferred from a transferor servicer to a transferee servicer may constitute a loss mitigation application to the transferee servicer and may cause a transferee servicer to be required to comply with the requirements of § 1024.41 with respect to a borrower's mortgage loan account." Off. CFPB Interp. ¶ 41(i)(2). Here, Caliber must have relied on documents received from Mr. Washington via Loancare because its loan modification offer states that the modification was "based on [its] review of [Mr. Washington's] financial circumstances." Ex. 10. The letter also states that Mr. Washington was ineligible for a "5 Year Short Term" modification because his "current total monthly debts

5

exceeded [his] gross income." *Id.* To consider Mr. Washington's individual financial circumstances in this way, Caliber must have relied on information that he provided.

Because Mr. Washington orally requested a loan modification and orally provided information necessary for Caliber to evaluate him for a loan modification, he submitted an application to Caliber as a matter of law, and Caliber was required to treat that application as complete unless and until it requested additional information. *See* 12 C.F.R. § 1024.41(c)(2)(iv). Caliber never requested additional documents. Instead, Caliber appears to have marked the application as complete in its system.[1] Having done so, and having sent Mr. Washington a letter stating that it had reviewed the financial information he had submitted in support of his loan modification request, Caliber cannot now credibly claim that Mr. Washington never submitted any information relevant to a loan modification. *Cf.* Opp. 16-17.

Caliber suggests that Mr. Washington should have presented other evidence of his oral application, *see* Opp. 14-15, but it bears the burden on its initial motion. At minimum, its records raise an issue of fact as to whether or not Mr. Washington submitted an oral application, and its failure to request more information raises an issue of fact as to the application's completeness.

## II. CALIBER VIOLATED § 1024.41 BY FAILING TO EVALUATE PLAINTIFFS FOR ALL AVAILABLE LOSS MITIGATION OPTIONS

Upon receipt of a complete application, RESPA requires a servicer to "evaluate the borrower for all loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(a). A loss mitigation option is "available" to a borrower if "those options are *offered* by an owner or assignee of the borrower's mortgage loan." Off. CFPB Interp. ¶ 41(c)(2) (emphasis added).

By offering the HAMP-like modification to Ms. Mason, Caliber indisputably demonstrated

---

[1] A December 8, 2014 note in the servicing file indicates that Caliber received whatever missing documents or information it may have needed in order to review Mr. Washington's application. Ex. 55 at 17284, line 2306.

6

that a HAMP-like modification was available to borrowers whose loans were owned by LSF9. Caliber does not dispute that ▬▬▬▬▬▬▬▬▬▬▬▬ retains unbridled discretion to offer other bespoke loan modification products to LSF9 borrowers on a case-by-case basis. Exs. 1, 29, 37; Dep. 110:2-8. Caliber further concedes that it did not evaluate Mr. Blackett, Mr. Washington, or initially Ms. Mason for any of these custom products, including the HAMP-like modification that Ms. Mason later received ▬▬▬▬. In fact, only ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[2] Dep. 111:4-9.

Caliber attempts only one substantive defense to liability. It claims that Ms. Mason's HAMP-like modification was not available to Mr. Blackett and Mr. Washington because Caliber's offer to her was an exception to its normal waterfall, and that Caliber satisfied its obligations under RESPA by evaluating Mr. Blackett and Mr. Washington under the applicable waterfall. *See* Opp. 18-20. But RESPA simply does not permit Caliber to make exceptions to its loss mitigation rules without evaluating *all* borrowers for those "exceptions" and telling ineligible borrowers why they have been denied. That is, even a supposed "exception" is still an "available" product under RESPA as long as it is offered to one or more borrowers by the owner of the loan.

Caliber attempts to evade these RESPA requirements by claiming that servicers *should* be able to craft a "litigation settlement exception" to the strict procedural requirements laid out in RESPA. *See* Opp. 20. This excuse is unrecognized by the law and, to the extent it matters, unpersuasive as a matter of policy. It also fails here as a matter of fact. Even though Ms. Mason's

---

[2] Caliber also appears to suggest that a "litigation settlement exception" is not "available" to borrowers who are not in litigation because they may not apply for it. *See* Opp. 19. To the extent Caliber makes that argument, it is wrong because it confuses *availability* with *eligibility*. People not in litigation can apply for a "litigation settlement exception" modification, just as non-service members can apply for a modification program only offered to service members. *See* 78 Fed. Reg. at 10827. The program is available to them even though their applications will be denied because they do not meet the eligibility criterion. *See id*. That is the whole point of the procedures required by Regulation X—to review every applicant for every available product to determine whether or not she is eligible, and if not, to explain to her why not.

7

first complete application to Caliber was submitted while Caliber was suing her in active litigation, she did not initially receive ▮ "exception" modification. Exs. 66, 76. Furthermore, Ms. Mason did not bring any claims against Caliber that required settling. She, like countless other borrowers, simply received a loan modification that resulted in the termination of foreclosure proceedings. And to the extent such an "exception" existed, Mr. Blackett—who was also sued in foreclosure—was just as eligible for it.

### A. Caliber Violates RESPA By Creating Limitless "Exceptions" to Its Loss Mitigation Rules

Caliber offers no authority in support of its claim that RESPA permits the use of *ad hoc* exceptions to its loss mitigation criteria. Nor could it. The statute makes no mention of offering modifications on an exception basis; the implementing regulations do not recognize one-off exceptions; and the case law lends no support to this theory. Here, Mr. Blackett, Mr. Washington and Ms. Mason were similarly situated borrowers, but only Ms. Mason was eventually evaluated for a HAMP-like modification. And she only received that HAMP-like modification after she appealed Caliber's initial evaluation decision and specifically asked to be reviewed for a HAMP-like product. Ex. 48. RESPA requires servicers to review borrowers for *all* available loss mitigation options to avoid precisely such an unfair and nontransparent outcome, in which only the lucky few who know what to ask for get a better result.[3] 78 Fed. Reg. 10696, 10826 (Feb. 14, 2013) (requiring servicers to "evaluate a borrower for all loss mitigation options available to the borrower rather than requiring borrowers to select options for which the borrower may be evaluated").

Moreover, Caliber's policy of offering *ad hoc* modifications ▮ eviscerates

---

[3] Caliber suggests, without evidence, that "the investor has not indicated that any such exceptions are to be made available to all ▮ borrowers." Opp. 19. Even if Caliber could only offer "exceptions" to a limited number of LSF9 borrowers, those modifications would still be "available" to others. *See* Off. CFPB Interp. ¶ 41(c)(1)(2)(ii) ("programs . . . limited by the number of participating borrowers" considered available to borrowers).

8

RESPA's definition of an evaluation. "Evaluating" a loss mitigation application means applying defined eligibility criteria for loss mitigation options to borrower applications. Off. CFPB Interp. ¶ 41(c)(1) ("A servicer meets the requirements of § 1024.41(c)(1)(i) if the servicer makes a determination regarding the borrower's eligibility for a loss mitigation program."). Though servicers have broad latitude to establish eligibility criteria, these criteria apply, by definition, to *categories* of borrowers. For instance, a servicer could create a loss mitigation program "available to only service members." 78 Fed. Reg. at 10827.[4] But a servicer may not customize loan modifications for individual borrowers on a case-by-case basis, as such modifications would not involve determining the borrowers' *eligibility* for a *program*, as RESPA requires.

Finally, in addition to being irrelevant because the Court cannot rewrite RESPA, Caliber's policy concerns about settlement ring hollow.[5] *Cf.* Opp. 20. If a servicer wishes to settle contested litigation, nothing in RESPA constrains it from doing so by offering a borrower money. A servicer can also create a transparent menu of settlement options with defined eligibility criteria for borrowers who have submitted complete loss mitigation applications, meeting its business needs in a manner consistent with RESPA, which Caliber has not done.

### B.   Even if RESPA Did Countenance a "Litigation Exception," Caliber Cannot Substantiate Its Claim That That is What Ms. Mason Received

Even if one-off exceptions were permissible, Caliber is unable to explain why only Ms. Mason was granted an exception on her second application or why that exception resulted in the specific terms of the modification that Caliber offered her. Caliber testified that Ms. Mason's HAMP-like modification was "███████████

---

[4] A servicer would still have to evaluate all applicants for this program and inform non-service members that they were denied because they did not meet the eligibility criterion. *See* 12 C.F.R. § 1024.41(d)(1).

[5] As Plaintiffs argued and as Caliber ignores, the CFPB intended RESPA's procedural requirements to supplement existing state foreclosure mediation rules. *See* Pltfs.' Br. (Dkt. #96) at 25 (citing 78 Fed. Reg. at 10822).

9

███████████████████.″ Dep. 127:14-22. But by the time Ms. Mason received her HAMP-like modification on January 12, 2017, she had been in litigation for years. Ex. 72. Mr. Blackett was also in foreclosure litigation at the time Caliber modified his loan, yet he did not benefit from Caliber's supposed litigation exception and was not evaluated for it. Ex. 76. In its brief, Caliber speculates without providing any evidence about what factors ███ *could* examine in offering exceptions, but never states what factors ███ *actually* considers. *See* Opp. 19. The opacity of the ███ evaluation process extends to the individual terms of the loan modifications Caliber offers. Caliber cannot explain how ███ determines the individual terms of a modification once it has decided to offer an exception. Dep. 110:2-8. Thus, even those borrowers whose applications *are* evaluated ███ may not be evaluated for all the loss mitigation programs that ███ offers.

And as a factual matter, Caliber could not have offered Ms. Mason a litigation settlement exception because she asserted no claims against Caliber that required settling. Caliber complains that requiring ███ to comply with RESPA would mean "[g]rafting settlement terms onto a loan modification authority matrix." Opp. 19. But just like Mr. Blackett, Ms. Mason did not enter into any agreement with Caliber to settle claims. She merely submitted a complete application, requested a HAMP-like modification, and got it. Ex. 48. When Ms. Mason accepted the modification, the foreclosure proceedings were discontinued—but this happens when any borrower in foreclosure proceedings receives a modification. Furthermore, her first application was not reviewed for such an exception. And Mr. Blackett was not evaluated despite also having been sued by Caliber. Thus, even if the Court accepted Caliber's invitation to create a "litigation settlement exception" out of whole cloth, Caliber would still not be entitled to summary judgment.

## CONCLUSION

Caliber's motion should be denied and Plaintiffs' cross-motion as to liability granted.

Dated: October 29, 2018
      New York, New York

                      MOBLIZATION FOR JUSTICE, INC.

                      By: _____/s/_____
                         Carolyn E. Coffey,
                         Christopher Fasano,
                         Elizabeth M. Lynch, of counsel to
                         Jeanette Zelhof, Esq.
                         100 William Street, 6th Floor
                         New York, NY 10038
                         (212) 417-3700

                      EMERY CELLI BRINCKERHOFF &
                      ABADY LLP

                         Matthew D. Brinckerhoff
                         Diane L. Houk
                         Douglas E. Lieb
                         600 Fifth Avenue, 10th Floor
                         New York, NY 10020
                         (212) 763-5000

                      *Counsel for Plaintiffs*